UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6017-CIV-DIMITROULEAS

CHERL SEARS,                )
                                  )
           Plaintiff,       )
                                  )
v.                                )
                                  )
THE SCHOOL BOARD OF BROWARD )
COUNTY, FLORIDA,         )
                                  )
           Defendant.     )
_____)



JOINT SCHEDULING REPORT

      Pursuant to Local Rule 16.1(B) of the Local Rules of the United States District Court for the

Southern District of Florida, counsel for the parties hereby submit the following Joint Scheduling

Report, and the proposed Scheduling Order filed concurrently herewith.

    1.    The Nature of the Action

      This is an employment related action which the Plaintiff, Cherl Sears, originally commenced

in the Circuit Court of the Judicial Seventeenth Circuit, in and for Broward County, Florida, alleging

a violation of her rights under Florida Statutes, Section 112.011, and Article I, Section 9 of the

Florida Constitution.  The complaint alleged that Plaintiff had been employed by the Defendant in

various capacities as a substitute teacher from 1992 through the end of the 1997-1998 school year,

at which time she applied to be hired as a full time teacher.  The complaint further alleged that

Plaintiff's application for employment as a full time teacher was rejected based upon a criminal

background check which revealed a 1995 arrest for narcotics possession.  The arrest did not result

in a conviction, and in fact, the charges against the Plaintiff were subsequently dismissed due to her successful completion of a court administered pre-trial intervention program. After the Defendant became aware of the 1995 narcotics arrest, Plaintiff's application for employment as a full time teacher was rejected and she was prohibited from resuming any substitute teaching assignments.

Plaintiff commenced this action in state court alleging exclusively under Florida law that the School Board's actions violated Florida Statutes, Section 112.011, and was both arbitrary and unreasonable in alleged violation of Article I, Section 9 of the Florida Constitution (1968). The Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida, the Honorable John Miller presiding, subsequently entered an order dismissing Count I and directing the Plaintiff to amend Count II of the Complaint.

On or about December 7, 1999, Plaintiff filed an Amended Complaint in which she asserted, for the first time, alleged violations of the Fourteenth Amendment to the United States Constitution[1]. Plaintiff subsequently requested and was granted leave to file a Second Amended Complaint (Complaint). The Defendant then timely filed a Notice of Removal, removing this case to federal district court.

2.    Statement of the Case

   A.    Plaintiff's Statement Of The Case

The Plaintiff, Cherl Sears, (hereinafter, referred to as "Sears"), had been employed as a substitute teacher, for the Defendant School Board, beginning in 1992, and her employment status

---

[1]    Plaintiff also filed a Motion for Leave to Amend the Amended Complaint on the same date. On December 21, 1999, the Court granted Plaintiff's Motion for Leave to Amend the Amended Complaint. The case is presently before this Court on Plaintiff's Second Amended Complaint.

remained unchanged with the Defendant, until October of 1996. From October of 1996, through February of 1998, Sears had been employed as a "pool substitute" teacher for the Defendant School Board.

In March of 1998, and continuing until October 5, 1998, Sears was employed as an "interim substitute" teacher, in the exceptional student education program, for the Defendant School Board. During the beginning of the 1998-1999 school term, the Plaintiff was offered the opportunity by the Defendant, to be hired as a permanent full-time teacher, providing instruction in a social science curriculum, in public schools administered by the Defendant in Broward County, Florida.

However, the Plaintiff's application for a permanent position was rejected by the Defendant; solely due to her arrest in 1995, and the arrest was based upon allegations of narcotics possession. This arrest did not result in a conviction; and, in fact, the charges against the Plaintiff were subsequently dismissed, due to her successful completion of a court administered pre-trial intervention program. Not only was the Plaintiff's application for a permanent position rejected by the School Board, the Defendant also then prohibited her from reassuming any substitute teacher assignments, based solely upon the 1995 arrest.

Count I of the Complaint presently before this Court is predicated upon Section 231.1725(e)(2), Florida Statutes, which provides that"[s]ubstitute, adult education, and non-degreed career education teachers who are employed pursuant to this section shall have the same rights and protections of laws as certified teachers," and alleges that the School Board's actions denied Plaintiff procedural due process in violation of the Due Process Clause of the United States Constitution and Article I, Section 9 of the Florida Constitution. Count II of the Complaint alleges that the Defendant's apparent *de facto* rule, which bars persons who have been charged with a felony from

-3-

all instructional staff positions, violated Article 1, Section 9 of the Florida Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Count III of the Complaint alleges that the Defendant's apparent *de facto* rule, which bars persons who have been charged with a felony from all instructional staff positions, violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Count IV of the Complaint alleges that the Defendant's apparent *de facto* rule, which bars persons who have been charged with a felony from becoming full-time instructional staff members violated Article I, Section 9 of the Florida Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Count V of the Amended Complaint alleges that the Defendant's apparent *de facto* rule, which bars persons who have been charged with a felony from becoming full-time instructional staff members violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

      B.    Defendant's Statement of the Case

The Complaint as a whole fails to state any cognizable violation of the Equal Protection or Due Process Clauses of the United States Constitution and similarly fails to state a cause of action under Article I, Section 9 of the Florida Constitution. More specifically, in Count I, Plaintiff alleges that the School Board denied her procedural due process in violation of the Due Process Clause of the United States Constitution and Article I, Section 9 of the Florida Constitution and that the School Board deprived her of an alleged constitutionally protected property interest in employment by allegedly (1) refusing to allow her to continue to work as a substitute teacher; and, (2) by denying her employment with the School Board as full-time teacher ("teacher"). Plaintiff cites no contract or other legal basis for her claimed property interest and, in fact, none exists under Florida law.

-4-

Counts II and IV of the Complaint allege that the School Board has a "de facto" rule and/or practice whereby the School Board allegedly dismisses employees, or excludes applicants from future employment with the School Board, who have been charged with felony criminal offenses and that such practice violates the Due Process Clause of the United States Constitution and Article I, Section 9 of the Florida Constitution and because the School Board's alleged rule and/or practice is not a rational means of advancing a legitimate state interest. In Counts III and V of her Complaint, Plaintiff alleges that the School Board has a "de facto" rule and/or practice whereby the School Board allegedly dismisses employees, or excludes applicants from future employment with the School Board, who have been charged with felony criminal offenses and that this practice allegedly violates the Equal Protection Clause of the United States Constitution because the School Board's alleged rule and/or practice is not a rational means of advancing a legitimate state interest.

(1)    <u>Count I</u>

Count I of the Complaint fails to state a claim upon which relief could be granted because Section 231.1725(e)(2), Florida Statutes (1998 Supp.), does not give rise to any constitutionally protected interest in continued employment as a substitute teacher. Instead, that statutory provision merely authorizes local school boards to establish the minimal qualifications for substitute, part and full-time adult education teachers and part and full-time non-degreed teachers of vocational programs and to employ individuals in such positions notwithstanding that they are not Florida certified teachers. The statute does not and was not intended to create any reasonable expectation of continued employment unless and until such a teacher earned a professional services contract (tenured status) under Section 231.36(3)(a), Florida Statutes (1997). Plaintiff does not and cannot

allege that she has any form of tenure under any provision of Florida law and therefore cannot show that she was denied a constitutionally protected property interest in continued employment.

(2)    Counts II, III, IV and V

Presuming solely for purposes of argument that the School Board had and applied a consistent practice in all cases (which it does not) which automatically precluded persons arrested for felony drug possession charges while employed by the School Board from substitute or full-time employment as a teacher, all of the Plaintiff's constitutional claims set forth in Counts II through V still fail. Plaintiff is not a member of any suspect classification for purposes of the Equal Protection Clause. It is therefore settled law that in order to meet constitutional muster, the School Board need only show that it had a rational basis for its action. Denying substitute or full time employment to teachers who engage in criminal conduct, irrespective of whether or not they are convicted of such conduct, clearly advances the legitimate state objective of ensuring the safety of children in our schools. The facts of the instant case set forth below are particularly compelling and should allow final disposition of all claims asserted on summary judgment.

The School Board intermittently employed Plaintiff as a substitute teacher at various times from February 10, 1992 until October 1, 1996, from July 1, 1997, to September 30, 1997, and from August 25, 1998, to October 5, 1998. Before Plaintiff's name was added to the substitute teacher availability lists, Plaintiff signed a Memorandum of Understanding in January 1992 which stated that she "understood that there are currently over 3,300 substitutes available for employment and that regular employment should not be expected nor guaranteed."

-6-

Plaintiff was also employed by the School Board as a "pool substitute" teacher from October 2, 1996, to June 13, 1997, and from October 1, 199.7 to March 1, 1998, and as an "interim substitute" teacher in the exceptional student education program from March 2, 1998, until June 12, 1998.

On September 16, 1998, Plaintiff applied for a full-time teaching position with the School Board. Pursuant to Section 943.058, Florida Statutes (1998 Supp.), as part of the application process Plaintiff was required by law to complete a security background check. Plaintiff noted on the security background check form that she had pled "no contest" in a criminal proceeding and that she had participated in a pre-trial intervention program. She went on to explain, on the back of the background check form, her version of the circumstances that led to her felony arrest and subsequent "no contest" plea.

In her explanation, Plaintiff stated that she let a "male friend" borrow her car. The friend then returned to pick her up, at which time Plaintiff entered the passenger side of her car. The "male friend" then drove to a mall where Plaintiff and the "male friend" were confronted by the police. The police, assisted by a drug sniffing narcotics dog, searched Plaintiff's car and found cocaine. Plaintiff maintained that she had no knowledge that the cocaine was in her car. The Plaintiff and "male friend" were subsequently arrested. Plaintiff stated that she was "ordered" to attend pre-trial intervention. After she completed the pre-trial intervention program the case was dismissed.

Pursuant to School Board procedures in place in September 1998, if an applicant disclosed past criminal activity, the School Board obtained the relevant police reports and records for review by the School Board's Security Clearance Committee ("SCC"). The police report concerning Plaintiff's arrest was forwarded to the SCC for an individualized review. Upon review of the police

report, the SCC found that Plaintiff (then known as "Cherl Hall") was arrested on June 14, 1995, during the time period she working as a substitute teacher for the School Board.

The police report also revealed that the "male friend" was David Sears, who was then Plaintiff's live-in boyfriend and current husband.[2] The report noted that the police found 14 grams of crack cocaine in Plaintiff's car. The Police Officer also stated in the report that the drug sniffing narcotics dog specifically alerted on the Plaintiff's purse, where the officer found a rolled bundle of fifty one-dollar bills.

Based upon the circumstances surrounding the felony narcotics arrest for possession of crack cocaine and Plaintiff's apparent mendacity and lack of candor in explaining the circumstances surrounding her arrest on the security background check form,[3] the SCC determined, on October 1, 1998, that Plaintiff was unsuitable for employment with the School Board. As such, Plaintiff's application for a full-time teaching position was rejected and her name was removed from the substitute teacher availability lists.

Plaintiff cannot even arguably show that she was denied procedural due process under the facts of this case. Plaintiff was given notice and an opportunity to be heard by the SCC, which conducted an individualized review of her case. Plaintiff was also informed that she could appeal the SCC's decision. On October 6, 1998, Plaintiff sent a letter to Mr. Hal Blitman, the School Board's former Associate Superintendent of District Administration, appealing the SCC's decision

---

[2]    The School Board's SCC noted that on July 21, 1995, approximately one month after the arrest of the Plaintiff and David Sears, the Plaintiff married Mr. Sears.

[3]    Plaintiff's statement on the back of the security background check form gave the clear impression that Plaintiff was merely "in the wrong place at the wrong time," and therefore, had nothing to do with the drugs found in the car, which does not appear to be truthful.

to deny her employment.  Plaintiff stated that she agreed to enter into a pre-trial intervention program, instead of going to trial, because it would "spare [her] the cost of going to trial," which she could not afford.

The SCC reconvened on November 24, 1998, to consider Plaintiff's appeal of the SCC's previous decision to deny her full-time employment and remove her from the substitute teaching availability list.  After reviewing the correspondence and documents sent by, and on behalf of, the Plaintiff, the SCC denied Plaintiff's appeal.  At no time subsequent to the SCC's denial of Plaintiff's appeal did the Plaintiff ever reapply for a full-time teaching position with the School Board, or reapply to be returned to the substitute teacher availability lists.  Finally, Plaintiff could have, but did not, timely request an administrative hearing before the School Board pursuant to the Florida Administrative Procedure Act, Chapter 120, Florida Statutes (1998 Supp.)

Finally, Defendant contends that Plaintiff lacks standing to maintain this action because she cannot show that she sustained injury as the result of the de facto practice complained of herein.  Specifically, Plaintiff was not eligible for employment as a full-time teacher with the School Board and thus could not have been hired in such capacity in any event because she lacked the proper teaching credentials.

3.    Statement Of The Type Of Case

The Plaintiff has requested a trial by jury in this case.

4.    Schedule of Discovery

On or before May 1, 2000, the Plaintiff and the Defendant will make a reciprocal exchange of any additional documents, then reasonably available to them, which each party contends, supports its assertions, as contained within the pleadings.  On the same date, the parties will exchange lists

of witnesses known to them to possess knowledge of facts supporting the allegations set forth by each party.

Defendant's initial Interrogatories to Plaintiff and Request for Production of Documents were filed on April 5, 2000. Plaintiff has not yet propounded any discovery requests. The parties maintain that based upon the nature of the responses to their initial discovery requests, they recognize that it may be necessary to serve additional written discovery requests, including requests for admissions.

The parties anticipate taking the depositions of the parties named in this action, as well as the depositions of persons or entities identified on the witness lists to be exchanged according to Local Rule 16.1(B)(4). The parties intend to complete both written and deposition discovery within nine (9) months from the date of the entry of the Scheduling Order.

5.    The Likelihood Of Settlement

As discovery progresses, the parties intend to make a good faith effort to explore settlement possibilities. However, the parties are now unable to assess the likelihood of settlement at this time.

6.    The Likelihood Of Appearance Of Additional Parties

The parties do not anticipate that additional parties will be added to this case.

7.    Proposed Limits On Time

A.    The parties stipulate that amendment of the pleadings shall be permitted through July 10, 2000. Amendments may thereafter be permitted in the Court's discretion where there is no prejudice to either party.

-10-

B.    The parties request that they be permitted up to forty-five (45) days after the close of discovery within which to file motions for summary judgment. The parties further agree that motions in limine may be filed at any time prior to the day of trial.

C.    The parties request nine (9) months from the date the Scheduling Order is entered within which to complete all discovery.

D.    The parties agree that a status hearing should be conducted upon the written request of either party and the concurrence of the Court.

E.    The parties suggest that a pre-trial conference should be held thirty (30) days after the date that motions for summary judgment are fully briefed, including reply memoranda, with trial to begin no sooner than thirty (30) days after the pre-trial conference.

8.    <u>Proposals For The Formulation And Simplification Of Issues</u>

The parties expect to narrow the issues in this case through the use of discovery and dispositive motions.

9.    <u>Necessity Or Desirability For Amendment To The Pleadings</u>

At this time, the parties do not anticipate that the pleadings will be amended. The parties reserve the right to amend the pleadings, as discovery progresses, upon proper motion with leave of Court.

10.    <u>The Possibility Of Obtaining Admissions Of Fact And Documents Which Will Avoid Unnecessary Proof</u>

The parties will make an effort to reduce factual issues through the use of discovery. After the production of documents, the parties will discuss the possibility of entering into stipulations which will attempt to avoid unnecessary proof.

11.  <u>Suggestion For Avoidance Of Unnecessary Proof And of Cumulative Evidence</u>

The parties will make an effort to avoid unnecessary proof through the use of requests for admission and stipulated facts in their Joint Pretrial Stipulation.  In addition, the parties will also make an effort to agree to mutually acceptable stipulations regarding the admissibility of evidence.

12.  <u>Advisability Of Referring Matters To A Magistrate</u>

The parties agree to refer discovery matters and non-dispositive motions to a Magistrate Judge.

13.  <u>Preliminary Estimate Of Trial Time</u>

The parties estimate that the trial of this action will require three (3) days.

14.  <u>Suggested Trial Date</u>

The parties request a trial date after March 15, 2001.

15.  <u>Other Information</u>

A Proposed Scheduling Order has been filed concurrently herewith in compliance with Rule 16.1 of the Local Rules of Court.


MARK J. BERKOWITZ, P.A.
Suite 200N
524 South Andrews Avenue
Fort Lauderdale, Florida 33301
(954) 527-0570 (Broward)
(954) 463-5428 (Fax)



By_____
   Mark J. Berkowitz
   Florida Bar No. 369391
   Counsel for Plaintiff


MULLER, MINTZ, KORNREICH, CALDWELL,
   CASEY, CROSLAND & BRAMNICK, P.A.
Suite 3600, First Union Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131-2338
(305) 358-5500 (Miami-Dade)
(954) 522-0393 (Broward)
(305) 379-3802 (Fax)


By_____
   Gordon D. Rogers
   grogers@mullermintz.com
   Florida Bar No. 240168
   Counsel for Defendant

11.　　Suggestion For Avoidance Of Unnecessary Proof And of Cumulative Evidence

The parties will make an effort to avoid unnecessary proof through the use of requests for admission and stipulated facts in their Joint Pretrial Stipulation. In addition, the parties will also make an effort to agree to mutually acceptable stipulations regarding the admissibility of evidence.

12.　　Advisability Of Referring Matters To A Magistrate

The parties agree to refer discovery matters and non-dispositive motions to a Magistrate Judge.

13.　　Preliminary Estimate Of Trial Time

The parties estimate that the trial of this action will require three (3) days.

14.　　Suggested Trial Date

The parties request a trial date after March 15, 2001.

15.　　Other Information

A Proposed Scheduling Order has been filed concurrently herewith in compliance with Rule 16.1 of the Local Rules of Court.

MARK J. BERKOWITZ, P.A.
Suite 200N
524 South Andrews Avenue
Fort Lauderdale, Florida 33301
(954) 527-0570 (Broward)
(954) 463-5428 (Fax)


By _____ 4/5/00
Mark J. Berkowitz
Florida Bar No. 369391
Counsel for Plaintiff

MULLER, MINTZ, KORNREICH, CALDWELL,
　　CASEY, CROSLAND & BRAMNICK, P.A.
Suite 3600, First Union Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131-2338
(305) 358-5500 (Miami-Dade)
(954) 522-0393 (Broward)
(305) 379-3802 (Fax)

By _____ 4/5/2000
Gordon D. Rogers
grogers@mullermintz.com
Florida Bar No. 240168
Counsel for Defendant

O:\237905\Pleadings\GL\R3075mk.wpd/nml

-12-