UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

**NIGHT BOX
FILED ~ ·**

DEC 1 4 2000

CLARENCE MADDOX
CLERK, USDC / SDFL / FTL

CHERL SEARS,
Plaintiff,

CASE NO. 00-6017-CIV-DIMITRIOULEAS
MAGISTRATE JUDGE SELTZER

vs.

THE SCHOOL BOARD OF
BROWARD COUNTY,
FLORIDA,
            Defendant.
_____/

## PLAINTIFF'S NOTICE OF FILING

Plaintiff, Cherl Sears, by her undersigned counsel hereby provides this Notice of Filing of the Deposition Transcript of Gracie Diaz.

Respectfully submitted,

Mark J. Berkowitz, P.A.
524 S. Andrews Avenue
Suite 200N
Ft. Lauderdale, Florida 33301
(954) 527-0570 Telephone
(954) 463-5428 Telecopier
E-Mail: mjb2157@aol.com.
Fla. Bar No. 369391

By: Mark J. Berkowitz

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent by regular mail on this 15th day of December, 2000, to Gordon Rogers, Esq., Muller, Mintz, et al., 200 S. Biscayne Blvd., Suite 3600, Miami, Florida 33131.

Mark J. Berkowitz

1               UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF FLORIDA

2                FORT LAUDERDALE DIVISION
           CASE NO. 00-6017-CIV-DIMITRIOULEAS

3

4

5     CHERL SEARS,

6                 Plaintiff,

                              COPY

7     vs.

8     THE SCHOOL BOARD OF BROWARD
     COUNTY, FLORIDA,

9                 Defendant.
     - - - - - - - - - - - - - - /

10

11                 Suite 200N
                 Law Office of Mark J. Berkowitz

12                524 South Andrews Avenue
                 Fort Lauderdale, Florida 33301

13                Tuesday, November 21, 2000
                 9:00 - 10:02 a.m.

14

15     -------------------------------------------------

16                   DEPOSITION

17                     OF

18                  GRACIE DIAZ
     -------------------------------------------------

19

20

     APPEARANCES:

21

22           MULLER, MINTZ, ET AL.,
           GORDON ROGERS, ESQUIRE,

23           Appearing on behalf of the Plaintiff.

24

           MARK J. BERKOWITZ, P.A.

25          MARK J. BERKOWITZ, ESQUIRE,
           Appearing on behalf of the Defendant.

                OFFICIAL REPORTING SERVICES, INC.
                    (954) 467-8204

```
1                        -    -    -

2                    I  N  D  E  X

3                        -    -    -

4     EXHIBITS:                      PAGE

5     Plaintiff's Exhibit 1            9
      Plaintiff's Exhibit 2           14
6     Plaintiff's Exhibit 3           15
      Plaintiff's Exhibit 4           16
7     Plaintiff's Exhibit 5           18
      Plaintiff's Exhibit 6           23
8     Plaintiff's Exhibit 7           38

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              P R O C E E D I N G S
 2                    -    -    -
 3     Thereupon,
 4                   GRACIE DIAZ,
 5     being by the undersigned Notary Public first duly
 6     sworn, responded as follows:
 7               THE WITNESS:  I do.
 8               DIRECT EXAMINATION
 9     BY MR. BERKOWITZ:
10          Q.   Ma'am, please state your name for us
11     for the record.
12          A.   Gracie Diaz.
13          Q.   And how are you currently employed?
14          A.   I'm employed as director of
15     instructional staffing for the School Board of
16     Broward County.
17          Q.   How long have you held that position?
18          A.   Two years.
19          Q.   Ms. Diaz, my name is Mark Berkowitz.
20     I'm here on behalf of Cherl Sears, who has filed a
21     claim against Broward County in the Federal
22     District Court.  And I'm going to be asking you
23     some questions today regarding the process that
24     eventually resulted in her not being approved for
25     continued employment with the Broward County
```

1    School Board.  If there's any questions that you
2    don't understand, let me know.  I'll be happy to
3    repeat them.  If you want to take a break at any
4    time, just let me know.
5              What are your duties as the director of
6    instructional staffing for the school board?
7         A.    As director of instructional staffing I
8    oversee the recruitment and hiring process of all
9    new instructional staff.  I also chair the
10   security clearance committee that reviews security
11   cases for all employees or all applicants and
12   employees to the system.  Also, review the
13   security information for a certain group of
14   employees, instructional student teachers,
15   substitutes.  I am in charge of leaves, transfers,
16   teacher bonuses, substitutes.
17        Q.    How long have you been employed by the
18   school board in total?
19        A.    Since February of '87.
20        Q.    And what was the position you held
21   immediately prior to being director of
22   instructional staffing?
23        A.    Assistant director of instructional
24   staffing.
25        Q.    How long did you hold that position?

1         A.    Two years.

2         Q.    What kind of educational background do

3    you have for that position?

4         A.    It only requires a bachelor's degree.

5    I have a bachelor's.  And I just need my practicum

6    for my master's.

7              MR. ROGERS:  Why don't you spell

8         that.

9              THE WITNESS:  P-r-a-c-t-i-c-u-m.

10              MR. ROGERS:  Whenever you're saying

11         names, it would help her if you could spell

12         them so you don't have to do it at the

13         end.  Also, remember that you have to

14         answer audibly.  If you nod your head or

15         say uh-huh, she'll kick you.

16    BY MR. BERKOWITZ:

17         Q.    Where did you get your undergraduate

18    degree?

19         A.    Florida State.

20         Q.    And a major in what?

21         A.    In elementary education.  I started in

22    the system as a teacher.

23         Q.    Specifically, what is your role in the

24    security clearance committee?

25         A.    I chair the committee.  And I take any

```
 1    cases that the committee should review in regards
 2    to instructional employees, the substitutes, all
 3    of the cases that I review.  There's a
 4    noninstructional director who brings all the
 5    noninstructional cases to the committee.  And,
 6    basically, what we do is we share the information
 7    that the applicant has provided based on the
 8    offense, so the individual statement of the
 9    offense, police reports, dispositions.
10          Q.    Did you review any records or documents
11    in preparation for your deposition today?
12          A.    Yes.
13          Q.    Do you recall what, specifically, you
14    reviewed?
15          A.    I reviewed all of the security
16    information that Ms. Sears provided, her statement
17    and police report disposition.  I reviewed our
18    security clearance procedures that you have in
19    front of you.  I reviewed her update application
20    that she sent in to apply to be considered as a
21    teacher applicant.  And I went through the copies
22    that you have -- what was presented to you, the
23    copies of all the documents for file.
24          Q.    How does the security clearance
25    committee make its decision with regard to a
```

 1     specific applicant before -- how does that work?

 2           A.    Each security member is given the name

 3     of the individual, the position that they are

 4     applying for, and then the offense, what was found

 5     in either the Docketrac system, the local Broward

 6     County system or what the individual admitted, and

 7     the date of the offense, the disposition of the

 8     offense.   And then, either the noninstructional

 9     director or I will share the individual's

10     statement, read the court disposition and the

11     police report to the individuals of the

12     committee.   And we discuss all of the information

13     that was shared.   And each person then votes

14     whether to approve the individual for employment

15     or deny.

16           Q.    Who are the members of the security

17     committee?

18                 MR. ROGERS:   Objection.   Point in

19           time.

20     BY MR. BERKOWITZ:

21           Q.    Well, at the time that Ms. Sears was

22     denied employment, October of 1998.

23           A.    The names were provided, to tell you

24     offhand because the committee has changed a few

25     times; but they were provided in a document, in a

1    memo, that lists all of the individuals that were

2    on the committee at that time.

3         Q.    And their decision is made by a

4    majority vote?

5         A.    Yes.

6         Q.    Does members of the security committee,

7    are there any guidelines that they use in making

8    their determinations on specific cases?

9         A.    At the time that Ms. Sears' case was

10   reviewed, we did not have written guidelines.  The

11   committee used guidelines basically by practice,

12   past practice and comparing similar cases.  But as

13   far as written guidelines, no, at that time there

14   were not written guidelines.

15        Q.    Do you know what the practical

16   guidelines were at that point in time?

17        A.    They really do vary from case to case.

18   We certainly -- there's some general practices,

19   for example, if a felony was committed within the

20   last ten years, we would review the case.  And we

21   would look at the adjudication and look at all of

22   the mitigating factors in the case, review them on

23   an individual basis; yet, if we found that there

24   was reason to believe that the event occurred,

25   that person may not be employable.  Certainly a

1    sex offense, a drug offense, those cases --

2    everything is reviewed on a case-by-case basis.

3    But if there's reason to believe that there was

4    probable cause or that there was information that

5    substantiated that this occurred, that person may

6    be deemed nonemployable.  But we did review them

7    case by case.

8         Q.   When did the board of the security

9    committee adopt formal written guidelines?

10        A.   We formalized the guidelines, I believe

11   it was in December of 1999 based on a request from

12   our school board for BSO to come in and review our

13   security clearance process, the professional

14   standards committee process that reviews current

15   employee investigations.  And as a result of the

16   review, BSO had given us samples of other

17   district's written guidelines.  And we

18   incorporated those other district guidelines,

19   specifically Pinellas's, and created the ones that

20   you are looking at.

21             MR. BERKOWITZ:  Let me show you what

22        I would like to mark has Plaintiff's

23        Exhibit 1.

24             (Plaintiff's Exhibit 1 was marked for

25        identification.)

OFFICIAL REPORTING SERVICES, INC.
(954) 467-8204

1    BY MR. BERKOWITZ:

2         Q.   I'm showing you what we've marked as

3    Plaintiff's Exhibit 1.  Are these the written

4    guidelines that you referred to earlier?

5         A.   Yes.

6         Q.   Who at BSO assisted in the development

7    of these guidelines; do you know?

8         A.   I can't recall their names right now.

9    There were three investigators that we worked

10   with.

11        Q.   Now, would it be fair to say that these

12   written guidelines codified or memorialized the

13   prior guidelines that you had before they became

14   written down?

15        A.   Yes.

16        Q.   If you look at Roman numeral number 4

17   where it says, Case By Case Review, where it says

18   DUI, is that an arrest or just a conviction, or

19   could it be both?

20        A.   It is -- if on the top it tells you

21   regardless of the adjudication, whether it was

22   guilty, no contest plea, the person entered in a

23   pretrial intervention, an adjudication withheld,

24   that's what it's referring to.  If it's a case

25   where someone is found not guilty, it's completely

```
 1      dismissed without the individual going through
 2      pretrial intervention or working out some kind of
 3      agreement with the courts, then that -- those
 4      cases are all -- those are the factors that we use
 5      in order to determine whether it's...
 6            Q.    Okay.  Now, in October of 1998 was
 7      there a policy by the security committee whereby
 8      applicants for instruction in the instructional
 9      staffing department would be denied employment
10      based upon a felony drug arrest?
11            MR. ROGERS:  Objection to form as to
12            the policy as a term of art.  You can go
13            ahead and answer the question.
14            THE WITNESS:  Was there a policy?
15            No.  It would be reviewed by the security
16            committee.  It wouldn't be automatic denial
17            of the employment.  The case would be
18            reviewed.  A drug offense can be many
19            different types of drugs or incidents.
20      BY MR. BERKOWITZ:
21            Q.    Well, look at number 2 where it says --
22      on Plaintiff's Exhibit Number 1, Felony Drug Use.
23      Do you see that?
24            A.    Yes.
25            Q.    And according to the written policy,
```

```
 1      that's automatically will not hire; is that
 2      correct?
 3           A.   Yes.  But that was put in place as of
 4      December 1999.  Prior to that, the cases were
 5      taken -- every case was taken to security
 6      clearance committee and reviewed on a case-by-case
 7      review.
 8           Q.   Now, specifically with respect to
 9      Ms. Sears in October of '98 --
10           A.   Yes.
11           Q.   -- what was the process whereby she was
12      denied continued employment with the school board?
13           A.   She applied to be considered as a
14      full-time applicant.  She completed the security
15      clearance form where she indicated that she had
16      been arrested and entered into pretrial
17      intervention program.  Then the charges were
18      dismissed.  She provided the required police
19      report, disposition of the case.  All of that was
20      shared with the security committee.  And the
21      security committee, after reviewing all of the
22      documents, felt as though, based on her statement
23      which referred to a male friend, that she was in
24      the vehicle with a male friend, that she had lent
25      this friend her car, it did not coincide with the
```

1    police report that said this was more than a male

2    friend.  This is someone she was living with.  And

3    that she --

4              In reviewing all of this information,

5    the committee felt that she may have not been

6    quite as forthcoming in her statement, that she

7    should have been a little bit more specific as to

8    what had occurred, and that it was a drug

9    offense.

10        Q.    So you're saying that the committee was

11   concerned about an inconsistency regarding

12   Ms. Sears said the individual was a male friend

13   and the police report said that she was living

14   with the person?

15        A.    That was part of it, that the committee

16   was concerned she was not giving us the full

17   picture.  And also, she did not indicate the

18   amount of drugs in her statement that was found in

19   the vehicle.

20        Q.    Were there any other alleged

21   inconsistencies in the statements that the

22   committee examined or evaluated?

23        A.    Could I see the statement?

24        Q.    Sure.  Is this the same document?

25        A.    Yes, it is.

OFFICIAL REPORTING SERVICES, INC.
(954) 467-8204

```
 1              MR. BERKOWITZ:  Let's mark this then
 2         as Plaintiff's Exhibit 2.
 3           (Plaintiff's Exhibit 2 was marked for
 4         identification.)
 5         BY MR. BERKOWITZ:
 6              Q.   Looking at Plaintiff's Exhibit 2, which
 7         is a statement signed by Ms. Sears on
 8         September 16th of '98 --
 9              A.   Yes.
10              Q.   -- what were the specific
11         representations that she made in her statement to
12         the board that caused the committee some concern?
13              A.   Specifically, she made it sound -- by
14         referring to this gentleman as a male friend of
15         mine, made it sound like it was a much more
16         informal type of relationship with the individual,
17         almost as though, I just lent my car to someone;
18         it's a casual friend; I had no idea what happened
19         to the car, that these drugs were in the car.
20              The police report stated that this
21         person was a live-in boyfriend.  And we later also
22         noticed that she had the same name of the
23         individual that was identified in the police
24         report.
25              Additionally, she -- I just lost my
```

1    train of thought.  I'm sorry.  Can I see the

2    police report?

3         Q.   Sure.  Got it?

4              MR. ROGERS:  I've got one.

5              MR. BERKOWITZ:  Okay.  Why don't we

6         mark this so the record is clear.

7              (Plaintiff's Exhibit 3 was marked for

8    identification.)

9    BY MR. BERKOWITZ:

10        Q.   Marking the police report as

11   Plaintiffs' Exhibit 3.

12        A.   The other concern I remember now when I

13   look at the police report is -- the other concern

14   is the money found in her purse and that the

15   police officer indicated that the narcotic dog

16   found the money in the purse that obviously had a

17   trace of or a scent of drugs.

18        Q.   So have we covered all the alleged

19   inconsistencies that this committee was concerned

20   about?

21        A.   Yes.

22        Q.   Now, is that the first step in the

23   process where they reviewed -- the committee

24   reviews these documents?

25        A.   Yes.

```
 1           Q.   And then are there subsequent steps in
 2      the process?
 3           A.   The individual -- after the committee
 4      makes the decision, the individual has a right to
 5      appeal the decision that the committee makes.
 6           Q.   And how did Ms. Sears or did Ms. Sears
 7      appeal that?
 8           A.   She did.  She sent a letter to the
 9      associate superintendent of district
10      administration, Mr. Blitman.
11                MR. ROGERS:  Spell that.
12                THE WITNESS:  B-l-i-t-m-a-n.
13                MR. BERKOWITZ:  Let me show you what
14      I'd like to mark as Plaintiff's Exhibit 4.
15                (Plaintiff's Exhibit 4 was marked for
16      identification.)
17      BY MR. BERKOWITZ:
18           Q.   Is that the appeal that you just
19      referred to?
20           A.   Yes, it is.
21           Q.   Now, does Mr. Blitman rule on the
22      appeals himself back in October of '98, or does he
23      consult with the committee, or how does that work?
24           A.   He consulted with the committee.  The
25      process was that he would take -- we would bring
```

1       the appeals back to the committee.  We would

2       review the documents again.  There would be

3       discussion on the merits of the case.  And

4       Mr. Blitman would listen to each person on the

5       committee, their opinion, if they thought that we

6       should support the appeal or deny the appeal.  And

7       then, ultimately, he would make the final

8       decision.

9               On occasion he may decide to support

10      how the committee members feel if he feels that

11      the person was unable to provide any additional

12      information that clarified the situation or that

13      showed that we misinterpreted something that she

14      had provided previous to that point.  But in this

15      case he supported the decision of the committee

16      and supported -- and denied her, rather.

17          Q.    Are there any minutes taken of these

18      security committee meetings?

19          A.    No.

20          Q.    So there's no record of them?

21          A.    No.

22          Q.    Was Ms. Sears given the opportunity to

23      personally address the members of the security

24      committee?

25          A.    No.  That is not in the procedures for

```
 1    the appeal.   The individual has to provide a

 2    letter and any supporting documents that he or she

 3    would like to provide.

 4          Q.    What about in the initial case review?

 5    Was there a procedure whereby Ms. Sears could have

 6    addressed the security committee?

 7          A.    No.

 8                MR. BERKOWITZ:   Let me show you what

 9          I would like to mark as Plaintiff's Exhibit

10          Number 5.

11          (Plaintiff's Exhibit 5 was marked for

12    identification.)

13    BY MR. BERKOWITZ:

14          Q.    Can you identify that document for us?

15          A.    Yes.   This is a standard letter if an

16    individual -- at that time.   We've changed it

17    since.   But the standard letter that indicates to

18    the individual that their appeal has been denied.

19          Q.    Is there any further process that's

20    allowed after this appeal is denied in terms of

21    internal school board procedures?

22          A.    Any individual has the right to appeal

23    to the superintendent, to the school board.   So

24    she certainly could have done that if she had

25    chosen to.
```

1          Q.    Do you know if that happened in this

2     case?

3          A.    I do not know that -- I do not think

4     that she did that, no.  I was never asked about it

5     beyond this or saw any other documents that she

6     did appeal higher.

7          Q.    Now, you were aware of the fact when

8     you initially considered Ms. Sears' case at the

9     security committee that she pleaded nolo contendre

10    to a drug offense; is that correct?

11         A.    Yes.

12         Q.    And you were aware of the fact that she

13    entered a pretrial intervention program; is that

14    correct?

15         A.    Yes.

16         Q.    And you were aware of the fact that she

17    successfully completed the pretrial intervention

18    program; is that correct?

19         A.    Yes.

20         Q.    And how do those factors enter into the

21    committee's decision to recommend that she not be

22    employed?

23         A.    We used several -- and Florida Statute

24    I believe it's 435.04 indicates offenses, Criminal

25    offenses regardless of adjudication, these

1    offenses would be prohibitors in districts or in

2    employers hiring individuals with these offenses.

3    And it includes if someone has pled nolo

4    contendre.  We use that as one factor.

5                Additionally, we use some of the

6    standards that have been -- and they haven't given

7    it to us in writing, but in conversations with

8    professional practices in Tallahassee that reviews

9    security cases for all new teacher applicants to

10    determine whether an individual would qualify for

11    a teaching certificate, they also take into

12    account nolo pleas, pretrial interventions; and

13    even if the case is dismissed, they review all of

14    that information as well and may deem someone

15    ineligible for a teaching certificate based on

16    it.

17                And certainly, because we look at that,

18    it was a drug offense and a felony offense, and

19    the severity of that offense and the concern of

20    safety of children, we -- and after looking at all

21    of her documents, we felt that there was reason to

22    believe that she wasn't completely, again,

23    completely -- giving us a complete picture, being

24    100-percent truthful in her statement.  And

25    because of the severity of the offense, the

1    committee deemed that she would not be employable

2    as a substitute or any type of employee in the

3    system.

4        Q.    Well, are you saying that according to

5    State of Florida teaching certificate provisions

6    that if one is arrested, has a felony arrest, that

7    person cannot get a teaching certificate?

8        A.    Not in every case, no.    But they

9    review, they review all of that information.    They

10   may deem that an individual with a felony offense

11   would not be eligible for a teaching certificate.

12   They have in the past.    They have for misdemeanor

13   drug offenses in the past denied people

14   eligibility for a teaching certificate.    They

15   review it also on a case-by-case basis.

16       Q.    Do you know what authority you're

17   assigning for that review on a case-by-case basis?

18       A.    Yes.    Jerry Whitmore of professional --

19   oh, the law?    Are you saying the law?

20       Q.    Yes.    Who is this Jerry Whitmore?

21       A.    Jerry Whitmore works for Professional

22   Practices in Tallahassee.    He's an administrator

23   that oversees professional practices.

24       Q.    Now, if Ms. Sears had indicated to the

25   security committee initially that this male was

1    not just a friend but it was a live-in boyfriend

2    and if she had indicated that she had a fifty

3    dollars in ones in her purse, what kind of

4    difference would that have made in the committee's

5    determination, if any?

6        A.    I would be speculating in trying to

7    speak for the entire committee. I hate to say --

8    I'd hate to say how they would have ruled or if

9    they would have ruled any differently. In my

10    opinion -- I would not have ruled differently

11    because of the nature of the offense. And still,

12    that doesn't really change the substance of her

13    statement and what occurred.

14        Q.    Now, if the record of the felony drug

15    arrest had been expunged or stricken from the

16    records, would that have made any difference in

17    the security committee's determination?

18        A.    No. We still review those records when

19    we receive information from FDLE, FBI, that a

20    record is sealed or expunged. We still have

21    access to those records and ask the individual to

22    disclose that information to us. And I believe in

23    our statement on the security form pursuant to

24    Florida Statute 943.058 that we have access to all

25    sealed and expunged records as well as juvenile

```
 1    offenses.
 2         Q.   You're referring to Plaintiff's Exhibit
 3    Number 2?
 4         A.   Yes.
 5              MR. BERKOWITZ:   Let me show you what
 6         I'd like to mark as Plaintiff's Exhibit 6.
 7              (Plaintiff's Exhibit 6 was marked for
 8    identification.)
 9    BY MR. BERKOWITZ:
10         Q.   Can you identify Plaintiff's Exhibit
11    Number 6 for us?
12         A.   This is the security clearance
13    procedure that we use for the security clearance
14    process of all employees.  And it is from our
15    personnel division handbook.
16         Q.   When was this particular procedure in
17    effect; do you know?
18         A.   It was -- if you look on the second
19    page, it was first prepared July 1st, '96; revised
20    November 20th, '98.  And this was the final one we
21    have reviewed.  And I believe there's been changes
22    since.  But this is the one that we changed when
23    we reviewed all of our security procedures and
24    established the written hiring guidelines that we
25    discussed earlier.
```

1          Q.   So Plaintiff's Exhibit Number 6 was not

2    in effect in October of 1996; is that correct?

3          A.   It was.   Not this version, but it was

4    in effect.   It's been in effect since July of '96.

5          Q.   Well, how does this version,

6    Plaintiff's Exhibit 6, differ from what was in

7    effect in October of '96, if you know?

8          A.   I do not know.

9          Q.   Now, if you look at section C-1 of

10   Plaintiff's Exhibit Number 6 where it indicates:

11          "If an individual provides documentation

12          of a criminal incident, regardless of

13          whether adjudication was withheld, such

14          individual shall not be employed."

15          Was that guideline in effect in

16   October of 1998?

17         A.   No, because it's underlined, that was

18   new verbiage that was added based on the review,

19   the BSO review.

20         Q.   So is it fair to say that in October of

21   '98 everything that was not underlined in

22   Plaintiff's Exhibit 6 was in effect in October of

23   1996?

24         A.   Could you restate that, please?

25         Q.   Is it fair to say that all of the

_____

OFFICIAL REPORTING SERVICES, INC.
(954) 467-8204

```
 1      language that is not underlined was in effect at
 2      the time of Ms. Sears' application in October of
 3      1996?
 4           A.   October of 1998?
 5           Q.   '98.  I'm sorry.
 6           A.   Okay.
 7                MR. ROGERS:  Objection to form.
 8           Calls for speculation.
 9                MR. BERKOWITZ:  If you know.
10                MR. ROGERS:  If you know.  Go ahead
11           and answer.
12                THE WITNESS:  No.  I can't say with
13           certainty, no.
14      BY MR. BERKOWITZ:
15           Q.   Who would know that at the school
16      board?  Do you know?
17                MR. ROGERS:  For the record, the
18           document should exist.
19      BY MR. BERKOWITZ:
20           Q.   Well, do you know who would know that
21      at the school board?
22           A.   I'm looking at the dates to see because
23      we did keep track of when it was revised.
24      October 1998.
25           Q.   Well, the document lists you as a
```

        1    contact person; is that correct?

        2         A.    Right.  I just want to make sure that,

        3    because I'm looking at the changes -- we made

        4    changes in November 20th, '98.  So I'm not sure --

        5    I believe in October of '98 the section --

        6    everything was here other than the sections that

        7    are underlined.  And now looking at the section on

        8    the second page that is stricken through, and that

        9    was really the only change was in November the

       10    change was that we changed the title of the person

       11    that they would appeal to, the individual would

       12    appeal to.  So other than that, then this would

       13    have been the document in October of '98.  So all

       14    the parts stricken through and underlined were not

       15    there.

       16         Q.    You mentioned that there was also a

       17    security procedure for noninstructional staff; is

       18    that correct?

       19         A.    Yes.

       20         Q.    And are you involved in the

       21    noninstructional staff review?

       22         A.    The noninstructional staffing director

       23    reviews those and then brings them to the

       24    committee where the same committee that reviews

       25    instructional reviews and noninstructional cases.

27

```
 1              Q.    In October of '98 were the guidelines
 2        for noninstructional staff for the security
 3        committee any different than for the instructional
 4        staff?
 5              A.    No.
 6              Q.    They were the same?
 7              A.    The same.
 8              Q.    And by noninstructional staff, what
 9        kind of staff are we talking about?
10              A.    Teacher aides, assistants, clerical,
11        food service, bus drivers.
12              Q.    Any other kinds of employees?
13              A.    Yes.  Custodians.  I'm sure I'm
14        omitting some, but general group.
15              Q.    So the custodian position in October of
16        '98 would be subject to the same guidelines, if
17        you will, noted in Plaintiff's Exhibit Number 6?
18              A.    Yes.
19              Q.    What is the difference between a
20        substitute, a pool substitute and an interim
21        substitute?
22              A.    A substitute is a daily substitute that
23        may be at a school just for one day two days a
24        week.
25                    A pool sub is a position that is
```

1    allocated to a school.  That substitute reports to
2    that school every day and substitutes every day at
3    that school.  That person does not have to work at
4    different schools.
5              The interim sub position is a
6    substitute that's filling in for an individual
7    that is out for 20 days or more.  Could be due to
8    a leave of absence, disability leave.  And also,
9    March 1st of every year we stop hiring full-time
10   teachers.  And any new positions, teacher
11   positions from March 1st on, would have to be
12   filled by an interim sub.  And an interim
13   substitute must have a bachelor's degree in order
14   to qualify.
15        Q.   Now, Ms. Sears was denied employment
16   both as a permanent hire and as a substitute, is
17   that correct, in October of '98?
18        A.   Yes.
19        Q.   So the security committee's concerns
20   were the same for a substitute teacher or for
21   full-time instructional staff; is that correct?
22        A.   Yes.
23        Q.   Do you know what the procedures were?
24   After Mr. Blitman denied the appeal, what would
25   have been the procedure after that specifically;

1    do you know?

2         A.    It would be up to Ms. Sears, if she

3    would choose to write a letter or to appeal to the

4    superintendent or to the school board.  She could

5    also apply back to the school board a year after

6    the initial review of her security clearance and

7    ask that the security committee review the

8    documents again and provide any additional

9    information or work experience information that

10   she's had within that year.

11        Q.    Do you know what procedures are

12   specifically used or guidelines are specifically

13   used in the appeal process to the superintendent,

14   how he would evaluate an application after

15   Mr. Blitman denies the appeal?

16        A.    We have various -- we've had various

17   superintendents.  And they handle them

18   differently.  But generally, they individually

19   calls them or writes them a letter.  And the

20   superintendent will review all the same

21   documents.  And the ones that I've been involved

22   with, he normally would ask the associate

23   superintendent over human resources, myself and

24   the director of noninstructional, since we both

25   basically chair the committee.  And he would ask

1    to go over all of the -- all the conversation, the

2    issues that were discussed, look at her paperwork,

3    look at her file and her references and

4    qualifications.  And sometimes they would -- the

5    superintendent would make a decision based on

6    that.  Other times the superintendent may still,

7    in addition, want to call the person in or discuss

8    the case with the individual.

9         Q.    What about if an appeal was further

10   made to the school board, what would be the

11   process then?

12        A.    The person would ask to speak before

13   the school board going through the

14   superintendent's liaison and schedule a time at a

15   board meeting to bring up his or her issue.  And

16   then at that point, the school board may or may

17   not decide to ask the superintendent to review the

18   matter again or look into the matter further.

19        Q.    Now, these procedures that you're

20   describing as of October of '98, after

21   Mr. Blitman's level, were they written down any

22   place or is this just a practice?

23        A.    It's a practice.

24        Q.    At any point did they become written

25   down?

```
 1          A.    No.

 2          Q.    Now, you mentioned that Ms. Sears could

 3    have reapplied after a year; is that correct?

 4          A.    Yes.

 5          Q.    If she had reapplied in, let's say

 6    December of 1999, would she have been

 7    automatically excluded from further employment?

 8          A.    No.   Her case -- she would go through

 9    the same process and her case would be reviewed

10    again.   And any additional information would be

11    shared with the committee because remember,

12    sometimes the committee changes from year to

13    year.   So it would be as though she started again

14    as new.   All the documents would be reviewed and

15    discussed.

16          Q.    Okay.   Maybe I misunderstood you,

17    then.   It was my understanding that -- I mean,

18    according to Plaintiff's Exhibit 6, as of December

19    of '99, the rules of the game changed in that

20    there were automatic exclusions; is that correct

21    or not?

22          A.    An individual still can apply each

23    year.   And if they provide -- this does not mean

24    automatic.   If a person can still provide

25    information, documents that might change the
```

 1    decision of the committee or through the appeal

 2    process change the decision of our associate

 3    superintendent, then they may be approved.

 4    Initially, if they meet --

 5            If it is, let's say, a felony drug

 6    offense and it's a no contest plea or a guilty

 7    plea or adjudication withheld, initially that

 8    person may be denied; but the person has a right

 9    to appeal and provide any additional information

10    that may change the decision of our committee or

11    the associate superintendent.  And these

12    individuals can apply each year to have their case

13    reviewed and can provide any additional

14    information that might change the committee's

15    decision.

16            Q.   So you're saying that even under the

17    new procedure, there was no hard and fast rule

18    that someone with a felony arrest would not be

19    automatically excluded?

20            A.   Right.  There's still an option for

21    someone to appeal and provide additional

22    information to help change the committee's

23    decision.

24            Q.   Post December 1999 were there any

25    formal written guidelines as to what either the

OFFICIAL REPORTING SERVICES, INC.
(954) 467-8204

```
 1        superintendent or the school board can review in
 2        terms of the application at that point?
 3            A.    I don't understand your question.
 4            Q.    Well, December of 1999, let's suppose
 5        that an applicant wants to go beyond the
 6        Hal Blitman appeal.  Are there formal guidelines
 7        at that point in terms of what the superintendent
 8        would look at?
 9            A.    No.
10            Q.    Would the superintendent automatically
11        exclude somebody for a felony arrest at that
12        point?
13            A.    No.  He would review all of the
14        documents.
15            Q.    And you don't see a conflict there in
16        what your testimony is with C-1 on Plaintiff's
17        Exhibit 6?
18            A.    No, because on initial review an
19        individual may be denied based on these offenses.
20        And these guidelines --
21                 MR. ROGERS:  Which document are you
22            referring to?
23                 THE WITNESS:  The personnel hiring
24            guidelines.
25                 MR. ROGERS:  What's the number on
```

```
 1            it?
 2                    MR. BERKOWITZ:  What was this?  1?
 3                    MR. ROGERS:  1, I believe.
 4                    MR. BERKOWITZ:  I think it was 1.
 5                    THE WITNESS:  On initial review this
 6            person may be denied.  And it was put in
 7            place so we would handle these cases
 8            consistently.  Then, this person does have
 9            the right to appeal and have further
10            discussion and provide a letter and any
11            further documentation, as I stated, that
12            would possibly change the decision by the
13            committee and/or by the associate
14            superintendent and certainly could, again,
15            appeal to the superintendent or the school
16            board.  So it's not -- initially, it might
17            be a denial based on what's on the
18            guidelines.  But that person does have a
19            right to provide additional information.
20       BY MR. BERKOWITZ:
21            Q.  So you're saying initially, before the
22       security committee, it may or may not be a rule of
23       exclusion; is that correct?
24            A.  Right.
25            Q.  But regardless of whether or not it's a
```

```
 1      rule of exclusion, initially, the person can still
 2      appeal that; is that correct?
 3           A.   Yes.
 4           Q.   But we're uncertain as to what
 5      standards or procedures would apply in that
 6      subsequent appeal process; is that correct?
 7           A.   Beyond the associate superintendent.
 8           Q.   Right.
 9           A.   Because it would be up to the
10      superintendent what information he would want to
11      review.
12           Q.   So at that level it's kind of a
13      case-by-case or an all-circumstances review?
14           A.   Well, it's a case by case when they
15      appeal as well by the associate superintendent.
16           Q.   Have there been any cases where someone
17      with a felony drug arrest, since 1998, has been
18      employed by the school board?
19           A.   Since 1998, I could not give you that
20      answer.
21           Q.   You don't know?
22           A.   No.
23           Q.   Can you recall anyone coming before
24      your committee being approved if they had a felony
25      drug arrest?
```

36

1       A.    Yes.

2       Q.    But you don't know the name of the

3    person?

4       A.    Offhand, no.  But we have been --

5    because certainly the passage of time, when that

6    offense occurred, plays into a big part of it.

7    And what the person has done since that time and

8    if the person has had a clean record since that

9    time, all of those factors are considered.

10       Q.    Well, are there any specific standards

11    regarding passage of time?  If it's a drug arrest

12    that's less than ten years old, the procedure says

13    the person will not be hired; is that correct?

14       A.    A felony drug offense less than ten

15    years, yes.  On initial review that individual may

16    be denied if they had a guilty plea, adjudication

17    withheld, no contest or pretrial intervention.

18    But again, that individual could apply for the

19    appeal and ask the associate superintendent to

20    review any information this person may have

21    taught -- this might have happened eight years

22    ago; and since, the person has gone through drug

23    rehabilitation, has taught in another state

24    successfully, was able to get a teaching

25    certificate, has wonderful references.  All of

1    that would be taken into consideration.

2         Q.   What specific written instructions are

3    provided to an applicant regarding the appeal

4    procedure?  Let's say in October of '98.  Were

5    there any written instructions provided?

6         A.   No.  In Ms. Sears' case, she contacted

7    our office and she was told to appeal to

8    Mr. Blitman by sending a letter.  But there is

9    nothing in writing that we hand them and say,

10   Okay, this is what you need do as far as this is

11   all of the information that you can supply.  We

12   ask that the individual provide any information

13   that would strengthen their case.

14        Q.   Did you inform Ms. Sears that she was

15   to provide any additional information that was to

16   strengthen her case in October of '98?

17        A.   I did not speak to her personally.  And

18   I am unsure of who she spoke to or what that

19   individual told her.

20        Q.   But there was nothing in writing at

21   that time as to what an applicant could provide in

22   an appeal procedure; is that correct?

23        A.   No.  Yes, it is correct.  There is

24   nothing.

25             MR. BERKOWITZ:  Let me show you what

```
 1            I'd like to mark as Plaintiff's Exhibit 7.
 2            (Plaintiff's Exhibit 7 was marked for
 3       identification.)
 4       BY MR. BERKOWITZ:
 5            Q.   Let me ask you this question before we
 6       go to this document.  Did Ms. Sears have the
 7       proper credentials to continue to teach in
 8       October of '98?
 9            MR. ROGERS:  Objection to form.
10           Teach as what?
11           MR. BERKOWITZ:  Well, teach as a
12           permanent teacher in social science.
13           THE WITNESS:  Well, when you say
14           continue, she never was hired as a
15           teacher.  She would not and did not at the
16           time have the credentials to qualify for a
17           teaching certificate that would enable her
18           to be hired as a full-time teacher.
19       BY MR. BERKOWITZ:
20           Q.   What authority do you have that
21       supports that conclusion?
22           A.   This document.  If you take a look at
23       the second paragraph, the statement of eligibility
24       from the Department of Education.
25           MR. ROGERS:  This is Plaintiff's 7?
```

39

```
 1              MR. BERKOWITZ:  Yes.
 2              THE WITNESS:  Second sentence, Based
 3         upon current requirements, you will be
 4         eligible for a two-year nonrenewable
 5         temporary certificate valid for two
 6         consecutive school fiscal years covering
 7         middle grades social science when you
 8         complete the following subject area
 9         requirements:  The three hours in history
10         and three hours in geography.
11              In order for a teacher to be eligible
12         to teach in the State of Florida, a teacher
13         has to be eligible for a temporary
14         certificate.  She was -- Ms. Sears was
15         still lacking six hours in order to be
16         eligible for a teaching certificate.
17              From all of the paperwork that we
18         had, she did not provide any transcripts or
19         course work that showed that she had
20         completed these six hours; therefore, she
21         would not qualify for a temporary
22         certificate and could not be recommended
23         for a full-time teaching certificate.  Her
24         degree in criminal justice does not qualify
25         her for a teaching certificate.
```

40

```
 1    BY MR. BERKOWITZ:

 2         Q.   Well, how was it that she qualified for

 3    a substitute teaching position?

 4         A.   You can be a substitute teacher with 60

 5    semester hours of college credit.

 6         Q.   Did she have any particular period of

 7    time in which to complete the six hours of

 8    additional study?

 9         A.   In order to qualify for a temporary

10    certificate, no.  You cannot hold the temporary

11    certificate and take these hours.  They will not

12    issue the temporary certificate until she met

13    those requirements.

14              What this document does is it showed

15    that Cherl applied to have her transcripts

16    evaluated for middle grade social science.  The

17    validity of this document is for two years.  In

18    essence, it says, Cherl, we will state that you

19    can -- if we increase the requirement for middle

20    grade social studies, let's say we go from 18

21    hours to now requiring 24 hours to middle grade

22    science, you fall under the old rules.  We're

23    protecting you for the two years, the validity of

24    this statement.  And you only need six hours to

25    qualify for a temporary certificate.  But in order
```

```
 1      for that certificate to be issued, she had to
 2      complete the six hours because you cannot teach
 3      without qualifying at least for the temporary
 4      certificate.
 5              Q.   So it's your position that in October
 6      of '98 she did not have the appropriate
 7      requirements completed for the issuance of a
 8      permanent certificate?
 9              A.   Yes.
10              Q.   Were there any documents that she was
11      given in October of '98 that indicated that?
12              A.   She was sent a letter asking her to
13      provide the statement of eligibility so that we
14      could make a determination whether she was
15      eligible or not.   And, obviously, she applied.
16      And it's showing that she, indeed, was not
17      eligible yet because she still lacked six hours.
18              MR. BERKOWITZ:   I don't have any
19          other questions, then.   Thank you.
20
21          (The witness was excused.)
22
23      (At 10:02 a.m. the deposition was concluded.)
24
25
```

```
1    STATE OF FLORIDA

2    COUNTY OF PALM BEACH

3

4

5

6              I, Mary R. Desiderio, the undersigned

7    Notary Public, in and for the State of Florida,

8    hereby certify that GRACIE DIAZ personally

9    appeared before me and was duly sworn.

10

11

12

13             WITNESS my hand and official seal this

14   6th day of December, 2000.

15

16

17

18

19

20   _____

21

22

23

24

25
```

MARY R. DESIDERIO
MY COMMISSION # CC 885990
EXPIRES: November 4, 2003
Bonded Thru Notary Public Underwriters

```
 1                  C E R T I F I C A T E

 2

 3       STATE OF FLORIDA

 4       COUNTY OF PALM BEACH

 5

 6           I, Mary R. Desiderio, Registered Professional

 7       Reporter, do hereby certify that I was authorized

 8       to and did stenographically report the foregoing

 9       deposition; and that the transcript is a true and

10       correct transcription of the testimony given by

11       the witness.

12

13           I further certify that I am not a relative,

14       employee, attorney or counsel of any of the

15       parties, nor am I a relative or employee of any of

16       the parties' attorney or counsel connected with

17       the action, nor am I financially interested in the

18       action.

19

20           Dated this 6th day of December, 2000.

21

22

23       _____

24           Mary R. Desiderio,

25           Registered Professional Reporter
```

# School Board of Broward County, Florida
## Personnel Hiring Guidelines
Criminal Records Including Guilty Pleas (Regardless of Adjudication),
No Contest Pleas, Pre-trial Intervention/Diversion
This is not intended to be a complete list of all disqualifying criminal offenses.

### I. Will Not Hire

- Extreme Violence (Aggravated Assault/Aggravated Battery, Murder, Attempted Murder)
- Sexual Offense (Lewd & Lascivious-Sexual Battery, Rape, Sex With A Minor)
- Kidnapping
- False Imprisonment
- Child Abuse
- Arson
- Pornography
- Extortion
- Manslaughter (Including Vehicular Homicide/Involuntary)
- Indecent Exposure If Sexual In Nature
- Currently on probation or has a case pending

### II. Will Not Hire - If Offense Less Than 10 Years Old.    Will Consider And Carefully Review If Older Than 10 years.

- Felony Drug Use
- Grand Theft / Robbery
- Burglary
- Felony Battery/Assault
- Felony Possession of a Concealed Weapon
- Welfare/Unemployment Fraud
- Forgery
- Prostitution or Solicitation of Prostitution
- Grand Larceny
- Other Felonies Not Mentioned in Section I

### III. Will Not Hire - If Offense Is Less Than 5 Years Old.    Will Consider And Carefully Review If Older Than 5 Years.

- Multiple DUI's
- Misdemeanor Drug and/or Paraphernalia
- Possession of Concealed Weapon - Misdemeanor
- Battery/Assault
- Resisting Arrest With Violence
- Domestic Violence

### IV. Judgment - Case By Case Review

- DUI - One Incident Only
- Sale of Alcohol to Minor
- Worthless Checks
- Disorderly Conduct
- Multiple Criminal Offenses
- Petty Theft (Theft to Deprive/Retail Theft/Shoplifting)
- Loitering
- Trespassing
- Arrest With Out Violence
- Larceny
- Other criminal offenses



12/10/99



The School Board of Broward County, Florida

## Security Background Check

**THIS FORM MUST BE TURNED IN WITH YOUR APPLICATION FOR EMPLOYMENT.**

Name: Sears, Cherl, D. Hutchins   SS#:   Date of Birth: 06|23|66
  Last    First    Middle    Maiden

Address 4730 N.W 11St LauderHill Fla 33313   Phone #: 7979968

At the time of employment your fingerprints will be researched by local, state and federal law enforcement agencies. Sealed or expunged records must be revealed to the School Board of Broward County pursuant to F.S. 943.058. Your employment with the Broward County School District is temporary and probationary pending successful processing of your fingerprints. The following questions must be answered truthfully. A "Yes" answer to any of the following questions, does not automatically keep you from being hired. Your omission or falsification of any criminal history, including juvenile incidents, (misdemeanor or felony, see reverse for examples of criminal offenses) information will result in your immediate termination.

Yes ☐ No ☒  1. Have you ever been convicted of an offense (misdemeanor or felony) other than a minor traffic violation? (Driving under the Influence [DUI] and Driving while Intoxicated [DWI] convictions are not minor and must be reported.)

Yes ☐ No ☒  2. Have you ever been found guilty of a criminal offense?

Yes ☒ No ☐  3. Have you ever entered a nolo contendre or no contest plea in a criminal proceeding?

Yes ☐ No ☒  4. Have you ever had a criminal record sealed?

Yes ☐ No ☒  5. Have you ever had a criminal record expunged?

Yes ☒ No ☐  6. Have you ever participated in any type of pre-trial intervention/diversion program or had adjudication withheld in a criminal offense?

Yes ☐ No ☒  7. Are there criminal charges currently pending against you?

Yes ☐ No ☒  8. Have you ever been imprisoned or jailed in a criminal proceeding?

Yes ☐ No ☒  9. Have you ever been placed on probation in a criminal proceeding?

Yes ☐ No ☒  10. Have you ever paid a fine in a criminal proceeding?

Yes ☐ No ☒  11. Have you ever failed to appear in court or forfeited bond in a criminal proceeding?

Yes ☐ No ☒  12. Have you ever had a teaching certificate revoked or suspended? If yes, in what state and when? _____

Yes ☐ No ☒  13. Have you ever had sanctions placed on your teaching certificate for any reason?

Yes ☐ No ☒  14. Have you ever been denied a teaching certificate anywhere?

Yes ☐ No ☒  15. Is disciplinary action currently pending anywhere against your teaching certificate?

EXHIBIT
Plaintiff's
2
11-21-00 M

you answered "Yes" to any question above, you must explain fully on the reverse side of the form. If you answered "es" to question(s) 12, 13, 14, or 15, you must give the name of the State where your teaching certificate was :voked, suspended, sanctioned, denied or where action is currently pending against you.

OTE: Pursuant to Florida Statute 943.058 Criminal History Record Expunction or Sealing, persons to be employed a position having direct contact with children must answer questions 4, 5 and 6. The School Board of Broward ounty will receive information on all records, including juvenile, that have been sealed, expunged, or where ijudication was withheld. To omit a response or to be untruthful in your response, regardless of any previous formation received from your attorney or the Court will be considered falsification of your application d will result in your being terminated. If you wish to seek counsel prior to completing this section, you may take s application with you.

(over)

0139

Name: Sears , Cherl , D, Hutchins

Last  First  Middle  Maiden

INCIDENCE #1 (Request 2nd sheet if more than one Incidence)

If Arrested, Where?: Broward CNTY.  Date of Arrest: 6/95

Arresting Agency: # City of Ft Lauderdale.

Offense: Poss of Cocain

Please provide detailed explanation: I let a male friend of mine Borrow my car for the day. And when my friend returned to pick me up I got into the vehicle on the passager side. At that time proceeded to the mall while on our way to the mall we were stopped by serval Police officers at that time 1 office asked for some Id idetication and then decided to search the care car for some unknown reason. After searching the car Cocain was found inside the car which I had no knowledge of. At that time both of use were arrested. And After further investigating the incident. I was ordered to attend a Pre-Trail Final Disposition: Intervention Program a the case was Dismissed. — Case was Dismissed.

---

**EXAMPLES OF CRIMINAL OFFENSES:** Assault/battery, auto theft, disorderly conduct, domestic violence, DUI/DWI, fraud (welfare/food stamps) loitering, prostitution/solicitation, robbery, shoplifting, theft (grand/ petty), trespassing, worthless checks. NOTE: This is not a complete list and is intended to provide examples only. You must list all convictions including juvenile incidents and those in which adjudication was withheld and/or records were sealed/expunged.

By signing this document I certify that I have carefully read and fully understand each question and that all information contained herein is true and accurate. My signature further certifies that there is no falsification of any information, omission of any information requested or any misrepresentation of information requested. I also understand that my fingerprints will be submitted to the Federal Bureau of Investigation for a **complete** criminal history background check.

By my signature, I authorize the Broward County School Board to conduct any investigation necessary to verify all information identified on this form. My signature on this document provides for the release of any sealed or expunged records in my name by any court. Included in this grant of authority is my permission to contact any and all former employers and other persons acquainted with me or in possession of information concerning me to supply such information to the Security Clearance Office. All monies received as part of the fingerprinting process are non-refundable.

By my signature, I certify that I know, understand, and agree that any false statement or omission of information requested will result in my immediate termination.

Cherl Sears      9/16/98

Signature of Applicant      Date

Rev. 3/97; 8/97; 10/97; 2/98
Word Process Instructional Staff Forms:Security BG Check (Rev.)

□ ARREST FORM

**BROWARD COUNTY** 11456

| FILING AGENT | OFFENSE REPORT | LOCATION NO. | | | |
|---|---|---|---|---|---|
| B.P.O. | 95-5-16697 | | | | |

| DEFENDANT'S LAST NAME | FIRST | MIDDLE | SUF | ALIAS/STREET NAME | CITIZENSHIP |
|---|---|---|---|---|---|
| SEARS | DAVID | | | | USA |

| RC | SEX | HGT. | EYES | HAIR | WGT. | COMP. | AGE | D.O.B. | BIRTHPLACE | SCARS, MARKS, TT |
|---|---|---|---|---|---|---|---|---|---|---|
| B | M | 5'4" | BR | BLK | 120 | DK | 28 | 3-1-67 | NASSAU BAHAMAS | R. Arm |

| PERMANENT ADDRESS | | LOCAL ADDRESS | | |
|---|---|---|---|---|
| 1730 NW 11 St Lauderhill FL | | 1730 NW 11 St Lauderhill | | |

| PLACE OF EMPLOYMENT | LENGTH |
|---|---|
| Laster Lawn Service | |

| RESIDENCE TYPE | (1) CITY | (2) COUNTY | (3) FLORIDA | (4) OUT-OF-STATE |
|---|---|---|---|---|

| HOW LONG DEFENDANT IN BROWARD COUNTY | BREATHALYZER BY/CCN | READING | PLACE OF ARREST | DATE/TIME ARRESTED | ARRESTING OFFICER(S) CCN |
|---|---|---|---|---|---|
| | | | 5 Lm 2601 W. Broward. | 6-14-95 | Parr 1254 |

| OFFICER INJURED | UNIT | ZONE | BEAT | SHIFT | UNIT TRANSPORTING PRISONER | TRANSPORTING OFFICER/CCN | PICK-UP TIME | DRUG TYPE |
|---|---|---|---|---|---|---|---|---|
| Y □ N ☒ | | | | | | | TIME ARRIVED AT BSO | |

| NAME OF VICTIM (IF CORPORATION, EXACT LEGAL NAME AND STATE OF INCORP.) | ADDRESS | PHONE # |
|---|---|---|
| VINCENT SMALL | 1909 NW 46 Ave Lauderhill, FL | |

| COUNT NO. | OFFENSES CHARGED | CITATION #, IF APPLICABLE | F.S. # OR CAPIAS/WARRANT # |
|---|---|---|---|
| 1 | MURDER | | 782-04 |

**PROBABLE CAUSE AFFIDAVIT**

Before me this date personally appeared _Robert H. Parr_ who being first duly sworn deposes and says that on _29_ day of _MAY_ 19 _95_ at _4701 NW 14 St Lauderhill FL_ (crime location) the above named defendant committed the above offenses charged and the facts showing probable cause to believe same are as follows:

_City of Lauderhill Police Officer responded to the Stop and Shop Store at_
_the above location. At arrival Victim was Shot and collapsed across the_
_Street at a private home. The Victim Died at Broward General_
_Hospital Later that evening._
_Witness Wanna Sanders observed the defendant arrive at the Scene in a W_

I swear the above statement is correct and true to the best of my knowledge and belief.

| OFFICER/AFFIANT'S SIGNATURE | OFFICER'S NAME/CCN | OFFICER'S D |
|---|---|---|
| | R H Parr 1254 | |

STATE OF _____ COUNTY OF _____

The foregoing instrument was acknowledged before me this _15_ day of _June_ 19 _95_ who is personally known to me or who has produced (ID Type) _____ as identification and who _____ take an oath. (DID OR DID NOT)

_____
DEPUTY CLERK OF THE COURT, NOTARY PUBLIC, OR ASSISTANT STATE ATTORNEY    TITLE OR RANK/CCN _Police 201_

EXHIBIT
Plaintiff's
3
11-21-00 MO

(SEAL OR STAMP)

0104

SEVENTEENTH JUDICIAL CIRCUIT
BROWARD COUNTY
STATE OF FLORIDA

FIRST APPEARANCE / ARREST FORM
SHOULD ADDITIONAL SPACE BE NEEDED, USE PROBABLE CAUSE AFFIDAVIT CONTINUATION.

Ong - Court
2nd - State Atty
3rd - Filing Agency

**BROWARD COUNTY**
ARREST NO.

| DEFENDANT'S LAST NAME | FIRST | MIDDLE | SUF. | HGT. | WGT. | RC. | SEX | D.O.B. | OFFENSE REPORT | ARRESTING OFFICER (S)/CCN |
|---|---|---|---|---|---|---|---|---|---|---|
| SEARS | Davis | | | 5'4" | 130 | B | M | 3/167 | 95-5-16697 | R.H. Pale #1256 |

NAME OF VICTIM (IF CORPORATION, EXACT LEGAL NAME AND STATE OF INCORP.)    ADDRESS    PHONE #
Vincent Stall    1909 NW 46 Aor Laucohill, Fl

| COUNT NO. | OFFENSES CHARGED | CITATION #, IF APPLICABLE | F.S. # OR CAPIAS/WARRANT # |
|---|---|---|---|
| 1 | Murder | | 782-04 |
| | | | |
| | | | |
| | | | |

Before me this date personally appeared __Robert H. Pale__ who being first duly swo
deposes and says that on __29__ day __May__ 19 __95__ at __1701 NW 14 St Laumhill__ (crime location) t
above named defendant committed the above offenses charged and the facts showing probable cause to believe same are as follows:

Cadillac with blue fabric roof and solo twining previously the EAST side of the Premises. Samuels observes the defendant approach the victim and begin to argue with him. The defendant was described as wearing a white tee-shirt. The defendant was described as having a short Afro haircut, and the handgun which the defendant carried was concealed in his waistband. Samuels describes the shooter as 22-30 Samuels observes the shooter to pull out the pistol described as an automatic, then begin to strike the victim with the pistol on the head and face. After entering the Stop and Shop store Samuels hears a gun shot, observes the victim bleeding, observes the victim cross the street then collapse onto a lawn.

Witness Samuels identifies the defendant from a photo lineup and signed a photo lineup affidavit. Samuels states that the vehicle left the scene southbound.

I swear the above statement is correct and true to the best of my knowledge and belief

OFFICER/AFFIANT'S SIGNATURE    R.H. Pale 1256    OFFICER'S NAME/CCN    OFFICER'S DIVISION

STATE OF _____    COUNTY OF _____

The foregoing instrument was acknowledged before me this __5__ day of __June__, 19 __85__ who is personally
known to me or who has produced _____ (ID Type) _____ as identification and who _____ (DID OR DID NOT) take an oath.    (SEAL OR STAMP)

Buce 66
DEPUTY CLERK OF THE COURT, NOTARY PUBLIC, OR ASSISTANT STATE ATTORNEY    TITLE OR RANK/CCN
FIRST APPEARANCE/ARREST FORM

SEVENTEENTH JUDICIAL CIRCUIT
BROWARD COUNTY

Orig. - Court
2nd - State Atty
3rd - Filing Agency
4th - Arresting Age

0105

☐ ARREST FOR
☐ COMPLAINT AFFIDAVIT
☐ PROBABLE CAUSE AFFIDAVIT

**BROWARD COUNTY**
ARREST NO.

| DEFENDANT'S LAST NAME | FIRST | MIDDLE | SUF. | HGT. | WGT. | RC | SEX | D.O.B. | OFFENSE REPORT | ARRESTING OFFICER (S)/CCN |
|---|---|---|---|---|---|---|---|---|---|---|
| Sears, | David | | | 5'4" | 130 | B | M | 3-11-67 | 95-5-11647 | R.H. Parr #1256 |

| NAME OF VICTIM (IF CORPORATION, EXACT LEGAL NAME AND STATE OF INCORP.) | ADDRESS | PHONE # |
|---|---|---|
| Vincent Small (Deceased) | 1909 NW 46 Ave, Lauderhill | |

| COUNT NO. | OFFENSES CHARGED | CITATION #, IF APPLICABLE | F.S. # OR CAPIAS/WARRANT # |
|---|---|---|---|
| 1 | Murder | | 782.04 |
| | | | |
| | | | |
| | | | |

Before me this date personally appeared ___Robert H. Parr___ who being first duly swo
deposes and says that on __27__ day __May__, 19_95_ at _4701 NW 14 ST Lauderhill_ (crime location) t
above named defendant committed the above offenses charged and the facts showing probable cause to believe same are as follows:

Witness Aisha Eubanks and Jermaine Prince were both Seat
in an automobile next to the crime scene. Both described
the automobile driven by the shooter as white. Prince recalle
that the shooter pulled a handgun from his waistband and
began beating the victim in the face and head with the gu
while the victim pleaded with him to stop. The shooter
fired one time striking the victim who was now on the
ground. The witness saw the victim walk across the roadw
and finally collapsed on a lawn.
Ft Lauderdale Police stopped the defendant who was
driving a white Cadillac with a blue fabric roof. Gold trim
ornaments with light window tint. The defendant was
arrested for a traffic offense and possession of Crack
Cocaine, at which time your Affiant was called & advised.
Witness Eubanks and Prince reported that the shooter
looked similar to the person who committed the crime.

I swear the above statement is correct and true to the best of my knowledge and belief.

_____ R.H. Parr 1256
OFFICER/AFFIANT'S SIGNATURE    OFFICER'S NAME/CCN    OFFICER'S DIVISION

STATE OF _____ COUNTY OF _____

The foregoing instrument was acknowledged before me this __15__ day of __June__, 19_95_ who is personally
known to me or who has produced (ID Type) _____ as identification and who _____ take an oath.
(DID OR DID NOT)

_____    Police 256
DEPUTY CLERK OF THE COURT, NOTARY PUBLIC, OR ASSISTANT STATE ATTORNEY    TITLE OR RANK/CCN

FIRST APPEARANCE/ARREST FORM

SEVENTEENTH JUDICAL CIRCUIT
BROWARD COUNTY

(SEAL OR STAMP)

Org - Court
2nd - State Atty
3rd - Filing Agency
4th - Arresting Agen

0106

COMPLAINT/AFFIDAVIT                                     ☐ ARREST FORM

ARREST NO.                                              OBTS NO.

| DEFENDANT'S LAST NAME | FIRST | MIDDLE | SUF. | HGT. | WGT. | RC | SEX | D.O.B. | OFFENSE REPORT | ARRESTING OFFICER (S)/CCN |
|---|---|---|---|---|---|---|---|---|---|---|
| Seav, | David | | | 5'4" | 130 | B | M | 3-11-67 | 95-5-16617 | R. H. Parr #12 |

| NAME OF VICTIM (IF CORPORATION, EXACT LEGAL NAME AND STATE OF INCORP.) | ADDRESS | PHONE # |
|---|---|---|
| Vincent Small | 1909 NW 46 Ave, Lauderhill | |

| COUNT NO. | OFFENSES CHARGED | CITATION #, IF APPLICABLE | F.S. # OR CAPIAS/WARRANT # |
|---|---|---|---|
| 1 | Murder | | 782.04 |
| | | | |
| | | | |
| | | | |

Before me this date personally appeared _Robert H. Parr_ who being first duly sworn deposes and says that on _94_ day _May_, 19_95_ at _4701 NW 19 St Lauderhill_ (crime location) the above named defendant committed the above offenses charged and the facts showing probable cause to believe same are as follows:

(supporting witness Samuels Positive Identification)
The defendant additionally made a comment to the
transporting Ft Lauderdale Officer asking if we
wishing to question him about a "Robbery or a Killing"
No one mentioned either crime to him.
Broward Associate Medical Examiner Dr Fire advised
that the victim died by a gunshot wound and the
manner of death was ruled to be a Homicide.
Witness Samuels was shown a photo lineup of the
defendant's vehicle & stated it looked like the
car she observed at the crime scene.
Defendant voluntarily submitted/demanded to a polygraph
examination. Upon conclusion, the results indicated the
defendant was deceptive on key questions surrounding the
shooting. Defendant denied all allegations regarding
the shooting incident.

I swear the above statement is correct and true to the best of my knowledge and belief.

OFFICER/AFFIANT'S SIGNATURE          _R H Parr    12%_          OFFICER'S DIVISION
                                      OFFICER'S NAME/CCN

STATE OF _____    COUNTY OF _____

The foregoing instrument was acknowledged before me this _15_ day of _JUNE_, 19_95_, who is personally
known to me or who has produced (ID Type) _____ as identification and who _____ take an oath.
                                              (DID OR DID NOT)

_____                          _Police  2.6_
DEPUTY CLERK OF THE COURT, NOTARY PUBLIC OR ASSISTANT STATE ATTORNEY    TITLE OR RANK/CCN

FIRST APPEARANCE/ARREST FORM

(SEAL OR STAMP)

Orig - Court
2nd - State Atty
3rd - Filing Agency
4th - Arresting Agency

SEVENTEENTH JUDICAL CIRCUIT
BROWARD COUNTY                                            0107

| FILING AGENT | | OFFENSE REPORT # | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| FT. LAUD. P.D. | | 95-95287 | | | | | | | | |

| DEFENDANT'S LAST NAME | | FIRST | MIDDLE | SUF | ALIAS/STREET NAME | | | | CITIZENSHIP |
|---|---|---|---|---|---|---|---|---|---|
| SEARS | | DAVID | NMN | | DAVE | | | | R. B.H.I |

| RC. | SEX | HGT. | EYES | HAIR | WGT. | COMP. | AGE | D.O.B. | BIRTHPLACE | SCARS, MARKS, TT |
|---|---|---|---|---|---|---|---|---|---|---|
| B | M | 5'4" | BRN | BLK | 135 | LT. | 28 | 3-11-67 | NASSAU, BAH. | RT. AL. BALL |

PERMANENT ADDRESS
4730 N.W. 11 DT ST. LAUDERHILL, F. 33313

LOCAL ADDRESS
4730 N.W. 11 DT ST. L. HILL

PLACE OF EMPLOYMENT
LASTER LAWN SER

LENGTH 2 YR

| RESIDENCE TYPE: | (1) CITY | (2) COUNTY | (3) FLORIDA | (4) OUT-OF-STATE |
|---|---|---|---|---|

| HOW LONG DEFENDANT IN BROWARD COUNTY | BREATHALYZER BY/CCN | READING | PLACE OF ARREST | DATE/TIME ARRESTED | ARRESTING OFFICERS CCN |
|---|---|---|---|---|---|
| 28 YRS | | | 1500 E. SUNRISE | 6-14-95 | R.P. MARTIN |

| OFFICER INJURED | UNIT | ZONE | BEAT | SHIFT | UNIT TRANSPORTING PRISONER | TRANSPORTING OFFICER/CCN | PICK-UP TIME- | DRUG TYPE |
|---|---|---|---|---|---|---|---|---|
| Y☐ N☒ | M-14 | 102 | PTR. | 2 | | | TIME ARRIVED AT BSO | |

| TYPE | B-BARBITURATE H-HALLUCINOGEN P-PARAPHERNALIA/ U-UNKNOWN | ACTIVITY | ACTIVITY | A-SMUGGLE M-MANUFACTURE/ K-DISPENSE/ Z-OTHER | INDICATION OF: | Y | N | UK |
|---|---|---|---|---|---|---|---|---|
| N-N/A C-COCAINE M-MARIJUANA EQUIPMENT Z-OTHER | | S-SELL | B-BUY D-DELIVER PRODUCE/ DISTRIBUTE | ALCOHOL INFLUENCE | ☐ ☐ ☐ | | | |
| A-AMPHETAMINE E-HEROIN O-OPIUM S-SYNTHETIC | | P-POSSESS T-TRAFFIC E-USE | CULTIVATE | DRUG INFLUENCE | ☐ ☐ ☐ | | | |

DEFENDANTS VEHICLE MAKE
VEHICLE TOWED TO R.P.D.

| NAME OF VICTIM (IF CORPORATION, EXACT LEGAL NAME AND STATE OF INCORP.) | ADDRESS | PHONE # |
|---|---|---|
| | | |

| COUNT NO. | OFFENSES CHARGED | CITATION #, IF APPLICABLE | F.S. # OR CAPIAS/WARRANT # |
|---|---|---|---|
| 1 | OPERATING VEH. AGAINST RESTRICTIONS (BUSINESS PURPOSES ONLY) | 281816-K | 322.16 |
| 2 | POSSESSION OF COCAINE | | |

Before me this date personally appeared RICHARD P. MARTIN who, being first duly sworn, deposes and says that on 14 day of JUNE 19 95 / 1500 E. SUNRISE BLVD. FT. LAUD. location, the above named defendant committed the above offenses charged and the facts showing probable cause to believe same are as follows: BROWARD COUNTY

THE UNDERSIGNED OFFICER + OFF. D. PORO INITIALLY OBSERVED THE

ARRESTED VEHICLE IN THE 2300 BCK OF N.W. 19 TH ST. AS IT WA

EASTBOUND. THE VEHICLE FIT THE DESCRIPTION OF A VEHICLE THA

WAS A SUSPECT VEHICLE IN A HOMICIDE WHICH BSO WAS HAND

LINE. DET. PARR OF BSO HAD GIVEN THESE OFFICERS CONTINUED

I swear the above statement is correct and true to the best of my knowledge and belief.

OFFICER/AFFIANT'S SIGNATURE

OFFICER'S NAME/CCN: K.P. MARTIN 514

OFFICER'S DIVISION: PATROL

STATE OF ___ COUNTY OF ___

The foregoing instrument was acknowledged before me this 15 day of JUNE, 19 95 who is personally known to me or who has produced (ID Type) _____ as identification and who _____ (DID OR DID NOT) take an oath.

DEPUTY CLERK OF THE COURT, NOTARY PUBLIC OR ASSISTANT STATE ATTORNEY

TITLE OR RANK/CCN

(SEAL OR STAMP)

0108

SEVENTEENTH JUDICIAL CIRCUIT
BROWARD COUNTY
STATE OF FLORIDA

FIRST APPEARANCE / ARREST FORM

SHOULD ADDITIONAL SPACE BE NEEDED, USE PROBABLE CAUSE AFFIDAVIT CONTINUATION.

| Orig - Court |
|---|
| 2nd - State Atty |
| 3rd - Filing Agency |
| 4th - Arresting Agency |

COMPLAINT/AFFIDAVIT

☐ ARREST FOR

| DEFENDANT'S LAST NAME | FIRST | MIDDLE | SUF. | HGT. | WGT. | RC | SEX | D.O.B. | OFFENSE REPORT | ARRESTING OFFICER (S)/CCN |
|---|---|---|---|---|---|---|---|---|---|---|
| SEARS, DAVID | | | | 5'4" | 135 | B | M | 3-11-67 | 95-95287 | R.P. MARTIN |

| NAME OF VICTIM (IF CORPORATION, EXACT LEGAL NAME AND STATE OF INCORP.) | ADDRESS | PHONE # |
|---|---|---|
| | | |

| COUNT NO. | OFFENSES CHARGED | CITATION #, IF APPLICABLE | F.S. # OR CAPIAS/WARRANT # |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

Before me this date personally appeared __RICHARD P. MARTIN__ who being first duly sworn deposes and says that on __14__ day __JUNE__, 19__95__ at __1500 E. SUNRISE BLVD.__ (crime location), __BROWARD COUNTY__ above named defendant committed the above offenses charged and the facts showing probable cause to believe same are as follows:

A DESCRIPTION OF THE SUSPECT VEHICLE AS WELL AS A COMPOSITE OF THE POSSIBLE CULPRIT, ON MON. 6-13-95.

ON THIS DATE OFF. MARTIN ATTEMPTED TO CATCH THE VEHICLE AS IT PROCEEDED EAST ON N.W. 19TH ST. BUT THE VEHICLE TURNED OFF OF NW 19 ST. IN THE AREA OF N.W. 20 AVE. TO N 15 AVE. OFF. MARTIN PUT OUT A DESCRIPTION OF THE VEHICLE, AS WELL AS A BRIEF DESCRIPTION OF THE POSSIBLE SUSPECT + DIRECTED FLPD OFFICERS TO THE AREA OF W. SUNRISE + 15 AVE. A POMPANO P.D. DETECTIVE (DET. LACY A. CREW) THEN OBSERVED THE VEHICLE EASTBOUND ON W. SUNRISE BLV. NEAR N.W. 9TH AVE. + DIRECTED FLPD MARKED UNITS TO THE AREA. WHEN SUFFICIANT UNITS WERE IN THE AREA A TRAFFIC STOP WAS MADE AT E. SUNRISE + N.E. 15 AVE. (FLPD OFFICERS S. LEDEGANG, CASTRO, PINTO-GONZALEZ, + M. MONIZ). OFFICERS MARTIN + PORIO RESPONDED TO E. SUNRISE + NE 15 AVE. AND CHECKED THE DRIVER FOR A DRIVERS LICENSE, WHICH
CONTINUED

I swear the above statement is correct and true to the best of my knowledge and belief.

| OFFICER/AFFIANT'S SIGNATURE | OFFICER'S NAME/CCN | OFFICER'S DIVISION |
|---|---|---|
| | R.P. MARTIN 514 | PATROL |

0109

STATE OF _____ COUNTY OF _____

The foregoing instrument was acknowledged before me this __15__ day of __JUNE__, 19__95__, who is personally known to me or who has produced (ID Type) _____ as identification and who (DID OR DID NOT) take an oath.

_____ DEPUTY CLERK OF THE COURT, NOTARY PUBLIC, OR ASSISTANT STATE ATTORNEY

FIRST APPEARANCE/ARREST FORM

BLEE 306
TITLE OR RANK/CCN

(SEAL OR STAMP)

Orig - Court
2nd - State Atty
3rd - Filing Agency
4th - Arresting Agency

SEVENTEENTH JUDICAL CIRCUIT
BROWARD COUNTY

| DEFENDANT'S LAST NAME | FIRST | MIDDLE | SUF. | HGT. | WGT. | RC | SEX | D.O.B. | OFFENSE REPORT | ARRESTING OFFICER (S)/CCN |
|---|---|---|---|---|---|---|---|---|---|---|
| SEARS , DAVID | | | | 5'4" | 135 | B | m | 3-11-67 | 95-95287 | D. PORRO 114  R.P. MARTIN |

NAME OF VICTIM (IF CORPORATION,.EXACT LEGAL NAME AND STATE OF INCORP.)    ADDRESS    PHONE #

| COUNT NO. | OFFENSES CHARGED | CITATION #, IF APPLICABLE | F.S. # OR CAPIAS/WARRANT # |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

Before me this date personally appeared __RICHARD P. MARTIN__ who being first duly sworn deposes and says that on __14__ day __JUNE__ 19__95__ at __1500 E. SUNRISE BLVD.__ (crime location) the above named defendant committed the above offenses charged and the facts showing probable cause to believe same are as follows: __BROWARD COUNTY__

THE ARRESTED SEARS HAD, BUT IT HAD A RESTRICTION FOR WORK PURPOSES ONLY, AND THE ARRESTED HAD RELATED TO OFF. MARTIN THAT HE WAS NOT WORKING, RATHER HE + HIS GIRLFRIEND (PASS. IN VEHICLE) CHERYL DENISE HALL WERE GOING SHOPPING.

AT THIS POINT SEARS WAS PLACED UNDER ARREST FOR VIO. OF RESTRICTIONS ON D.L. + A TOW TRUCK WAS CALLED TO THE SCENE. IT SHOULD ALSO BE NOTED THAT SEARS HAD A LARGE AMMOUNT OF CASH IN HIS POSSESSION + HE ALSO HAS A PAST ARREST RECORD FOR NARCOTICS VIOLATIONS. OFF. MONIZ WAS ON THE SCENE WITH HIS DRUG DOE KONAN, WHO WAS THEN UTILIZED TO CONDUCT A SEARCH OF THE VEHICLE. THE DRUG DOG LOCATED 14 GMS OF COCAINE UNDER THE DASH OF THE VEHICLE. THE DRUG DOG ALSO "HIT" ON THE CASH THAT SEARS + HALL HAD IN THEIR POSSESSION. THE VEHICLE WAS THEN TOWED TO F.L.P.D. CONFISCATION.

CONTINUED:

I swear the above statement is correct and true to the best of my knowledge and belief.

OFFICER/AFFIANT'S SIGNATURE     K.P. MARTIN 514     PATROL
OFFICER'S NAME/CCN     OFFICER'S DIVISION

STATE OF ___ COUNTY OF ___

0110

The foregoing instrument was acknowledged before me this __2__ day of __JUNE__, 19__95__, who is personally known to me or who has produced (ID Type) _____ as identification and who __(DID OR DID NOT)__ take an oath.    (SEAL OR STAMP)

BLEE 2d

DEPUTY CLERK OF THE COURT, NOTARY PUBLIC, OR ASSISTANT STATE ATTORNEY     TITLE OR RANK/CCN

FIRST APPEARANCE/ARREST FORM

SEVENTEENTH JUDICAL CIRCUIT
BROWARD COUNTY

Ong - Court
2nd - State Atty
3rd - Filing Agency
4th - Arresting Agen

☐ ARREST FORM

☐ COMPLAINT AFFIDAVIT

| DEFENDANT'S LAST NAME | FIRST | MIDDLE | SUF. | HGT. | WGT. | RC | SEX | D.O.B. | OFFENSE REPORT | ARRESTING OFFICER (S)/CCN |
|---|---|---|---|---|---|---|---|---|---|---|
| SEARS, | DAVID | | | 5'4" | 135 | B | m | 3-11-67 | 95-9528 7 | R.P. MARTIN S |

NAME OF VICTIM (IF CORPORATION, EXACT LEGAL NAME AND STATE OF INCORP.) | ADDRESS | PHONE #

| COUNT NO. | OFFENSES CHARGED | CITATION #, IF APPLICABLE | F.S. # OR CAPIAS/WARRANT # |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

Before me this date personally appeared __RICHARD P. MARTIN__ who being first duly sworn deposes and says that on __14__ day __JUNE__, 19 __95__, __1500 E. SUNRISE BLVD.__ the above named defendant committed the above offenses charged and the facts showing probable cause to believe same are as follows: __BROWARD COUNTY__

THE NARCOTICS WAS VALTOX TESTED BY OFF. MONIZ + SHOWED
POSITIVE FOR COCAINE. THE NARCOTICS + CASH WAS PLACED
INTO EVIDENCE BY OFF. MONIZ.
DET. PARR + DET. O'NEAL ALSO RESPONDED TO E. SUNRISE +
15 AVE. + REQUESTED THAT BOTH SEARS + HALL BE BROUGHT
TO BSO HEADQUARTERS SO THEY COULD FURTHER THEIR IN-
VESTIGATION OF THEIR HOMICIDE.
AT THIS POINT SEARS HAD BEEN CHARGED WITH VIO. OF RES.
ON HIS D.L. + ALSO POSS. OF COCAINE, AND HALL WAS CHARG-
ED WITH POSS. OF COCAINE, WHICH OFF. MONIZ WAS INITIA-
TING.

I swear the above statement is correct and true to the best of my knowledge and belief.

OFFICER/AFFIANT'S SIGNATURE

OFFICER'S NAME/CCN __R.P. MARTIN 511__

OFFICER'S DIVISION __PATROL__

STATE OF _____ COUNTY OF _____

The foregoing instrument was acknowledged before me this __15__ day of __JUNE__, 19 __95__, who is personally known to me or who has produced (ID Type) _____ as identification and who (DID OR DID NOT) _____ take an oath.

DEPUTY CLERK OF THE COURT, NOTARY PUBLIC OR ASSISTANT STATE ATTORNEY

TITLE OR RANK/CCN __POLICE 206__

FIRST APPEARANCE/ARREST FORM

SEVENTEENTH JUDICAL CIRCUIT
BROWARD COUNTY

0111

(SEAL OR STAMP)

Orig · Court
2nd · State Atty.
3rd · Filing Agency
4th · Arresting Agency

| [ ] 17th Judicial Circuit in and for Broward County | CLOCK IN |
| [ ] In the County Court in and for Broward County | |

| DIVISION:<br>[ ] CRIMINAL<br>[ ] TRAFFIC<br>[ ] OTHER | ORDER | |

THE STATE OF FLORIDA VS.    DAVID SEARS

**CASE NUMBER**    GRAND JURY

PLAINTIFF                    DEFENDANT

CHARGE _MURDER IN THE FIRST DEGREE_

THE GRAND JURY HAVING THIS DATE—
—JULY 5, 1995, SPRING TERM GRAND JURY,
RETURNED A NO TRUE BILL AS TO THE
DEFENDANT, IT IS HEREBY ORDERED
THAT THE DEFENDANT SHALL BE
RELEASED FROM CUSTODY AS TO THIS
CASE ONLY.

DONE AND ORDERED THIS _20_ DAY OF _JULY_ 19_95_ IN
BROWARD COUNTY, FLORIDA  NUNC PRO TUNC, JULY 5, 1995

_____
JUDGE
BRESCHER

COPIES:    BSO  -   SAO

FORM #CC-252
REVISED 10/90

0112

October 6, 1998

Mr. Hal Blitman
Associate Superintendent of District Administration
School Board of Broward County, Florida
600 SE 3rd Avenue
Ft. Lauderdale, Florida 33301

Reference:  Additional Information, Appeal
            Cherl D. Sears,

Dear Mr. Blitman,

This letter is to inform you of key details that may better clarify the nature of the
incident I was involved in and the reason behind my electing to attend the prevention
program. I'd like to first thank you for your time in reviewing my motion for appeal.
Prior to this incident I have never been involved in any criminal proceedings nor do I
condone any criminal activity. After being arrested, I sought legal counsel to represent
me. At that time, I was working hard to support both myself and my two children. I
was also attending classes on the weekend to complete my education in order to bring
me closer to becoming a full-time teacher. My attorney advised me that since I had no
prior arrests that if I agreed to the court program, the case would be dismissed and it
would spare me the cost of going to trial. He also advised that I not contest the charge
because I was the owner of the car. Furthermore, he explained that this would be the
best course of action and my record would remain clear. Again, I thank you for your
time and patience, and I hope that this matter can be resolved so that I may return to
back to work to continue touching the bright young minds of my students as a full-time
teacher.

Sincerely,

Cherl D. Sears.

Cherl D. Sears



0145



*The Nation's Largest Fully*      *Accredited School System*

# THE SCHOOL BOARD OF BROWARD COUNTY, FLORIDA

Gracie M. Diaz
Director
Instructional Staffing Department

*Chairperson*   Lois Wexler
*Vice Chairperson*   Darla L. Carter
Carole L. Andrews
Judie S. Budnick
Paul D. Eichner, Esq.
Stephanie Arma Kraft, Esq.
Miriam M. Oliphant
Dr. Robert D. Parks
Diana Wasserman

Dr. Frank R. Petruzielo
*Superintendent of Schools*

December 10, 1998

Cheri Sears
4730 NW 11 Street
Lauderhill, FL 33313

Certified

Dear Ms. Sears:

The Security Clearance Committee, which met November 24, 1998, has denied your appeal for employment with the School Board of Broward County, FL.

We regret that this action was necessary.

Sincerely,

Gracie M. Diaz, Director
Instructional Staffing

GMD:deh



PRINTED ON RECYCLED PAPER

*Broward County Public Schools Is An Equal Opportunity/Equal Access Employer*

ADMINISTRATION OFFICES · 600 SOUTHEAST THIRD AVENUE · FORT LAUDERDALE, FLORIDA 33301 · 954-765-6000

---

V.        Appeals Process:

<u>Applicants who have been denied employment because of criminal incident(s) may appeal</u> the decision of the Security Clearance Committee ~~may be appealed in~~ <u>by</u> writing to the ~~Associate Superintendent for District Administration~~ <u>Director, Personnel & Benefits. Such written appeal shall be considered only if the applicant provides new information that was not previously available to the Security Clearance Committee.</u>

Document Preparation Date: July 1, 1996
Revision date: ~~November 20, 1998~~ December XX, 1999
Contact Persons: Gracie M. Diaz, Bill Tegtman
Appendix: Security Background Check Form, Personnel Hiring Guidelines
Authority: Fl Statute 231-02, 435.04
            Board Policy #4002-A, B


## FLORIDA DEPARTMENT OF EDUCATION
### FRANK T. BROGAN
Commissioner of Education

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                                              FEBRUARY 24, 1998
                                                         PAGE  2

request issuance of your certificate.

Your employer submits a fingerprint card which has been
processed by the Florida Department of Law Enforcement
and the Federal Bureau of Investigation. If your
fingerprint report reflects an arrest record, your file
will be referred to Professional Practices Services for
further review. Issuance of your certificate will be
contingent upon the results of this review.

Please note that if you do not complete specialization
requirements, obtain employment, and issuance of your
certificate is not requested by FEBRUARY 24, 2000, your
Statement of Eligibility will expire. Another application
and fee may be submitted within one year from the
expiration date of this Statement of Eligibility to
re-establish your eligibility based on these same
requirements. However, if this Statement of Eligibility
has expired for more than one year when you submit another
application, your eligibility for certification will be
based on requirements which are in effect at the time the
next application is received.

To qualify for a five-year Professional Certificate,
requirements must be completed in the following three
categories: General Requirements, Professional Education
Requirements, and Specific Subject Requirements.

**YOU MUST COMPLETE THE FOLLOWING REQUIREMENTS FOR THE
ISSUANCE OF YOUR PROFESSIONAL CERTIFICATE:**

**GENERAL REQUIREMENTS –**

Submit official documentation of a passing score on the
Professional Education Subtest of the Florida Teacher
Certification Examination.

Submit official documentation of a passing score on the
College Level Academic Skills Test (CLAST).

Submit from a Florida district superintendent or the
chief administrative officer of a Florida state
supported or nonpublic school, official verification of
demonstration of required professional education
competence.



## FLORIDA DEPARTMENT OF EDUCATION
### FRANK T. BROGAN
Commissioner of Education

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

FEBRUARY 24, 1998
PAGE   3

Complete the recency-of-credit requirement either by
earning six (6) semester hours of college credit from
an accredited institution in an area in which you are
seeking certification, or by earning 120 inservice
points which are part of an approved Florida district
Master Inservice Plan or a combination of college
credit and inservice points. Sixty inservice points
equate to three (3) semester hours.

Submit Application Form CG-10 and the appropriate fee
as indicated on the application form.

**PROFESSIONAL EDUCATION REQUIREMENTS -**

20 semester hours in education courses which must
include:

6 semester hours covering the sociological and
psychological foundations of education

6 semester hours in general methods, curriculum,
school administration, or school supervision

a course in special methods of teaching the subject
in which you are seeking certification as indicated
in the SPECIFIC SUBJECT REQUIREMENTS outlined
below.

The practical teaching experience requirement as
explained in the enclosed attachment.

**SPECIFIC SUBJECT REQUIREMENTS FOR MIDDLE GRADES SOCIAL
SCIENCE (5-9)**

Complete the subject area specialization (content
courses) specified for issuance of the two-year
nonrenewable Temporary Certificate.

Submit official documentation of a passing score on the
MIDDLE GRADES SOCIAL SCIENCE (5-9) subject area test

Complete the special methods requirement as follows:

2 semester hours in special methods of teaching social
science in the middle grades



# FLORIDA DEPARTMENT OF EDUCATION

## FRANK T. BROGAN

Commissioner of Education

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

FEBRUARY 24, 1998
PAGE 4

NOTE: The college credit earned to complete the special
methods requirement will also be applicable toward the
total hours specified in PROFESSIONAL EDUCATION
REQUIREMENTS listed above.

**PLEASE NOTE: BASED ON CURRENT STATUTES, YOU MAY RECEIVE
ONLY ONE TEMPORARY CERTIFICATE, VALID FOR TWO YEARS, PRIOR
TO ISSUANCE OF THE PROFESSIONAL CERTIFICATE. IF YOU HAVE
REQUESTED CERTIFICATION IN MORE THAN ONE SUBJECT, IT IS NOT
NECESSARY FOR YOU TO COMPLETE REQUIREMENTS SPECIFIED FOR
ALL SUBJECTS PRIOR TO ISSUANCE OF YOUR PROFESSIONAL
CERTIFICATE. HOWEVER, IT IS ESSENTIAL THAT YOU COMPLETE
REQUIREMENTS SPECIFIED IN YOUR STATEMENT OF ELIGIBILITY FOR
GENERAL REQUIREMENTS, PROFESSIONAL EDUCATION REQUIREMENTS,
AND SPECIFIC SUBJECT REQUIREMENTS FOR THE PROFESSIONAL
CERTIFICATE IN AT LEAST ONE SUBJECT TO INSURE YOUR
ELIGIBILITY FOR ANOTHER CERTIFICATE FOR THE SCHOOL YEAR
IMMEDIATELY FOLLOWING THE EXPIRATION OF YOUR TEMPORARY
CERTIFICATE.**

The Bureau of Teacher Certification will be pleased to
answer any questions that you may have after you have
carefully reviewed your Statement of Eligibility. You may
direct written correspondence to: The Bureau of Teacher
Certification, Florida Department of Education, 325 West
Gaines Street, Tallahassee, FL, 32399-0400. If you live in
Florida, you may call the Bureau of Teacher Certification
at 1-800-445-6739. (You CANNOT reach the Bureau by
substituting the area code "850" for the "800" toll-free
extension). If you live outside the State, you may reach
the Bureau at 850-488-2317.

ENCLOSURE(S)
 PTER

STAFF: JCT