UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 00-6017-CIV-DIMITROULEAS/SELTZER

CHERL SEARS,                          )
                                      )
            Plaintiff,                )
                                      )
v.                                    )
                                      )
THE SCHOOL BOARD OF BROWARD           )
COUNTY, FLORIDA,                      )
                                      )
            Defendant.                )
——————————————————————————————        )



NIGHT BOX
FILED
DEC 2 1 2000
CLERK, CLARENCE MA...
USDC / SDFL / FTL

## DEFENDANT'S MEMORANDUM OF LAW IN
## SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant, the SCHOOL BOARD OF BROWARD COUNTY, FLORIDA, ("School Board"),

through its counsel Muller, Mintz, Kornreich, Caldwell, Casey, Crosland & Bramnick, P.A., files this

Memorandum of Law in support of its Motion for Summary Judgment. This Memorandum is supported

by Defendant's Concise Statement of Undisputed Material Facts (cited herein as "[Facts ¶___]"), filed

concurrently herewith. Based upon those undisputed material facts and the authorities set out below,

Defendant is entitled, as a matter of law, to summary judgment in its favor on all Counts of the Second

Amended Complaint ("Complaint").

### PRELIMINARY STATEMENT

Florida law has long recognized that certain criminal offenses, irrespective of formal

adjudication or expunction of criminal records, render such persons unsuitable for certain public

employment positions of trust, including school teachers or law enforcement officers. This is an action

by a substitute teacher who was formerly employed on an as-needed basis by the School Board.

Plaintiff, Cherl Sears, herein challenges the School Board's decision to withdraw her authorization to

work as a substitute teacher and to deny her application for a full-time, permanent teaching position.

It is undisputed that the School Board took the foregoing actions based upon the admitted fact that the Plaintiff was arrested and charged in June, 1996, with felony possession of crack cocaine.[1] Plaintiff pled "nolo contendre" to that felony charge and it was dismissed upon her completion of a pretrial intervention program. The School Board became aware of the offense and its disposition for the first time as part of a statutorily required criminal background check performed when Plaintiff applied for a regular full-time teaching position in September, 1998. Upon review by its Security Clearance Committee, it was determined that the circumstances of Plaintiff's felony arrest, coupled with her lack of candor in disclosing the criminal charge, rendered her unsuitable at that time to continue working with children as a teacher in any capacity.

It is also undisputed that Plaintiff, that irrespective of her assertions to the contrary, could not lawfully have been hired for a full-time teaching position in any event in 1998 because she lacked the minimum qualifications (i.e., a two-year Temporary Florida Teaching Certificate).

In her five-count Complaint, Plaintiff attempts to invoke the United States and Florida Constitutions in asserting that she was denied an undefined property interest in continued employment without due process and that her substantive due process rights have been trammeled because she has been barred from both current and future employment with the School Board. Plaintiff further asserts that the School Board's conduct violated her Equal Protection rights under the United States Constitution. As established below, Plaintiff's claims are without factual or legal merit and, therefore, Defendant is entitled to summary judgment as a matter of law.

---

[1]     Although she continued to work as a substitute teacher, Plaintiff did not report her arrest to the School Board at any time prior to applying for full-time employment as a teacher in September, 1998. Further, contrary to the requirements of Section 230.335(1)(a), Florida Statutes, the law enforcement agency which made the felony narcotics arrest did not report the matter to the Superintendent of Schools within 48 hours.

ARGUMENT AND CITATION OF AUTHORITY

### POINT 1

PLAINTIFF'S FAILURE-TO-HIRE CLAIM WITH RESPECT TO A
FULL-TIME TEACHING POSITION FAILS AS A MATTER OF
LAW BECAUSE PLAINTIFF WAS NOT QUALIFIED FOR SUCH A
POSITION.

Generally, in a failure-to-hire case, if the plaintiff lacks the necessary qualifications for the

position sought, then she "could have suffered no injury as a result of the alleged [unlawful] practices"

by the defendant/employer. Turnes v. AmSouth Bank, N.A., 36 F.3d 1057, 1062 (11th Cir. 1994)

(quoting East Texas Motor Freight Sys., Inc. v. Rodriquez, 431 U.S. 395, 403-404 (1977)). In Turnes,

the plaintiff, an African-America male, applied for a loan collector position with AmSouth. After an

initial interview, the plaintiff was rejected. The plaintiff alleged that AmSouth did not hire him because

he was black. After the plaintiff filed suit, AmSouth offered evidence that the plaintiff would not have

been hired in any event as he had a very poor credit history. The Turnes court held that, if AmSouth

could show that the plaintiff would not have been hired even absent the alleged discrimination, the

plaintiff would not be entitled to any relief as AmSouth's alleged discriminatory failure to process the

plaintiff's application caused the plaintiff no injury. Id.

In this case, it is undisputed that, even if Plaintiff had been cleared by the Security Clearance

Committee in 1998, her application for employment as a regular full-time teacher would still have been

denied because Plaintiff lacked the minimum qualifications under Florida law. Specifically, Plaintiff

did not possess nor was she eligible for a Florida teaching certificate. [Facts ¶ 10, 30, 31] Indeed, on

February 24, 1998, the Florida Department of Education sent the Plaintiff a Statement of Eligibility,

notifying Plaintiff that she would be eligible for a two-year nonrenewable teaching certificate for

Middle Grades Social Science (5-9) if:

a.    she completed. by June 30, 1998, three (3) semester hours in Western
Civilization; or European, Asian, African, Latin American, or Middle Eastern
history, and three (3) semester hours in Geography; AND,

b.    obtained employment with a Florida public, state supported, or nonpublic school
which has an approved system for documenting the demonstration of required
professional education competence.

[Facts ¶ 29] It is undisputed that, at the time Plaintiff was considered for a regular full-time teaching

position. she had not completed the six (6) semester hours required to obtain her temporary teaching

certificate. [Facts ¶ 30] As such. regardless of the Security Clearance Committee's decision, the

Plaintiff could not, in any event, have been hired as a regular full-time teacher during the 1998-99

school year. [Facts ¶ 31] Hence, Plaintiff is not entitled to any relief on her failure-to-hire claim for

the simple reason that the Security Clearance Committee's decision did not cause the Plaintiff injury.

## POINT II

THE COMPLAINT MUST BE DISMISSED BECAUSE NEITHER
THE FOURTEENTH AMENDMENT TO THE UNITED STATES
CONSTITUTION NOR ARTICLE 1, SECTION 9, OF THE FLORIDA
CONSTITUTION ARE SELF-EXECUTING PROVISIONS.

Plaintiff attempts to assert causes of action for alleged violations of the Fourteenth Amendment

to the United States Constitution and Article I, Section 9, of the Florida Constitution. It is clear under

both federal and state law. however. that Plaintiff may not bring a claim directly under either

constitutional provision.

First, the law is well established that actions for alleged federal due process and equal protection

violations by state actors are not cognizable directly under the United States Constitution; rather, such

claims must be brought under 42 U.S.C. § 1983. See Sanders v. Prentice-Hall Corp. Sys., Inc., 1999

WL 115517, at *1 n.2 (6th Cir. Feb. 8, 1999); Azul-Pacifico, Inc. v. City of Los Angeles, 973 F.2d 704,

705 (9th Cir. 1992). cert. denied, 113 S. Ct. 1049 (1993), Pauk v. Board of Trustees, 654 F.2d 856, 865

-4-

(2d Cir. 1981).[2]   In this case, Plaintiff has failed to assert her federal constitutional claims under Section

1983 and, hence, such claims are fatally defective. Accordingly, summary judgment in the School

Board's favor is mandated on all of Plaintiff's federal claims.

Similarly, Plaintiff has failed to bring her State due process claim through the appropriate

vehicle. In Gray v. Bryant, the Florida Supreme Court enunciated the test for determining whether a

constitutional provision is self-executing:

> The basic guide, or test, in determining whether a constitutional
> provision should be construed to be self-executing, or not self-executing,
> is whether or not the provision lays down a sufficient rule by means of
> which the right or purpose which it gives or is intended to accomplish
> may be determined, enjoyed, or protected without the aid of legislative
> enactment.

125 So.2d 846, 851 (Fla. 1960). Applying the Gray test to the language of Article I, Section 9, it is

clear that, like the Fourteenth Amendment, Section 9 does not authorize any independent remedy for

an alleged violation of its provisions. As such, Plaintiff cannot bring an action directly under Section

9. In this case, Florida law provides a number of vehicles through which Plaintiff could recover for any

alleged violation of her due process rights -- for instance, Chapter 435, Florida Statutes. See, e.g.,

Florida Public Employees Council 79 v. Department of Children and Families, 745 So.2d 487, 490 (Fla.

1st DCA 1999). Because Plaintiff has failed to utilize Chapter 435 or a similar statute, her state

---

[2]   This is so because, while the Fourteenth Amendment to the United States Constitution
"establishes binding standards of conduct for state and local government, . . . it does not
authorize remedies when its provisions are breached." 1A Martin A. Schwartz & John E.
Kirklin, Section 1983 Litigation § 1.4, at 14 (3d ed. 1997). Section 1983 was enacted to
fulfill the procedural or remedial role of authorizing the assertion of the claim for relief and
provides the remedy when a plaintiff demonstrates a violation of a right protected by the
federal constitution, or a federal statute other than Section 1983. See Chapman v. Houston
Welfare Rights Org., 441 U.S. 600, 617 (1979); Quern v. Jordan, 440 U.S. 332, 351
(1979)(Brennan, J., concurring). See also Albright v. Oliver, 114 S. Ct. 807, 811 (1994)
("Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method
for vindicating federal rights elsewhere conferred.'")(quoting Baker v. McCollan, 99 S. Ct.
2689, 2694 n. 3 (1979)).

constitutional claim fails as a matter of law, and summary judgment must be entered in favor of the

School Board on Plaintiff's state claims.[3]

## POINT III

THE SCHOOL BOARD IS ENTITLED TO SUMMARY JUDGMENT
AS TO COUNT I BECAUSE PLAINTIFF CANNOT SHOW ANY
BASIS FOR HER CLAIMED "PROPERTY INTEREST" IN
CONTINUED EMPLOYMENT. ALTERNATIVELY, EVEN IF
PLAINTIFF COULD SHOW A PROPERTY INTEREST, THE
DEFENDANT MET THE PROCEDURAL DUE PROCESS
REQUIREMENTS UNDER BOTH FEDERAL AND FLORIDA LAW.

Due process considerations under both federal and state law invoke two different kinds of

constitutional protection: procedural due process and substantive due process. McKinney v. Pate, 20

F.3d 1550, 1555 (11th Cir. 1994), cert. denied, 115 S. Ct. 898 (1995); Department of Law Enforcement

v. Real Property, 588 So.2d 957, 960 (Fla. 1991).[4] Under Count I, Plaintiff alleges that, by refusing to

allow her to continue to work as a substitute teacher and by rejecting her application for employment

as a regular full-time teacher, the School Board deprived her of an undefined property interest in

continued employment without due process of law.[5] Neither contention has even arguable merit.

---

[3]   Although Plaintiff has failed to bring her federal and state constitutional claims through the
proper enabling statute and, thus, those claims are subject to dismissal, Defendant
nevertheless has addressed herein each claim on the merits. In so doing, Defendant does not
waive any argument that such claims have been improperly pled.

[4]   Because the Due Process provision in Florida's Constitution is patterned after the Due
Process Clause in the United States Constitution, see Cash v. Culver, 122 So.2d 179, 182
(Fla. 1960), the analysis of a due process claim under each is the same. Jacobi v. City of
Miami Beach, 678 So.2d 1365, 1367 (Fla. 3d DCA 1996) (noting that Florida courts follow
the law as established in McKinney, supra, and its progeny).

[5]   Plaintiff also alleges that the School Board has deprived her of due process in that it has
refused to reinstate her eligibility to work as a substitute teacher. As this appears to be a
substantive due process claim, it is addressed below under Point III. In any event, the
undisputed facts show that Plaintiff failed to exhaust the remedies available to her for
reinstatement (i.e., appeal to the Superintendent and/or School Board). [Facts ¶ 27]. It is
also undisputed that the School Board has no policy of permanently barring applicants from

In order to prevail on a procedural due process claim, Plaintiff must prove: (1) a constitutionally protected property interest in employment; (2) governmental deprivation of that interest; and (3) the constitutional inadequacy of state procedures accompanying the alleged deprivation. Bank of Jackson County v. Cherry, 980 F.2d 1354, 1357 (11th Cir. 1992), cert. denied, 510 U.S. 819 (1993). Plaintiff's failure to establish any one of these elements is fatal. Id. In this case, Plaintiff cannot establish either the first or the third elements and, hence, summary judgment in the School Board's favor is warranted.

A.   Plaintiff had no property interest in her substitute teaching position and, therefore, was not entitled to procedural due process.

Property interests in the public employment context can be created either by state law or by contract or some other "mutually explicit understanding between the parties." Sullivan v. School Bd. of Pinellas County, 773 F.2d 1182, 1185 (11th Cir. 1985). See also Perry v. Sinderman, 408 U.S. 593, 602-03 (1972) (holding that a property interest in employment may arise by contract, state law or local policy and practice). In this Circuit, a public school teacher who has tenure or a reasonable expectation of re-employment is entitled to notice and hearing before dismissal. Thaw v. Board of Pub. Instruction of Dade County, 432 F.2d 98, 99 (5th Cir 1970). Absent a property interest, the employee is subject to the State's employment-at-will doctrine and, thus, may be terminated at any time, without cause, and without a hearing. See, e.g., Bishop v. Wood, 426 U.S. at 341-47 (1976); McGregor v. Board of Comm'rs, 674 F. Supp. 858, 860 (S.D. Fla. 1987); Norman v. Duval County Sch. Bd., 361 F. Supp 1167, 1173 (M.D. Fla. 1973); Texton v. Hancock, 359 So.2d 895, 897 (Fla. 1st DCA 1978), cert.

---

future employment -- indeed, Plaintiff was specifically informed that she could reapply after one year. [Facts ¶ 26] Despite such knowledge, Plaintiff has never reapplied for employment in any capacity with the School Board. [Facts ¶ 2]. Further, to the extent Plaintiff is contesting the denial of her application for a full-time teaching position, it is undisputed that she lacked the minimum qualifications required by the Florida Department of Education for such a position. [Facts ¶¶ 28-31].

-7-

denied, 366 So.2d 881 (1979); Kelly v. Gill, 544 So.2d 1162, 1164 (Fla. 5th DCA 1989), cert. denied, 110 S. Ct. 1477 (1990).

In this case, it is undisputed that Plaintiff worked for the School Board exclusively as a substitute teacher. She did not have any arguable form of tenure, nor had she ever been granted a full-time regular teaching contract pursuant to Section 231.36, Florida Statutes. In short, she simply does not have any contract which would constitute a protected property interest in continued employment.[6] To the contrary, upon her initial employment with the School Board, Plaintiff signed both a "Substitute Teacher Clearance Form" which stated that Plaintiff understood that steady employment was not guaranteed, and a "Memorandum of Understanding" which stated that "regular employment should not be expected nor guaranteed." [Facts ¶ 10]. Further, as a substitute teacher, Plaintiff did not fall under the protections of the Collective Bargaining Agreement applicable to instructional personnel. [Facts ¶ 7].

Absent a contract, Plaintiff would need to show some other basis for establishing a reasonable expectation of continued employment in order to prevail on her procedural due process claim. This she cannot do. First, Plaintiff has not alleged (and, in light of the "Memorandum of Understanding," cannot allege) that the School Board had a policy or practice with regard to retaining teachers on the substitute list which would create a protected property interest. Further, Plaintiff has not cited to any Florida statute that creates a property interest in either continued retention of an individual on a substitute list

---

[6]     Under Florida law, only those persons holding a Professional Services Contract (formerly, a "continuing contract") are deemed to be tenured. Fla. Stat. § 231.36(3). Teachers are eligible for such a contract only if: (1) they hold a valid Florida teaching certificate; (2) they have completed three years of probationary service under formal annual contracts with the School Board; (3) they have been recommended by the Superintendent for such contract and reappointed by the School Board based upon successful performance of duties and demonstration of professional competence; and (4) they have passed a 97-day probationary period. Fla. Stat. § 231.36(a).

-8-

or being hired into a regular full-time teaching position. See, e.g., Lees v. West Greene Sch. Dist., 632

F. Supp. 1327, 1333 (W.D. Pa. 1986). Hence, Plaintiff's procedural due process claims fail as a matter

of law.

Although Plaintiff cites to Section 231.1725(2), Florida Statutes, as the basis of her

"expectation," that statute has no application in these circumstances. Section 231.1725(2) provides that:

> Substitute, adult education, and nondegreed career education teachers who are
> employed pursuant to this section shall have the same rights and protection of
> laws as certified teachers.

Under Florida law, however, a certified teacher has no more of a property interest in continued

employment than does a substitute teacher -- only the holding of a Professional Service contract will

suffice. See Thaw, 432 F.2d at 99. In Thaw, the plaintiff -- who was in his third year of teaching -- was

not granted tenure by the school board. Id. at 98-99. The plaintiff filed suit against the school board

alleging violation of his due process rights. The trial court granted the school board's motion to dismiss

plaintiff's claims and the plaintiff appealed. Id. at 99. On appeal, the court in Thaw ruled that the

plaintiff, as a probationary employee, did not have tenure and failed to establish that he had a reasonable

expectation of employment under Florida law. Id. The appellate court thus affirmed the lower court's

dismissal. Id. See also Mazurek v. Wolcott Bd. of Educ., 815 F. Supp. 71, 75 (D. Conn. 1993) (holding

that mere fact that plaintiff possessed a teaching certificate did not give him a legitimate claim of

entitlement to employment). The logical extension of Thaw is that, if a non-tenured certified teacher

has no property interest employment, then neither does an uncertified substitute teacher.

In Jones v. Houston Indep. Sch. Dist., 805 F. Supp. 476, 477 (S. D. Tex. 1991), affd, 979 F.2d

1004 (5th Cir. 1992), a substitute teacher brought a wrongful discharge claim. As a substitute teacher,

the plaintiff had signed a substitute teaching form -- not a standard teaching contract -- which stated that

there might not be assignments available each day. Id. The court in Jones held generally that, because

-9-

substitute teachers were not under either a continuing or probationary contract, they were not entitled to a hearing prior to being discharged. Id. at 478. The court further held that, because the plaintiff in that case lacked tenure and because he did not fall under any exception to the state's employment-at-will doctrine or other statutory protection, he was not entitled to continued employment. Id. See also Sullivan, 773 F.2d at 1185 (holding that a non-tenured employee of the school district had no property interest in continued employment); Lees, 632 F. Supp. at 1333 (holding that, as a substitute teacher, plaintiff had no contractual right to employment in either a substitute or permanent position).

Similarly, in the instant case, Plaintiff has failed to allege any factual or legal grounds sufficient to establish that she had a constitutionally protected right to continued employment as a substitute teacher or to ever being hired as a regular full-time teacher. Florida law clearly leaves the decision whether to hire or retain a non-tenured teacher to the discretion of the Superintendent and the School Board. See School Board of Seminole County v. Cornelison, 406 So.2d 484, 486 (Fla. 5th DCA 1981), rev. denied, 421 So.2d 67 (Fla. 1982); Roth, 408 U.S. at 566-67. Because Plaintiff had no contract of employment and no statutory protection, she was employed at-will, and therefore had no claim to continued employment which could give rise to due process rights. Hence, as a non-tenured employee of the School Board, Plaintiff was not entitled to an administrative hearing prior to being denied clearance to continue to work as a substitute teacher. Accordingly, summary judgment in the School Board's favor is warranted as a matter of law on Count I of the Complaint.

B.   Even if Plaintiff could establish a property interest, the School Board provided her with constitutionally adequate procedural due process.

Under McKinney, even if an employee is entitled to procedural due process, as long as the procedures used to abrogate the employee's right to employment satisfy constitutional minima, that right may lawfully be abridged. 20 F.3d at 1561. In a public employment context, the basic requirements of due process are (a) notice of the charge(s) brought against the employee, and (b) an

-10-

opportunity to respond to the charge(s). See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985).

In this case, on or about October 5, 1998, the Security Clearance Committee notified Plaintiff that she was not employable with the School Board for the 1998-99 school year. [Facts ¶ 22] Plaintiff was also notified, however, that she could appeal the Committee's decision. [Facts ¶ 22] On October 6, 1998, Plaintiff sent a letter to the Associate Superintendent of District Administration, appealing the Security Clearance Committee's decision to reject her application for regular full time employment as a teacher and revoke her authorization to work as a substitute teacher. [Facts ¶ 23] Plaintiff provided additional information in her defense, including a statement that she agreed to go to pre-trial intervention rather than trial because it spared her "the cost of going to trial," which she could not afford. [Facts ¶ 23] Hence, Plaintiff had an opportunity to present her side of the story and was also represented by legal counsel at the time the Committee considered her appeal.

On November 24, 1998, the Security Clearance Committee reconvened to consider Plaintiff's appeal of its prior decision to deny her full-time employment and remove her from the substitute teaching list. [Facts ¶ 25] After reviewing the correspondence and documents sent by, and on behalf of, the Plaintiff, the appeal was denied. [Facts ¶ 25] Therefore, it is clear that the Plaintiff received the full procedural panoply that the law prescribes. In addition, Plaintiff could have taken her appeal higher -- to the Superintendent of Schools and even to the School Board itself. Plaintiff, however, failed to take advantage of such additional remedial opportunities and, therefore, she has waived any claim regarding violation of her procedural due process rights. As such, the School Board has satisfied constitutional minima and the Court should grant the School Board summary judgment as to Count I of the Complaint.

-11-

## POINT IV

### DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON ALL OF PLAINTIFF'S SUBSTANTIVE DUE PROCESS CLAIMS BASED UPON EMPLOYMENT RIGHTS, AS SUCH RIGHTS DO NOT ENJOY SUBSTANTIVE DUE PROCESS PROTECTION.

In Counts I, II and IV, Plaintiff appears to be asserting alleged violations of her substantive due process rights under the United States and Florida Constitutions. Specifically, Plaintiff asserts that revocation of her authorization to work as a substitute teacher (Count II) and the denial of future employment opportunities with the School Board (Counts I and IV) violated fundamental due process principles. As shown below, however, Plaintiff cannot state a claim for denial of substantive due process under either the United States or the Florida Constitutions.

"The substantive component of the Due Process Clause protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.'" McKinney, 20 F.3d at 1556. In other words, substantive due process rights can only be created by the Federal or Florida Constitutions. Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 229 (1985). Thus, "areas in which substantive rights are created only by state law (as is the case with tort law and employment law) are not subject to substantive due process protection." McKinney, 20 F.3d at 1556. Indeed, the Supreme Court has made it abundantly clear that "state employment decisions are not covered by its substantive due process jurisprudence." Id. 1559 (citing Bishop v. Wood, 426 U.S. 341 (1976)) (emphasis added). In Bishop, the Supreme Court reasoned that:

> The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasiblely be construed to require federal judicial review for every such error. In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due Process Clause of the Fourteenth

-12-

Amendment is not a guarantee against incorrect or ill-advised personnel decisions.

426 U.S. at 349-50.

In the instant case, the School Board's decision to remove Plaintiff from the substitute teacher list and to reject her application for employment as a regular full-time teacher (even presuming she had a valid Florida teaching certificate, which she did not), are the exact types of employment decisions contemplated by the Court in Bishop to be undeserving of substantive due process protection. See McKinney, 20 F.3d at 1560, 1561. See also Thornquest v. King, 82 F.3d 1001, 1003 n.2 (11th Cir. 1996) (holding that substantive due process claim arising from an alleged violation of a state-created, non-fundamental property right in public employment was not cognizable). As a matter of law, therefore, Defendant is entitled to summary judgment on Plaintiff's substantive due process claims as asserted in Counts I, II and IV of the Complaint.

## POINT V

> THE COURT SHOULD GRANT SUMMARY JUDGMENT TO THE SCHOOL BOARD ON COUNTS III AND V AS THERE IS NO EVIDENCE OF A "DE FACTO" RULE TO DISCHARGE EMPLOYEES OR EXCLUDE APPLICANTS FROM EMPLOYMENT MERELY BECAUSE THEY HAVE BEEN CHARGED WITH A CRIME. ALTERNATIVELY, THE SCHOOL BOARD'S EMPLOYMENT DECISIONS IN THIS REGARD WERE RATIONALLY RELATED TO A LEGITIMATE GOVERNMENTAL PURPOSE.

In Counts III and V, Plaintiff alleges that the School Board has a de facto rule and/or practice whereby employees who have been charged with criminal offenses can be dismissed from their employment or excluded from future employment. Plaintiff alleges that this rule or practice creates two distinct classes of employees -- those who have been charged with a crime and those who have not been charged with a crime. Plaintiff also asserts that the School Board's alleged de facto rule or practice is

-13-

not rationally related to a legitimate state interest. These arguments are specious because the School Board is clearly required to perform criminal background checks on teachers by Florida law.

A.    Plaintiff can present no evidence that the School Board has a "de facto" rule to dismiss employees or exclude applicants from employment simply because they have been charged with a crime.

Plaintiff allegation that the School Board has a de facto rule and/or practice whereby employees or applicants who have simply been charged with criminal offenses are dismissed from employment or excluded from future employment is based solely upon her own unsupported accusations. The undisputed material facts establish that the School Board's actual practice or policy involves performing criminal background checks as required by law and then reviewing each situation on a case by case basis. Further, a number of persons with criminal arrest records have in fact been retained by the School Board. [Facts ¶ 14] Plaintiff can proffer no evidence to the contrary.

In Plaintiff's case, although her arrest and subsequent plea agreement was a consideration in the School Board's decision to remove her from the substitute teaching list, the Security Clearance Committee's decision was not based solely upon that arrest. The undisputed facts show that the decision with respect to Plaintiff's unsuitability to work with children as a teacher in any capacity at that time also rested on the nature (illegal narcotics) and severity (felony) of the offense, the disposition of the charge (i.e., Plaintiff's "no contest" plea and her agreement to enter a pre-trial intervention program), and the misleading nature in which Plaintiff attempted to describe her arrest on the security background check form she completed in September 1998. [Facts ¶ 18]

As to Plaintiff's statement on the back of the security background check form, specifically, Plaintiff sought to convey the impression that she was merely "in the wrong place at the wrong time" and, therefore, had nothing to do with the crack cocaine found in her car. [Facts ¶ 22] However, upon review of the police report, the Security Clearance Committee learned that the "male friend" who

-14-

"borrowed" her car was David Sears, Plaintiff's live-in boyfriend at the time and current husband. [Facts ¶ 21] The report also revealed that a police narcotic dog alerted on the Plaintiff's purse, in which a police officer found a rolled bundle of fifty one-dollar bills -- which facts Plaintiff never mentioned in her statement. [Facts ¶ 21] The Security Clearance Committee therefore had ample grounds to conclude that Plaintiff had been less than entirely truthful and forthright in her statement. [Facts ¶ 21, 22]

It clearly does not violate the law to dismiss an employee or refuse to hire an applicant because of that person's prior misconduct. In Walton v. Turlington, 444 So.2d 1082 (Fla. 1st DCA 1984), the Florida Commissioner of Education sought to revoke a teacher's teaching certificate for possession of marijuana. The teacher argued that it was contrary to Florida law for the commissioner to rely on his arrest to revoke his teaching certificate because the expungement of his record of criminal prosecution placed him in the same position as if he had never been charged with a crime. The court held that, although the teacher's record had been expunged and he technically had never even been charged with possession of marijuana, it did not mean the commissioner could not hold the teacher responsible for his actions in a non-criminal proceeding. Id. at 1084. The court reasoned that it was the teacher's "conduct, not the criminal charge or conviction nor the records thereof, which form[ed] the basis of the [commissioner's] complaint." Id.

Similarly, in the instant case, it was unquestionably legally permissible for the School Board to consider prior conduct to either dismiss an at-will employee, or refuse to hire an (otherwise unqualified) applicant for full-time employment in a position which required working directly with

-15-

"borrowed" her car was David Sears, Plaintiff's live-in boyfriend at the time and current husband. [Facts ¶ 21] The report also revealed that a police narcotic dog alerted on the Plaintiff's purse, in which a police officer found a rolled bundle of fifty one-dollar bills -- which facts Plaintiff never mentioned in her statement. [Facts ¶ 21] The Security Clearance Committee therefore had ample grounds to conclude that Plaintiff had been less than entirely truthful and forthright in her statement. [Facts ¶ 21, 22]

It clearly does not violate the law to dismiss an employee or refuse to hire an applicant because of that person's prior misconduct. In Walton v. Turlington, 444 So.2d 1082 (Fla. 1st DCA 1984), the Florida Commissioner of Education sought to revoke a teacher's teaching certificate for possession of marijuana. The teacher argued that it was contrary to Florida law for the commissioner to rely on his arrest to revoke his teaching certificate because the expungement of his record of criminal prosecution placed him in the same position as if he had never been charged with a crime. The court held that, although the teacher's record had been expunged and he technically had never even been charged with possession of marijuana, it did not mean the commissioner could not hold the teacher responsible for his actions in a non-criminal proceeding. Id. The court reasoned that it was the teacher's "conduct, not the criminal charge or conviction nor the records thereof, which form[ed] the basis of the [commissioner's] complaint."

Similarly, in the instant case, it was unquestionably legally permissible for the School Board to consider prior conduct to either dismiss an at-will employee, or refuse to hire an (otherwise unqualified) applicant for full-time employment in a position which required working directly with

-15-

children as a teacher. Based on the foregoing, the Court should grant summary judgment in favor of the School Board as to Counts III and V.[7]

B.    Alternatively, the School Board's employment decisions as to the Plaintiff were rationally related to a legitimate governmental purpose.

Presuming solely for the sake of argument that the School Board did have a de facto rule and/or practice of refusing to permit persons who have been charged with and pled "no contest" to felony possession of narcotics from continuing to serve as substitute teachers and/or excluding applicants who pled no contest to past felony narcotics charges from future employment as teachers, such a rule and/or practice would clearly be rationally related to a legitimate governmental purpose.

As established above under Point III, the School Board's decision with respect to Plaintiff did not implicate any fundamental right. Further, Plaintiff has not asserted (nor can she) that the School Board's alleged de facto policy targets any protected class. Indeed, the only distinction Plaintiff has made is that the School Board allegedly treats employees and/or applicants who have been charged with (and pled no contest to) felony narcotics possession differently than those employees and/or applicants without a similar criminal history. Under such circumstances, the law is clear that the Court need only apply the rational basis test to Plaintiff's Equal Protection claims. See Bannum, Inc. v. City of Fort Lauderdale, 157 F.3d 819, 822 (11th Cir. 1998) (holding that, absent implication of a fundamental right or adverse effect upon a protected or suspect classification, a policy is presumed constitutional under equal protection if it is rationally related to a legitimate state interest), cert. denied, 120 S. Ct. 67 (1999). The "lenient" rational basis standard "looks to whether the classification bears a rational relationship to a legitimate public purpose which it is intended to achieve." Waste Aid Systems, Inc. v. Citrus County, 613 F. Supp. 102, 105 (M.D. Fla. 1985).

_____

[7]    For the same reasons, the Court should also grant summary judgment in the School Board's favor as to Counts II and IV, as they are based upon the same "de facto policy" allegation.

-16-

Under the rational basis standard, the distinction complained of by Plaintiff of treating school teachers who have previously pled no contest to felony narcotics charges differently from persons with no such criminal history will be sustained if the legislative body "could have reasonably concluded that the challenged classification would promote a legitimate state purpose." Waste Aid Systems, Inc., 613 F. Supp. at 106. Indeed, under the rational basis test, a rule or practice should not be overturned on equal protection grounds "unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [the Court] can only conclude that the [School Board's] actions were irrational." Vance v. Bradley, 440 U.S. 93, 97 (1979). Further, the question is not whether the classification actually accomplishes its stated goals, but whether the legislative body could have rationally or reasonably believed it would promote the desired purpose. Id.; Alamo Rent-A-Car v. Sarasota-Manatee Airport Auth., 825 F.2d 367, 372 (11th Cir. 1987), cert. denied, 498 U.S. 1120 (1991). If, under the rational basis test, there is a "plausible reason[ ] for [the School Board's] action, [the Court's] inquiry is at an end." United States R.R. Retirement Bd. v. Fritz, 449 U.S. 166, 179 (1980). The Court also need not find that the School Board ever articulated the reason, or that the challenged rule and/or practice was wise. See Flemming v. Nestor, 363 U.S. 603, 612 (1960); City of Dallas v. Stanglin, 490 U.S. 19, 27 (1989).[8] Cf. Wood v. Strickland, 420 U.S. 308, 316 (1975)(noting that "It is not the role of the Federal courts to set aside decisions of school administrators which the Court may view as lacking a basis in wisdom or compassion.").

The Plaintiff has the burden of proving that an equal protection violation exists. Vance, 440 U.S. at 111 (1979); Johnson v. Smith, 696 F.2d 1334, 1338 (11th Cir. 1983). As such, Plaintiff must overcome the strict presumption that the legislative classification is constitutional. Silverstein, 861 F.2d

---

[8]    See also United States R.R. Retirement Bd., 449 U.S. at 179; Alamo Rent-A-Car, 825 F.2d at 371 n.4, in which the courts held that the legislative body is not constitutionally required to set forth the reasons for enacting a statute or rule.

at 1564 (11th Cir. 1988). Therefore, in order to prevail in the instant case, Plaintiff must prove that the School Board's decision -- to remove her from the substitute teacher list and to deny her application for a regular, full-time teaching position for the 1998-99 school year allegedly because of a past narcotics arrest (and plea agreement) -- is not rationally related to any legitimate educational goal or does not rest on any reasonable basis. This the Plaintiff cannot do. The alleged classifications complained of by Plaintiff were and are rationally related to the requirements of Florida law regarding felony narcotics charges as to which adjudication has been withheld as well as the School Board's legitimate goal of zero tolerance of illegal drug use or possession in the school system, and/or the legitimate goal of keeping individuals with prior arrests for possession of crack cocaine away from children.[9]

In Hilliard v. Ferguson, 30 F.3d 649 (5th Cir. 1994), the plaintiff alleged that a school board had a policy of denying applicants employment on the basis of their status as convicted felons, which policy he alleged deprived members of his class (convicted felons) of their rights under the Equal Protection Clause. The court in Hilliard determined that there was no such policy and that, under the actual policy, the school board considered the facts and circumstances on a case-by-case basis. Nevertheless, the court still considered whether the policy violated the plaintiff's Equal Protection rights. Applying the rational basis test, the Hilliard court held that the school board easily satisfied the rational basis threshold. The court further noted that:

> Looking a little deeper into a convicted felon's background and, in
> particular, at the circumstances of the conviction is rationally related to
> serve the legitimate interest in protecting the schoolchildren within that

---

[9]    See Negrich v. Dade County Bd. of Public Instruction, 143 So.2d 498, 501 (Fla. 3d DCA 1962) ("A teacher whose ideals of right and wrong are so lax as to permit her to pursue a [questionable] course of conduct . . . [to include, possession of cocaine and misleading the School Board in her application for employment]. . . is a bad example to the youth whose ideals a teacher is supposed to foster and elevate . . . .").

-18-

teacher's proximity and care. We would expect nothing less. The policy
serves to ensure that the highest degree possible of educational services
will be provided to the children of Orleans Parish within a safe and
secure environment.

Id. at 652.

Similarly, the Sixth Circuit in Knox County Educ. Ass'n v. Knox County Bd. of Educ., 158 F.3d

361, 379 (6th Cir. 1998), cert. denied, 120 S. Ct. 46 (1999), in upholding the constitutionality of a

school district employee drug testing policy, recognized that "a local school district has a strong and

abiding interest in requiring that teachers and other school officials be drug-free so that they can satisfy

their statutory obligation to ensure the safety and welfare of the children." The court in Knox County

reasoned that:

> We can imagine few governmental interests more important to a
> community than that of ensuring the safety and security of its children
> while they are entrusted to the care of teachers and administrators.
> Concomitant with this governmental interest is the community's interest
> in reasonably ensuring that those who are entrusted with the care of our
> children will not be included to influence children -- either directly or by
> example -- in the direction of illegal and dangerous activities which
> undermine values which parents attempt to instill in children in the
> home.... Clearly, if school personnel are themselves under the influence
> of, or involved in, drugs, their ability to perform [critical functions] is
> not only reduced, but they themselves are open to being compromised
> and undermined.

158 F.3d at 374-75, 379. See also DeMichele v. Greenburgh Cent. Sch. Dist., 167 F.3d 784 (2d Cir.

1999)(upholding termination of tenured teacher for 20-year old offenses on the basis that the school

district's interest in protecting its students outweighed the teacher's less significant interest in keeping

that particular job).

Here, the alleged "classifications" by the School Board are rationally related to the School

Board's legitimate goal of protecting the school children that have been placed in its care, from

individuals with criminal backgrounds. Although Plaintiff was never adjudicated guilty of a crime,

-19-

based on the facts of Plaintiff's case, the School Board had ample reason look beyond her assertion that she was completely innocent with respect to felony possession of 14 grams of crack cocaine. The School Board's decision, based in part upon Plaintiff's conduct and lack of candor, combined with the severity and disposition of the offense charged, is without doubt rationally related to its duty of providing a safe environment for its school children. As such, the School Board is entitled to summary judgment on Plaintiff's meritless Equal Protection claims.

## CONCLUSION

Based upon the foregoing arguments and authorities and the undisputed material facts, Defendant, the School Board of Broward County, Florida, is entitled to summary judgment as a matter of law on all Counts of the Second Amended Complaint.

Suite 3600
First Union Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131-2338
(305) 358-5500 (Miami-Dade)
(954) 522-0393 (Broward)
(305) 379-3802 (Fax)

MULLER, MINTZ, KORNREICH, CALDWELL,
CASEY, CROSLAND & BRAMNICK, P.A.

By_____
Gordon D. Rogers
grogers@mullermintz.com
Florida Bar No. 240168

By_____
Debra M. Lubkin
dlubkin@mullermintz.com
Florida Bar No. 0992161
Counsel for Defendant

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of this document has been furnished to Mark J. Berkowitz, Esquire, Mark J. Berkowitz, P.A., Counsel for Plaintiff, Suite 200N, 524 South Andrews Avenue, Fort Lauderdale, Florida 33301, by Certified Mail 7000-0520-0018-1125, this 21st day of December, 2000.

Debra M. Lubkin