UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 00-6017-CIV-DIMITROULEAS/SELTZER

CHERL SEARS,        )
                    )
       Plaintiff,   )
                    )
v.                  )         NIGHT BOX
                    )          FILED
THE SCHOOL BOARD OF BROWARD )
COUNTY, FLORIDA,    )         DEC 21 2000
                    )
       Defendant.   )         CLARENCE MADDOX
_____)         CLERK, USDC / SDFL / FTL

## DEFENDANT'S CONCISE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, the SCHOOL BOARD OF BROWARD COUNTY, FLORIDA ("School Board"), through its counsel, Muller, Mintz, Kornreich, Caldwell, Casey, Crosland & Bramnick, P.A., files this Concise Statement of Undisputed Material Facts pursuant to Local Rule 7.5, in support of Defendant's Motion for Summary Judgment. The facts set forth herein are supported by the sworn deposition testimony of Plaintiff, Cherl Sears, with supporting exhibits [Sears p. __]; the sworn deposition testimony of the School Board's Director of Instructional Staffing, Ms. Gracie Diaz, with supporting exhibits [Diaz p. __]; and the sworn supplemental Affidavit of Gracie Diaz [Diaz Supp. ¶ __].

1.  Defendant School Board is a political subdivision of the State of Florida created pursuant to Article IX of the Florida Constitution (1968). [Second Amended Complaint ("Complaint") ¶ 4; Answer and Affirmative Defenses ("Answer") ¶ 4]

2.  Plaintiff, Cherl Sears, was formerly employed by the School Board as a substitute teacher at various times and on various dates since February, 1992. Her security clearance to work as a substitute was revoked on October 1, 1998. Since that time, Plaintiff has never reapplied for employment with the School Board. [Complaint ¶¶ 3, 5; Answer ¶ 5; Sears pp. 67, 92-93 and Ex. 11]

3.  The School Board employs three types of substitute teachers: Regular Substitutes, Interim Substitutes, and Pool Substitutes. [Diaz Supp. ¶ 2] Regular Substitutes are called in to a



school on an ad hoc basis to substitute for an absent teacher that day. [Diaz p. 27] A Regular Substitute is not required to have a college degree but must have at least 60 semester hours of college credit. Regular Substitutes are paid at a daily rate of approximately seventy to eighty dollars per day and receive no fringe benefits. [Diaz p. 40; Diaz Supp. ¶ 2]

4. Pool Substitutes report each school day to a particular school to be available to fill in for absent teachers as the need arises. [Diaz p. 28] Pool Substitutes agree in writing to accept the position for one school year only (specifically, 180 days), at a specified daily rate of pay of approximately ninety dollars per day. Like a Regular Substitute, a Pool Substitute is not required to have a college degree but must have at least 60 semester hours of college credit. [Diaz p. 40; Diaz Supp. ¶ 3]

5. Interim Substitutes are hired to teach a class for at least twenty consecutive days or more. [Diaz p. 28] An Interim Substitute must have a bachelor's degree and is paid the daily rate of a beginning teacher (approximately $28,500/year). [Diaz p. 28; Diaz Supp. ¶ 4] Interim Substitutes cannot be put into a vacant teaching position; they can only be used to substitute for a teacher on an extended leave of absence (i.e., sickness or injury, pregnancy, or workers' compensation). [Diaz Supp. ¶ 4]

6. All substitutes must attend and complete the Substitute Teaching Training Workshop, must qualify for a Broward County Substitute Teaching Certificate, and must be fingerprinted and pass a criminal background check. All substitutes also sign a memorandum of understanding which specifies that regular work during the school year is not guaranteed. [Diaz Supp. ¶ 5]

7. All substitute teachers are expressly excluded from coverage under the collective bargaining agreement between the School Board and the Broward Teachers Union. [Diaz Supp. ¶ 6]

8. Pursuant to Florida law, criminal background checks have been required for new School Board instructional employees since, at least, the mid 1980s. The background check requirements apply to regular as well as substitute employees and normally involve requiring the

employee to submit a complete set of fingerprints, which are then sent to the Federal Bureau of Investigation and the Florida Department of Law Enforcement for review. [Diaz Supp. ¶ 8][1]

9. In order to implement the requirements of Florida law regarding fingerprinting and criminal background checks for employees, the School Board established a Security Clearance Committee to make determinations of eligibility for employment with the School District. [Diaz Supp. ¶ 9] Pursuant to School Board procedures put in place in July, 1996, applicants for full-time instructional positions were required to complete a security background check form and be fingerprinted. If an applicant disclosed past criminal activity on the form, or the fingerprint check revealed such criminal activity, the relevant police report(s) and records were obtained and reviewed by the Security Clearance Committee. [Diaz p. 26 and Ex. 6; Diaz Supp. ¶ 9]

10. Plaintiff, Cherl Sears, was first employed by the School Board as a Regular Substitute in February, 1992. Official School Board records reflect that Plaintiff was fingerprinted upon being employed as a Substitute Teacher in 1992 and again in 1994. [Sears p.12, Ex. 2; Diaz Supp. ¶ 7, 8] She had no reported criminal history at that time. [Diaz Supp. ¶ 8] She worked on an as needed basis as a Regular Substitute teacher until October 1, 1996. Official School Board records establish that Plaintiff thereafter worked as a substitute teacher in the following capacities:

| School Period | Substitute Position |
|---|---|
| 10/02/96 - 06/13/97 | Pool |
| 07/01/97 - 09/30/97 | Regular |
| 10/01/97 - 03/01/98 | Pool |
| 03/02/98 - 06/12/98 | Interim |
| 08/25/98 - 10/05/98 | Regular |

At the time she was initially authorized to work as a substitute teacher, Plaintiff signed a Memorandum of Understanding which stated that she "understood that there are currently over 3,300 substitutes available for employment and that regular employment should not be expected nor guaranteed." [Diaz Supp. ¶ 7; Sears pp. 14, 48-50, Acknowledgment form at Ex. 2] Plaintiff concedes that she read that provision and understood she was not guaranteed employment. [Sears

---

[1] Florida law requires fingerprinting and screening of all instructional personnel, including substitute teachers, prior to appointment. See Fla. Stat. §§ 231.02; 231.47 (1997).

-3-

pp. 13-14, 108] Plaintiff further concedes that she was not guaranteed continued employment as either a Pool or an Interim Substitute after the end of the particular school year. [Sears p. 109]

11. At the time of her initial employment as a substitute teacher, Plaintiff held a Florida Substitute Teaching Certificate, which was valid from July 1, 1989, through June 30, 1994. [Sears p. 9, Exs. 1, 19] On July 21, 1994, Plaintiff applied for and was granted a Broward County Substitute Teaching Certificate which remained in effect from July 1, 1994, through June 30, 1999. [Sears p. 21, Ex. 4.] At no time during this period did Plaintiff have any type of temporary or permanent Florida teaching certificate that would have allowed her to be hired as a regular full-time teacher under Florida law. [Diaz Supp. ¶¶ 22, 28]

12. Prior to December, 1999, each determination was made by the Security Clearance Committee on a case-by-case basis. [Diaz pp. 9, 12; Sears at Ex. 14] At the time of the determination regarding Plaintiff, the process involved looking at the type of crime involved, when it was committed, and how it was adjudicated. The Security Clearance Committee would also take into consideration any mitigating factors which were brought to its attention by the applicant, such as whether a long period of time had passed since the offense and what the person had done since that time. [Diaz pp. 8, 36-37; Diaz Supp. ¶ 10]

13. In making its determination, the Security Clearance Committee generally followed Section 435.04, Florida Statutes (1997), which provides that persons with a record of certain criminal offenses, regardless of adjudication, should not be hired. [Diaz pp. 19-20; Diaz Supp. ¶ 11] Specifically, Section 435.04 requires security background investigations for all employees in positions designated by law as positions of trust or responsibility to ensure that such persons have not pled nolo contendere to specific criminal activities, including but not limited to violation of Chapter 893, Florida Statutes, relating to drug abuse prevention and control.[2] See Fla. Stat. §§

---

[2] Similarly, Section 435.03(2), Florida Statutes (1997), provides in pertinent part that:

> Any person for whom employment screening is required by statute must not have been found guilty of, regardless of adjudication, or entered a plea of nolo contendere or guilty to, any offense prohibited under any of the following provisions of the Florida Statutes or under any similar statute of another jurisdiction: . . . (cc) Chapter 893, relating to drug abuse prevention and control, only if the offense was

-4-

435.04(1), (2) (1997). [Diaz Supp. ¶ 11] Section 435.06, Florida Statutes (1997), requires, inter alia, termination of employment of any personnel found to be in noncompliance unless an exemption is requested and granted.[3] [Diaz Supp. ¶ 11]

14.     After reviewing the merits of a case, if the Security Clearance Committee found reason to believe that a disqualifying offense occurred and insufficient mitigating factors were present, the Committee served as the initial step in the screening process to determine the person to be non-employable. [Diaz Supp. ¶ 13] However, prior to policy changes implemented in 1999 as discussed below, no applicant was ever automatically denied employment. [Diaz p. 11; Diaz Supp. ¶ 13] In fact, instructional personnel have been hired or retained despite past felony arrests. [Sears pp. 72, 75-76; Diaz pp. 35-36; Diaz Supp. ¶ 13]

15.     The Security Clearance Committee also considered the standards adopted by the Professional Practices Division of the Florida Department of Education for the issuance of teaching certificates, which provide that an applicant may be deemed ineligible for certification even if the criminal offense with which he or she was charged resulted in a plea of nolo contendre, withholding of adjudication, or pretrial intervention. [Diaz p. 8; Diaz Supp. ¶ 12]

16.     In December, 1999, following an audit by the Broward County Sheriff's Office, the Security Clearance Committee developed formal, written guidelines. [Diaz p. 9, and Ex. 1] The new guidelines delineate when the Security Clearance Committee should automatically deny employment (such as, for egregious offenses like sexual assault, child abuse, kidnaping and extreme violence) and when applicants can be considered on a case-by-case basis. The guidelines apply to guilty pleas (regardless of adjudication), no contest pleas, and pre-trial intervention/diversion. [Diaz p. 10 and Ex. 1; Diaz Supp. ¶ 23]

---

a felony or if any other person involved in the offense was a minor.

[3]     Section 435.07, Florida Statutes (1997), provides exemptions for, inter alia, felonies committed more than three years prior, misdemeanors, and findings of delinquency, providing that the applicant has demonstrated by clear and convincing evidence that they should not be disqualified from employment.

17.     In all cases (both pre-December, 1999, and post-December, 1999), the applicant has the right to appeal the Security Clearance Committee's determination. [Diaz pp. 16, 18, 29, 32, 34; Diaz Supp. ¶ 24] Appeal is first made directly to the Security Clearance Committee via the Associate Superintendent of District Administration. The Security Clearance Committee will reconvene, with the Associate Superintendent present, and review the merits of the case again. The Associate Superintendent would ultimately make the final determination. [Diaz pp. 16-17; Diaz Supp. ¶ 24] Thereafter, the applicant could appeal to the Superintendent and/or the School Board. [Diaz p. 29, 32; Diaz Supp. ¶ 24]

18.     On or about September 16, 1998, Plaintiff applied for a full-time teaching position with the School Board. [Sears pp. 58-61, Ex. 9][4] Prior to that time, Plaintiff had only worked for the School Board as a substitute teacher. As part of the full-time teacher application process, Plaintiff was required to complete a new security background check form. [Sears p. 129; Diaz p. 12; Diaz Supp. ¶ 14] On that form, Plaintiff disclosed that she had been arrested and charged in 1995 with possession of cocaine. Plaintiff also disclosed that she had pled "no contest" in the criminal proceeding and that she had participated in a pre-trial intervention program after which the charge was dismissed. On the back of the form, she stated that she allowed a "male friend" to borrow her car for a day; that the friend then returned to pick her up at which time Plaintiff entered the passenger side of her car; and that the "male friend" drove them to a mall where she and the "male friend" were confronted by the police. The police searched Plaintiff' car and found cocaine. Plaintiff alleged that she had no knowledge that the cocaine was in her car. Plaintiff and her "male friend" were

---

[4]     Pursuant to Section 231.36, Florida Statutes (1999), in order to become a full-time teacher, an applicant must by properly certified by the Florida Department of Education. Section 231.17(1), Florida Statutes (1999), states in pertinent part that "[e]ach person seeking certification . . . shall submit a completed application to the Department of Education. . . . [t]he Department of Education shall issue within ninety (90) calendar days after the stamped receipted date of the completed application an official statement of eligibility for certification or a certificate covering the classification, level, and area for which the applicant is deemed qualified." A statement of eligibility is valid for two years and advises the applicant of the requirements that must be completed to qualify for either a temporary or professional certificate. Fla. Stat. § 231.17(2). Once the applicant meets the stated requirements, the temporary certificate (or Professional Certificate, as the case may be) will be issued. Fla. Stat. §231.17(3).

subsequently arrested. Plaintiff stated that she was "ordered" to attend pre-trial intervention.[5] After she completed the pre-trial intervention program, the felony criminal case against her was dismissed. [Sears pp. 61-64, Ex. 10; Complaint ¶ 11; Diaz Supp. ¶ 14; Diaz p. 12]

19.     Plaintiff never informed the principal of the school where she was assigned of the arrest or criminal prosecution. [Sears p. 65] Additionally, contrary to Section 230.335(1)(a), Florida Statutes (1997), the fact that Plaintiff was arrested for felony cocaine possession was not reported to the School Board's Superintendent of Schools by the law enforcement agency which made the arrest. [Diaz Supp. ¶ 15]

20.     Pursuant to School Board policy, Plaintiff obtained and provided a copy of the police report on her 1995 felony narcotics arrest to the School Board with her application for a full time teaching position. [Sears p. 34; Diaz p. 12]

21.     Upon receipt and review of the police report, the Security Clearance Committee learned that Plaintiff (formerly known as "Cherl Hall") had been arrested on June 14, 1995, and that the criminal proceedings against her continued into the period during which she was working as a substitute teacher for the School Board. [Diaz Supp. ¶ 16] The police report also stated that Plaintiff's "male friend" was David Sears, Plaintiff's live-in boyfriend at the time. [Sears at Ex. 7; Diaz pp. 12-13; Diaz Supp. ¶ 16][6] The report further noted that the police found 14 grams of crack cocaine in the passenger-side compartment of Plaintiff's car.[7] The Police Officer stated in the report that a trained narcotics dog specifically alerted on the Plaintiff's purse, where the Officer found a rolled bundle of fifty one-dollar bills. [Sears at Ex. 7; Diaz Supp. ¶ 16]

22.     On October 1, 1998, based on its assessment of the facts presented before it, the Security Clearance Committee determined that Plaintiff was not employable with the School Board

---

[5]     In her deposition, Plaintiff concedes that she was never actually "ordered" to attend pre-trial intervention; rather, she elected to enter into a plea agreement and enter the program upon the advice of legal counsel.

[6]     Plaintiff was aware at the time she loaned her car to the "male friend" that he had previously spent time in prison. [Sears pp. 24-26] Approximately one month after the arrest, Plaintiff and Mr. Sears were legally married. [Sears p. 40 and Ex. 5]

[7]     Plaintiff was charged with violation of Section 893.13, Florida Statutes, which makes it a felony to possess crack cocaine. See Fla. Stat. §§ 893.03(2)(a); 893.13(1)(a).

at that time. [Sears pp. 65-66, Ex. 11; Diaz pp. 13-15; Diaz Supp. ¶ 17] This determination was based on the felony arrest for possession of 14 grams of crack cocaine; the fact that Plaintiff pled "no contest" to a felony narcotics charge and entered a pre-trial intervention program; and the incomplete and otherwise misleading manner in which Plaintiff described her arrest on the security background check form. [Diaz pp. 13-15][8] The Security Clearance Committee's determination in this regard also complied with Section 435.03(2), Florida Statutes (1997). Hence, Plaintiff's application for a full-time teaching position was denied and she was removed from the substitute teacher availability list. [Diaz p. 21; Diaz Supp. ¶ 18] Plaintiff was informed that she could appeal the Security Clearance Committee's decision to the School Board's Associate Superintendent of District Administration, Hal Blitman. [Sears p. 69]

23. On October 6, 1998, Plaintiff sent a letter to Mr. Blitman appealing the Security Clearance Committee's decision to deny her security clearance for employment. [Sears pp. 71-72; Diaz p. 16; Diaz Supp. ¶ 19] Plaintiff stated in that letter that she agreed to enter into a pre-trial intervention program, instead of going to trial, because it would "spare [her] the cost of going to trial," which she could not afford. [Sears pp. 71-72, Ex. 12] When Plaintiff filed her appeal, she never requested a meeting with Mr. Blitman. [Sears p. 72]

24. On November 10, 1998, the School Board received a letter from Mark J. Berkowitz, Esquire, on behalf of Ms. Sears, demanding that Ms. Sears be reinstated as a substitute teacher and that her application for a full-time teaching position be given "appropriate and full consideration by the School Board." Mr. Berkowitz stated that, if the School Board did not respond to the demand by November 23, 1998, Ms. Sears was "prepared to take formal legal measures." [Diaz Supp. ¶ 20]

25. The Security Clearance Committee reconvened on November 24, 1998, to consider Plaintiff's appeal of its previous decision to reject her for full-time employment as a teacher and remove her from the substitute teaching availability list. After reviewing the correspondence and

---

[8]  Plaintiff's statement on the back of the security background check form gave the impression that Plaintiff was merely "in the wrong place at the wrong time" and, therefore, had nothing to do with the illegal drugs found in her car, which, upon further review by the Security Clearance Committee, did not appear to be forthright or truthful. [Diaz pp. 13-14, 20]

-8-

documents sent by, and on behalf of, the Plaintiff, the Security Clearance Committee denied Plaintiff's appeal. [Sears p. 101, Ex. 13; Diaz Supp. ¶ 2, 18]

26. After the Security Clearance Committee's denial of Plaintiff's appeal, Plaintiff never reapplied for employment with the School Board. [Sears pp. 92, 93] Plaintiff concedes that she was informed she could re-apply for employment with the School Board after one year. [Sears p. 77]. Plaintiff further concedes that she is not aware of any documents or School Board policies that would absolutely bar her from employment with the School Board. [Sears p. 124; Diaz p. 29; Diaz Supp. ¶ 26]

27. Plaintiff could have appealed the Security Clearance Committee's decision to the Superintendent and/or the elected School Board. Neither Plaintiff nor her counsel pursued either avenue of relief. [Diaz pp. 29, 34; Diaz Supp. ¶ 25; Sears p. 112]

28. Under Florida law, in order to be hired for a full-time instructional position, an applicant must have a valid Florida Professional Teaching Certificate or be eligible for one (i.e., possess a Temporary Teaching Certificate). The Florida Department of Education ("DOE") determines eligibility. Specifically, the DOE, upon review of an application for certification, will issue a "Statement of Eligibility" indicating what the applicant must do in order for a Temporary certificate to be issued. If the Statement of Eligibility indicates that "specialization requirements" are required, the applicant will not be eligible for a Temporary Certificate until the noted courses are completed. Thus, a Statement of Eligibility is not the same as a Temporary Teaching Certificate. Once a Temporary Certificate is issued, the certificate holder has two years to complete any additional requirements to obtain a Professional Certificate. In any event, prior to issuance of a Certificate (Temporary or Professional), the DOE requires a fingerprint card which has been processed by the Florida Department of Law Enforcement and the Federal Bureau of Investigation. If the background check on the applicant reflects an arrest record, the file is sent to DOE's Professional Practices Services for a further review, and the issuance of any type of teaching certificate is contingent upon the results of that review.[9] [Diaz Supp. ¶ 27; Sears p. 53 and Ex. 8]

---

[9] Under Florida law, only those persons holding a Professional Certificate who have completed three years of probationary service are entitled to be issued a professional service contract. Fla. Stat. § 231.36(3)(a) (1997).

29. On or about February 24, 1998, Plaintiff received a Statement of Eligibility for certification to become a full-time teacher which stated that Plaintiff "will" be eligible for a two-year non-renewable Temporary Teaching Certificate when she completed the specialization requirements of three semester hours in western civilization or European, Asian, African, Latin American, or Middle Eastern history, and three semester hours in Geography. Plaintiff also had to submit a fingerprint card processed by the Florida Department of Law Enforcement and the Federal Bureau of Investigation. [Sears p. 124 and Ex. 8]

30. At the time Plaintiff applied for the full-time teaching position, she had not completed the six semester hours required as per the Statement of Eligibility to obtain a temporary teaching certificate. Although Plaintiff had taken six semester hours in Language Development & Learning Disabilities and Survey of Exceptional Children, those courses did not fulfill the requirements to obtain her temporary Florida teaching certificate because neither of the two courses were in the required fields of study (i.e., Geography and Western Civilization). [Diaz pp. 38-39, 41; Diaz Supp. ¶ 28; Sears pp. 82-85, Ex. 16] Thus, even if Plaintiff had been cleared by the SCC, the School Board still count not have employed her as a regular full-time teacher at that time. [Diaz Supp. ¶ 22]

31. At no time during her employment as a substitute teacher by the School Board was Plaintiff ever granted a regular employment contract as a teacher under Section 231.36, Florida Statutes. [Diaz pp. 38-41; Diaz Supp. ¶ 28]

MULLER, MINTZ, KORNREICH, CALDWELL,
CASEY, CROSLAND & BRAMNICK, P.A.

Suite 3600
First Union Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131-2338
(305) 358-5500 (Miami-Dade)
(954) 522-0393 (Broward)
(305) 379-3802 (Fax)

By_____
Gordon D. Rogers, Esquire
Florida Bar No. 240168
grogers@mullermintz.com

By_____
Debra M. Lubkin
Florida Bar No. 0992161
dlubkin@mullermintz.com
Counsel for Defendant

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of this document has been furnished to Mark J. Berkowitz, Esquire, Mark J. Berkowitz, P.A., Counsel for Plaintiff, Suite 200N, 524 South Andrews Avenue, Fort Lauderdale, Florida 33301, by Certified Mail, Return Receipt Requested No. 7000 0520 0018 3409 1125, this 21st day of December, 2000.

Debra M. Lubkin