UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6017-CIV-DIMITROULEAS/SELTZER

CHERL SEARS,                              )
                                          )
                Plaintiff,                )
                                          )
v.                                        )
                                          )
THE SCHOOL BOARD OF BROWARD               )
COUNTY, FLORIDA,                          )
                                          )
                Defendant.                )
_____)



### DEFENDANT'S CONCISE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendant, the SCHOOL BOARD OF BROWARD COUNTY, FLORIDA ("School Board"),

through its counsel, Muller, Mintz, Kornreich, Caldwell, Casey, Crosland & Bramnick, P.A., files this

Concise Statement of Undisputed Material Facts pursuant to Local Rule 7.5, in support of Defendant's

Memorandum in Opposition to Plaintiff's Motion for Summary Judgment. In response to Plaintiff's

Statement of Material Facts in Support of Her Motion for Summary Judgment, Defendant refers the Court

to the undisputed material facts set out in Defendant's Concise Statement of Undisputed Material Facts

filed in support of Defendant's Motion for Summary Judgment [cited herein as "Stmt. ¶ __"], which

provides a more detailed summary of the undisputed facts in this case.[1] A courtesy copy of that Statement

is attached hereto as Exhibit 1. In addition, Defendant files the sworn Second Affidavit of Gracie Diaz,

---

[1]     The Statement is supported by the following record evidence: the sworn deposition testimony
of Plaintiff, with supporting exhibits; the sworn deposition testimony of the School Board's
Director of Instructional Staffing, Ms. Gracie Diaz, with supporting exhibits; and the sworn
supplemental Affidavit of Gracie Diaz. Where additional facts are cited herein, the School
Board has referred directly to the record evidence rather than the Statement.

Director of Instructional Staffing, with supporting documentation [Second Diaz ¶ __], attached as Exhibit 2.[2]

1.      Plaintiff Cherl Sears was formerly employed by the School Board as a substitute teacher at various times and on various dates since February, 1992. Her security clearance to work as a substitute was revoked on October 1, 1998. Since that time, Plaintiff has never reapplied for employment with the School Board. [Stmt. ¶ 2]

2.      Official School Board records reflect that Plaintiff worked on an as needed basis as a Regular Substitute teacher until October 1, 1996. Official School Board records establish that Plaintiff thereafter worked as a substitute teacher in the following capacities:[3]

| School Period | Substitute Position |
| --- | --- |
| 10/02/96 - 06/13/97 | Pool |
| 07/01/97 - 09/30/97 | Regular |
| 10/01/97 - 03/01/98 | Pool |
| 03/02/98 - 06/12/98 | Interim |
| 08/25/98 - 10/05/98 | Regular |

At the time she was initially authorized to work as a substitute teacher, Plaintiff signed a Memorandum of Understanding which stated that she "understood that there are currently over 3,300 substitutes available for employment and that regular employment should not be expected nor guaranteed." Plaintiff concedes that she read that provision and understood she was not guaranteed employment. Plaintiff further concedes that she was not guaranteed continued employment as either a Pool or an Interim Substitute after the end of the particular school year. [Stmt. ¶ 10]

---

[2]   To the extent the facts set out herein contradict Plaintiff's assertions in her Affidavit and/or her Statement of Facts, Defendant contends that the evidentiary record now before the Court is clear and complete, and sufficiently establishes the undisputed material facts upon which the Court can resolve all issues as a matter of law. Hence, Defendant contends that there are no sufficiently material disputed facts which would warrant a jury trial.

[3]   Although the time periods and assignments set out in Plaintiff's Affidavit differ somewhat from official School Board records, those differences are immaterial.

3.     On or about September 16, 1998, Plaintiff applied for a full-time teaching position with the School Board. Prior to that time, Plaintiff had only worked for the School Board as a substitute teacher. [Stmt. ¶ 18]

4.     Pursuant to Florida law (specifically, Sections 231.02 and 231.36, Florida Statutes), any applicant for employment with the School District must be of good moral character and, if applying for an instructional position, must be properly certified as determined by the Florida Department of Education ("DOE"). Chapter 6A-4 of the Florida Administrative Code sets out the four types of teaching certifications available: professional, non-renewable professional, temporary, and part-time. The process by which an applicant becomes certified is set out in Section 231.17, Florida Statutes. Specifically, the DOE, upon review of an application for certification, will either issue the appropriate certificate if the applicant meets the requisite qualifications, or will issue a "Statement of Eligibility" indicating what the applicant must do in order for a temporary certificate to be issued. A Statement of Eligibility is not legal authorization to work as a full time teacher in the State of Florida -- rather, it is a preliminary step to getting legal authorization. Whether an applicant is eligible for a temporary teaching certificate depends upon whether the Statement of Eligibility indicates that "specialization requirements" are required. If no specialization requirements are indicated, the applicant is immediately eligible for the issuance of a temporary Florida teaching certificate, contingent upon the results of a criminal background investigation.[4] A temporary Florida teaching certificate allows a School Board to hire the applicant for a full-time instructional position. If specialization requirements are indicated on the Statement of Eligibility, the applicant is not eligible for a temporary teaching certificate and cannot be hired as a full time teacher until the specified college courses have been completed. Thus, applicants holding a Statement of Eligibility denoting specialization requirements cannot be employed in a full-time instructional capacity as they lack (and are not otherwise eligible for) the requisite temporary teaching certificate. [Stmt. ¶¶ 28, 29, 30;

---

[4]     In this regard, when conducting background checks, the DOE takes into account nolo contendre pleas and pretrial interventions, even if the criminal case was subsequently dismissed. Based upon its review of the criminal record, the DOE may deem an applicant ineligible for a teaching certificate. [See Diaz deposition at pp. 20, 21]

-3-

Second Diaz ¶ 2][5]

5.    In her Statement of Material Facts, Plaintiff contends that she "possessed a two-year temporary teaching certificate, which entitled her to teach social science subjects and her teaching eligibility was consistent with other active working teachers." Plaintiff cites to her own affidavit and to letters from Cora Walls and Barbara H. Atkins in support of this assertion. Plaintiff's assertion, however, is a misstatement of the actual facts presented in the record. Specifically, Plaintiff's affidavit contradicts her earlier sworn deposition testimony wherein she conceded that she only held a Statement of Eligibility. [Stmt. ¶¶ 29, 30] Further, the letters of Ms. Walls and Ms. Atkins on their face actually support the School Board's position in that Ms. Walls and Ms. Atkins claim that they actually possess temporary teaching certificates, not Statements of Eligibility. Indeed, Ms. Walls' two-year temporary teaching certificate expired and she was notified that, absent proof that she has met the requirements for a permanent teaching certificate (or already possesses such a certificate), her employment with the School Board would be terminated. [Second Diaz ¶ 4].[6]

6.    The Statement of Eligibility held by Plaintiff noted certain specialization requirements, namely, that Plaintiff needed six semester hours of college courses (three in geography and three in Western Civilization or a related course) before she would be eligible for a temporary teaching certificate. At the time she applied for the full-time teaching position, she had not completed those specialization requirements. Although Ms. Sears had taken six semester hours in Language Development & Learning Disabilities and Survey of Exceptional Children, those courses did not fulfill the requirements to obtain

[5]    Once a temporary Florida teaching certificate is issued, the person holding that certificate has two years to complete any additional requirements to obtain a professional certificate. Under certain limited circumstances, temporary certificates may be renewed once, for either a one or two-year period (depending on the circumstances). Renewals of temporary certificates and the issuance of professional certificates are also governed by Section 231.17, Florida Statutes.

[6]    In any event, the allegedly sworn and notarized letter testimony of Ms. Walls should be stricken as she was never disclosed as a potential witness per Local Rule 16.1 or in response to Defendant's First Set of Interrogatories, and the discovery deadline has now passed. Further, neither the letter testimony of Ms. Walls nor of Ms. Atkins meets the requirements of a valid affidavit or, under 28 U.S.C. 1746, an unsworn declaration. Hence, both letters should be disregarded by the Court as incompetent evidence.

-4-

her temporary Florida teaching certificate because neither of the two courses were in the required fields of study (i.e., Geography and Western Civilization). Absent a temporary (or professional) teaching certificate, Ms. Sears lacked the necessary Florida teaching certificate and therefore could not lawfully have been employed by the School Board as a regular full-time teacher. [Stmt. ¶ 30; Second Diaz ¶ 3][7]

7.      As part of the full-time teacher application process, Plaintiff was also required to complete a new security background check form. [Stmt. ¶ 18] By law, criminal background checks are required for all instructional employees. When an applicant discloses past criminal activity, or if a fingerprint check reveals such activity, the applicant must first be cleared by the School Board's Security Clearance Committee in order to be eligible for employment with the School Board. [Stmt. ¶¶ 8, 9] In making its determination in this regard, the Security Clearance Committee's paramount concern is the safety of the schoolchildren. [See Diaz deposition at p. 20]

8.      On her security background check form, Plaintiff disclosed that she had been arrested and charged in 1995 with possession of cocaine. Plaintiff also disclosed that she had pled "no contest" in the criminal proceeding and that she had participated in a pre-trial intervention program after which the charge was dismissed. On the back of the form, she stated that she allowed a "male friend" to borrow her car for a day; that the friend then returned to pick her up at which time Plaintiff entered the passenger side of her car; and that the "male friend" drove them to a mall where she and the "male friend" were confronted by the police. The police searched Plaintiff car and found cocaine. Plaintiff alleged that she had no knowledge that the cocaine was in her car. Plaintiff and her "male friend" were subsequently arrested. Plaintiff stated that she was "ordered" to attend pre-trial intervention.[8] After she completed the pre-trial intervention program, the felony criminal case against her was dismissed. [Stmt. ¶ 18]

9.      Upon review of the police report, however, the Security Clearance Committee learned that Plaintiff (formerly known as "Cherl Hall") had been arrested on June 14, 1995, and that the criminal

---

[7]    It is speculative at best whether Plaintiff would have been certified by the DOE even if she had the requisite classes, given her criminal arrest record, as discussed below. [See Diaz deposition at pp. 20, 21]

[8]    In her deposition, Plaintiff concedes that she was never actually "ordered" to attend pre-trial intervention; rather, she elected to enter into a plea agreement and enter the program upon the advice of legal counsel. [Stmt. ¶ 18 at n.5]

proceedings against her continued into the period during which she was working as a substitute teacher for the School Board. The police report also stated that Plaintiff's "male friend" was David Sears, Plaintiff's live-in boyfriend at the time.[9] The report further noted that the police found 14 grams of crack cocaine in the passenger-side compartment of Plaintiff's car.[10] The Police Officer stated in the report that a trained narcotics dog specifically alerted on the Plaintiff's purse, where the Officer found a rolled bundle of fifty one-dollar bills. [Stmt. ¶ 21] Thus, contrary to Plaintiff's assertion that her application was "complete and truthful" [see Plaintiff's Affidavit at ¶ 8], the explanation provided on the face of the application for the felony arrest is objectively misleading as compared with the actual facts set out in the police report.

10.      On October 1, 1998, based on its assessment of the facts presented before it, the Security Clearance Committee determined that Plaintiff was not employable with the School Board at that time. This determination was based on the felony arrest for possession of 14 grams of crack cocaine; the fact that Plaintiff pled "no contest" to a felony narcotics charge and entered a pre-trial intervention program; and the incomplete and otherwise misleading manner in which Plaintiff described her arrest on the security background check form.[11] The Security Clearance Committee's determination in this regard also complied with Section 435.03(2), Florida Statutes (1997). Hence, Plaintiff's application for a full-time teaching position was denied and she was removed from the substitute teacher availability list. Plaintiff was informed that she could appeal the Security Clearance Committee's decision to the School Board's Associate Superintendent of District Administration, Hal Blitman. [Stmt. ¶ 22]

---

[9]   Plaintiff was aware at the time she loaned her car to the "male friend" that he had previously spent time in prison. Approximately one month after the arrest, Plaintiff and Mr. Sears were legally married. [Stmt. ¶ 21 at n.6]

[10]   Plaintiff was charged with violation of Section 893.13, Florida Statutes, which makes it a felony to possess crack cocaine. See Fla. Stat. §§ 893.03(2)(a); 893.13(1)(a). [Stmt. ¶ 21 at n.7]

[11]   Plaintiff's statement on the back of the security background check form gave the impression that Plaintiff was merely "in the wrong place at the wrong time" and, therefore, had nothing to do with the illegal drugs found in her car, which, upon further review by the Security Clearance Committee, did not appear to be forthright or truthful. [Stmt. ¶ 22 at n.8]

-6-

11.    Plaintiff's assertion in her Statement of Facts -- that she was rejected for a full-time teaching position and was barred from being re-hired as a substitute teacher -- is an incomplete statement, as the record evidence establishes that the rejection of her application and revocation of her authorization to work as a substitute teacher covered only the 1998-99 school year. Further, it is undisputed that Plaintiff was informed she could reapply for employment after one year but she never did. [Stmt. ¶¶ 22, 26]

12.    Plaintiff also asserts that the School Board's rejection of her application for a full-time teaching position and revocation of her authorization to work as a substitute teacher occurred "solely" because of her arrest for narcotics possession. [See Plaintiff's Affidavit at ¶¶ 11, 15, 16] Plaintiff's statement in this regard is inaccurate as the record evidence establishes that other factors were considered in addition to the mere fact of her arrest, to wit: the basis for the criminal arrest and the severity of the resulting charge (felony narcotics possession), the disposition of the offense (her nolo contendre plea and subsequent completion of a pretrial intervention program), and the misleading manner in which Plaintiff described her arrest on the security background check form. [Facts ¶ 22][12]

13.    In her Statement of Facts, Plaintiff also takes great issue with the procedures employed by the Security Clearance Committee in reaching its decision. A review of the pertinent documents and the unequivocal testimony of Ms. Diaz establishes, however, that the "category of offenses" and "do not hire" rules that Plaintiff attacks [see Plaintiff's Affidavit at ¶¶ 9, 10] did not come into effect until December 1999 and, hence, were never applied to Plaintiff. Instead, the procedures applied to Plaintiff required a case-by-case analysis. [See Diaz Deposition at pp. 8, 11, 26; Stmt. ¶¶ 12-16] Despite Plaintiff's assertions to the contrary, the record evidence establishes that, in doing a case-by-case analysis, the Security Clearance Committee would follow guidelines established by the Professional Practices Division of the

---

[12]    Plaintiff also testified that her criminal record has since been expunged. That fact, however, is irrelevant to the instant case. First, it is undisputed that Plaintiff's record was not expunged until sometime in the year 2000 -- long after the School Board's decision which is at issue here. [See Sears Deposition at p. 98] Further, Ms. Diaz testified that an expunged record makes no difference in the Security Clearance Committee's determination, as, by law, it is entitled to know the circumstances surrounding all criminal records -- even ones that have been expunged. [See Diaz Deposition at p. 22; see also Section 943.0585 (4)(a)(6), Florida Statutes, which provides in pertinent part that a person who has a criminal history record expunged is nonetheless required to acknowledge the arrest(s) when "seeking to be employed or licensed by . . . any district school board, . . ."]

Florida Department of Education and Florida law, namely, Chapter 435, Florida Statutes. [Stmt. ¶¶ 12, 13, 15]

14.    As to the appeals process, it is undisputed that Plaintiff was informed that she could appeal the Security Clearance Committee's decision through the Associate Superintendent of District Administration (which she did). Further, under general School Board policy, Plaintiff could have appealed the Security Clearance Committee's decision to the Superintendent and/or the School Board (which she did not). [Facts ¶¶ 17, 27][13]

Suite 3600
First Union Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131-2338
(305) 358-5500 (Miami-Dade)
(954) 522-0393 (Broward)
(305) 379-3802 (Fax)

MULLER, MINTZ, KORNREICH, CALDWELL,
CASEY, CROSLAND & BRAMNICK, P.A.

By _____
Gordon D. Rogers
grogers@mullermintz.com
Florida Bar No. 240168

By _____
Debra M. Lubkin
dlubkin@mullermintz.com
Florida Bar No. 0992161
Counsel for Defendant

---

[13]    In her Statement of Facts, Plaintiff cites to the testimony of Ms. Diaz to state that it is "uncertain" what criteria or standards apply in the appeal process above the Associate Superintendent level. The only real uncertainty, however, is whether Ms. Diaz is even the appropriate person to attest to such matters. [See Diaz Deposition at p. 35] Nevertheless, Ms. Diaz did testify that, to her knowledge, each appeal was handled on a case-by-case basis. [See Diaz Deposition at pp. 29-30, 32-33, 35]

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of this document has been furnished to Mark J. Berkowitz,

Esquire, Mark J. Berkowitz, P.A., Counsel for Plaintiff, Suite 200N, 524 South Andrews Avenue, Fort

Lauderdale, Florida 33301, by mail, this _11_ day of January, 2001.

_Debra M. Lubkin_

Debra M. Lubkin

G:\237905\Pleadings\GDR273ice.wpd

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 00-6017-CIV-DIMITROULEAS/SELTZER

CHERL SEARS, )
)
Plaintiff, )
)
v. )
)
THE SCHOOL BOARD OF BROWARD)
COUNTY, FLORIDA, )
)
Defendant. )
_____)

NIGHT
FILED BOX
DEC 21 2000
CLERK, CLARENCE MADDOX
USDC/SDFL/FTL

## DEFENDANT'S CONCISE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, the SCHOOL BOARD OF BROWARD COUNTY, FLORIDA ("School Board"),

through its counsel, Muller, Mintz, Kornreich, Caldwell, Casey, Crosland & Bramnick, P.A., files

this Concise Statement of Undisputed Material Facts pursuant to Local Rule 7.5, in support of

Defendant's Motion for Summary Judgment. The facts set forth herein are supported by the sworn

deposition testimony of Plaintiff, Cherl Sears, with supporting exhibits [Sears p. __]; the sworn

deposition testimony of the School Board's Director of Instructional Staffing, Ms. Gracie Diaz, with

supporting exhibits [Diaz p. __]; and the sworn supplemental Affidavit of Gracie Diaz [Diaz Supp.

¶ __].

1.     Defendant School Board is a political subdivision of the State of Florida created

pursuant to Article IX of the Florida Constitution (1968). [Second Amended Complaint

("Complaint") ¶ 4; Answer and Affirmative Defenses ("Answer") ¶ 4]

2.     Plaintiff, Cherl Sears, was formerly employed by the School Board as a substitute

teacher at various times and on various dates since February, 1992. Her security clearance to work

as a substitute was revoked on October 1, 1998. Since that time, Plaintiff has never reapplied for

employment with the School Board. [Complaint ¶¶ 3, 5; Answer ¶ 5; Sears pp. 67, 92-93 and Ex.

11]

3.     The School Board employs three types of substitute teachers: Regular Substitutes,

Interim Substitutes, and Pool Substitutes. [Diaz Supp. ¶ 2] Regular Substitutes are called in to a



school on an ad hoc basis to substitute for an absent teacher that day. [Diaz p. 27] A Regular Substitute is not required to have a college degree but must have at least 60 semester hours of college credit. Regular Substitutes are paid at a daily rate of approximately seventy to eighty dollars per day and receive no fringe benefits. [Diaz p. 40; Diaz Supp. ¶ 2]

4.      Pool Substitutes report each school day to a particular school to be available to fill in for absent teachers as the need arises. [Diaz p. 28] Pool Substitutes agree in writing to accept the position for one school year only (specifically, 180 days), at a specified daily rate of pay of approximately ninety dollars per day. Like a Regular Substitute, a Pool Substitute is not required to have a college degree but must have at least 60 semester hours of college credit. [Diaz p. 40; Diaz Supp. ¶ 3]

5.      Interim Substitutes are hired to teach a class for at least twenty consecutive days or more. [Diaz p. 28] An Interim Substitute must have a bachelor's degree and is paid the daily rate of a beginning teacher (approximately $28,500/year). [Diaz p. 28; Diaz Supp. ¶ 4] Interim Substitutes cannot be put into a vacant teaching position; they can only be used to substitute for a teacher on an extended leave of absence (i.e., sickness or injury, pregnancy, or workers' compensation). [Diaz Supp. ¶ 4]

6.      All substitutes must attend and complete the Substitute Teaching Training Workshop, must qualify for a Broward County Substitute Teaching Certificate, and must be fingerprinted and pass a criminal background check. All substitutes also sign a memorandum of understanding which specifies that regular work during the school year is not guaranteed. [Diaz Supp. ¶ 5]

7.      All substitute teachers are expressly excluded from coverage under the collective bargaining agreement between the School Board and the Broward Teachers Union. [Diaz Supp. ¶ 6]

8.      Pursuant to Florida law, criminal background checks have been required for new School Board instructional employees since, at least, the mid 1980s. The background check requirements apply to regular as well as substitute employees and normally involve requiring the

-2-

employee to submit a complete set of fingerprints, which are then sent to the Federal Bureau of Investigation and the Florida Department of Law Enforcement for review. [Diaz Supp. ¶ 8][1]

9.    In order to implement the requirements of Florida law regarding fingerprinting and criminal background checks for employees, the School Board established a Security Clearance Committee to make determinations of eligibility for employment with the School District. [Diaz Supp. ¶ 9] Pursuant to School Board procedures put in place in July, 1996, applicants for full-time instructional positions were required to complete a security background check form and be fingerprinted. If an applicant disclosed past criminal activity on the form, or the fingerprint check revealed such criminal activity, the relevant police report(s) and records were obtained and reviewed by the Security Clearance Committee. [Diaz p. 26 and Ex. 6; Diaz Supp. ¶ 9]

10.    Plaintiff, Cherl Sears, was first employed by the School Board as a Regular Substitute in February, 1992. Official School Board records reflect that Plaintiff was fingerprinted upon being employed as a Substitute Teacher in 1992 and again in 1994. [Sears p.12, Ex. 2; Diaz Supp. ¶ 7, 8] She had no reported criminal history at that time. [Diaz Supp. ¶ 8] She worked on an as needed basis as a Regular Substitute teacher until October 1, 1996. Official School Board records establish that Plaintiff thereafter worked as a substitute teacher in the following capacities:

| School Period | Substitute Position |
|---|---|
| 10/02/96 - 06/13/97 | Pool |
| 07/01/97 - 09/30/97 | Regular |
| 10/01/97 - 03/01/98 | Pool |
| 03/02/98 - 06/12/98 | Interim |
| 08/25/98 - 10/05/98 | Regular |

At the time she was initially authorized to work as a substitute teacher, Plaintiff signed a Memorandum of Understanding which stated that she "understood that there are currently over 3,300 substitutes available for employment and that regular employment should not be expected nor guaranteed." [Diaz Supp. ¶ 7; Sears pp. 14, 48-50, Acknowledgment form at Ex. 2] Plaintiff concedes that she read that provision and understood she was not guaranteed employment. [Sears

---

[1]    Florida law requires fingerprinting and screening of all instructional personnel, including substitute teachers, prior to appointment. See Fla. Stat. §§ 231.02; 231.47 (1997).

-3-

pp. 13-14, 108] Plaintiff further concedes that she was not guaranteed continued employment as either a Pool or an Interim Substitute after the end of the particular school year. [Sears p. 109]

11.     At the time of her initial employment as a substitute teacher, Plaintiff held a Florida Substitute Teaching Certificate, which was valid from July 1, 1989, through June 30, 1994. [Sears p. 9, Exs. 1, 19]  On July 21, 1994, Plaintiff applied for and was granted a Broward County Substitute Teaching Certificate which remained in effect from July 1, 1994, through June 30, 1999. [Sears p. 21, Ex. 4.]  At no time during this period did Plaintiff have any type of temporary or permanent Florida teaching certificate that would have allowed her to be hired as a regular full-time teacher under Florida law. [Diaz Supp. ¶¶ 22, 28]

12.     Prior to December, 1999, each determination was made by the Security Clearance Committee on a case-by-case basis. [Diaz pp. 9, 12; Sears at Ex. 14]  At the time of the determination regarding Plaintiff, the process involved looking at the type of crime involved, when it was committed, and how it was adjudicated.  The Security Clearance Committee would also take into consideration any mitigating factors which were brought to its attention by the applicant, such as whether a long period of time had passed since the offense and what the person had done since that time. [Diaz pp. 8, 36-37; Diaz Supp. ¶ 10]

13.     In making its determination, the Security Clearance Committee generally followed Section 435.04, Florida Statutes (1997), which provides that persons with a record of certain criminal offenses, regardless of adjudication, should not be hired. [Diaz pp. 19-20; Diaz Supp. ¶ 11]  Specifically, Section 435.04 requires security background investigations for all employees in positions designated by law as positions of trust or responsibility to ensure that such persons have not pled nolo contendere to specific criminal activities, including but not limited to violation of Chapter 893, Florida Statutes, relating to drug abuse prevention and control.[2] See Fla. Stat. §§

------

[2]     Similarly, Section 435.03(2), Florida Statutes (1997), provides in pertinent part that:

> Any person for whom employment screening is required by statute must not have been found guilty of, regardless of adjudication, or entered a plea of nolo contendere or guilty to, any offense prohibited under any of the following provisions of the Florida Statutes or under any similar statute of another jurisdiction: . . . (cc) Chapter 893, relating to drug abuse prevention and control, only if the offense was

435.04(1), (2) (1997). [Diaz Supp. ¶ 11] Section 435.06, Florida Statutes (1997), requires, inter alia, termination of employment of any personnel found to be in noncompliance unless an exemption is requested and granted.[3] [Diaz Supp. ¶ 11]

14.    After reviewing the merits of a case, if the Security Clearance Committee found reason to believe that a disqualifying offense occurred and insufficient mitigating factors were present, the Committee served as the initial step in the screening process to determine the person to be non-employable. [Diaz Supp. ¶ 13] However, prior to policy changes implemented in 1999 as discussed below, no applicant was ever automatically denied employment. [Diaz p. 11; Diaz Supp. ¶ 13] In fact, instructional personnel have been hired or retained despite past felony arrests. [Sears pp. 72, 75-76; Diaz pp. 35-36; Diaz Supp. ¶ 13]

15.    The Security Clearance Committee also considered the standards adopted by the Professional Practices Division of the Florida Department of Education for the issuance of teaching certificates, which provide that an applicant may be deemed ineligible for certification even if the criminal offense with which he or she was charged resulted in a plea of nolo contendre, withholding of adjudication, or pretrial intervention. [Diaz p. 8; Diaz Supp. ¶ 12]

16.    In December, 1999, following an audit by the Broward County Sheriff's Office, the Security Clearance Committee developed formal, written guidelines. [Diaz p. 9, and Ex. 1] The new guidelines delineate when the Security Clearance Committee should automatically deny employment (such as, for egregious offenses like sexual assault, child abuse, kidnaping and extreme violence) and when applicants can be considered on a case-by-case basis. The guidelines apply to guilty pleas (regardless of adjudication), no contest pleas, and pre-trial intervention/diversion. [Diaz p. 10 and Ex. 1; Diaz Supp. ¶ 23]

a felony or if any other person involved in the offense was a minor.

[3]    Section 435.07, Florida Statutes (1997), provides exemptions for, inter alia, felonies committed more than three years prior, misdemeanors, and findings of delinquency, providing that the applicant has demonstrated by clear and convincing evidence that they should not be disqualified from employment.

17.    In all cases (both pre-December, 1999, and post-December, 1999), the applicant has the right to appeal the Security Clearance Committee's determination. [Diaz pp. 16, 18, 29, 32, 34; Diaz Supp. ¶ 24] Appeal is first made directly to the Security Clearance Committee via the Associate Superintendent of District Administration. The Security Clearance Committee will reconvene, with the Associate Superintendent present, and review the merits of the case again. The Associate Superintendent would ultimately make the final determination. [Diaz pp. 16-17; Diaz Supp. ¶ 24] Thereafter, the applicant could appeal to the Superintendent and/or the School Board. [Diaz p. 29, 32; Diaz Supp. ¶ 24]

18.    On or about September 16, 1998, Plaintiff applied for a full-time teaching position with the School Board. [Sears pp. 58-61, Ex. 9][4] Prior to that time, Plaintiff had only worked for the School Board as a substitute teacher. As part of the full-time teacher application process, Plaintiff was required to complete a new security background check form. [Sears p. 129; Diaz p. 12; Diaz Supp. ¶ 14] On that form, Plaintiff disclosed that she had been arrested and charged in 1995 with possession of cocaine. Plaintiff also disclosed that she had pled "no contest" in the criminal proceeding and that she had participated in a pre-trial intervention program after which the charge was dismissed. On the back of the form, she stated that she allowed a "male friend" to borrow her car for a day; that the friend then returned to pick her up at which time Plaintiff entered the passenger side of her car; and that the "male friend" drove them to a mall where she and the "male friend" were confronted by the police. The police searched Plaintiff' car and found cocaine. Plaintiff alleged that she had no knowledge that the cocaine was in her car. Plaintiff and her "male friend" were

---

[4]    Pursuant to Section 231.36, Florida Statutes (1999), in order to become a full-time teacher, an applicant must by properly certified by the Florida Department of Education. Section 231.17(1), Florida Statutes (1999), states in pertinent part that "[e]ach person seeking certification . . . shall submit a completed application to the Department of Education. . . . [t]he Department of Education shall issue within ninety (90) calendar days after the stamped receipted date of the completed application an official statement of eligibility for certification or a certificate covering the classification, level, and area for which the applicant is deemed qualified." A statement of eligibility is valid for two years and advises the applicant of the requirements that must be completed to qualify for either a temporary or professional certificate. Fla. Stat. § 231.17(2). Once the applicant meets the stated requirements, the temporary certificate (or Professional Certificate, as the case may be) will be issued. Fla. Stat. §231.17(3).

subsequently arrested. Plaintiff stated that she was "ordered" to attend pre-trial intervention.[5] After she completed the pre-trial intervention program, the felony criminal case against her was dismissed. [Sears pp. 61-64, Ex. 10; Complaint ¶ 11; Diaz Supp. ¶ 14; Diaz p. 12]

19.     Plaintiff never informed the principal of the school where she was assigned of the arrest or criminal prosecution. [Sears p. 65] Additionally, contrary to Section 230.335(1)(a), Florida Statutes (1997), the fact that Plaintiff was arrested for felony cocaine possession was not reported to the School Board's Superintendent of Schools by the law enforcement agency which made the arrest. [Diaz Supp. ¶ 15]

20.     Pursuant to School Board policy, Plaintiff obtained and provided a copy of the police report on her 1995 felony narcotics arrest to the School Board with her application for a full time teaching position. [Sears p. 34; Diaz p. 12]

21.     Upon receipt and review of the police report, the Security Clearance Committee learned that Plaintiff (formerly known as "Cherl Hall") had been arrested on June 14, 1995, and that the criminal proceedings against her continued into the period during which she was working as a substitute teacher for the School Board. [Diaz Supp. ¶ 16] The police report also stated that Plaintiff's "male friend" was David Sears, Plaintiff's live-in boyfriend at the time. [Sears at Ex. 7; Diaz pp. 12-13; Diaz Supp. ¶ 16][6] The report further noted that the police found 14 grams of crack cocaine in the passenger-side compartment of Plaintiff's car.[7] The Police Officer stated in the report that a trained narcotics dog specifically alerted on the Plaintiff's purse, where the Officer found a rolled bundle of fifty one-dollar bills. [Sears at Ex. 7; Diaz Supp. ¶ 16]

22.     On October 1, 1998, based on its assessment of the facts presented before it, the Security Clearance Committee determined that Plaintiff was not employable with the School Board

---

[5]     In her deposition, Plaintiff concedes that she was never actually "ordered" to attend pre-trial intervention; rather, she elected to enter into a plea agreement and enter the program upon the advice of legal counsel.

[6]     Plaintiff was aware at the time she loaned her car to the "male friend" that he had previously spent time in prison. [Sears pp. 24-26] Approximately one month after the arrest, Plaintiff and Mr. Sears were legally married. [Sears p. 40 and Ex. 5]

[7]     Plaintiff was charged with violation of Section 893.13, Florida Statutes, which makes it a felony to possess crack cocaine. See Fla. Stat. §§ 893.03(2)(a); 893.13(1)(a).

at that time. [Sears pp. 65-66, Ex. 11; Diaz pp. 13-15; Diaz Supp. ¶ 17]  This determination was based on the felony arrest for possession of 14 grams of crack cocaine; the fact that Plaintiff pled "no contest" to a felony narcotics charge and entered a pre-trial intervention program; and the incomplete and otherwise misleading manner in which Plaintiff described her arrest on the security background check form.  [Diaz pp. 13-15][8]  The Security Clearance Committee's determination in this regard also complied with Section 435.03(2), Florida Statutes (1997).  Hence, Plaintiff's application for a full-time teaching position was denied and she was removed from the substitute teacher availability list.  [Diaz p. 21; Diaz Supp. ¶ 18]  Plaintiff was informed that she could appeal the Security Clearance Committee's decision to the School Board's Associate Superintendent of District Administration, Hal Blitman. [Sears p. 69]

23.    On October 6, 1998, Plaintiff sent a letter to Mr. Blitman appealing the Security Clearance Committee's decision to deny her security clearance for employment.  [Sears pp. 71-72; Diaz p. 16; Diaz Supp. ¶ 19]  Plaintiff stated in that letter that she agreed to enter into a pre-trial intervention program, instead of going to trial, because it would "spare [her] the cost of going to trial," which she could not afford.  [Sears pp. 71-72, Ex. 12]  When Plaintiff filed her appeal, she never requested a meeting with Mr. Blitman.  [Sears p. 72]

24.    On November 10, 1998, the School Board received a letter from Mark J. Berkowitz, Esquire, on behalf of Ms. Sears, demanding that Ms. Sears be reinstated as a substitute teacher and that her application for a full-time teaching position be given "appropriate and full consideration by the School Board."  Mr. Berkowitz stated that, if the School Board did not respond to the demand by November 23, 1998, Ms. Sears was "prepared to take formal legal measures."  [Diaz Supp. ¶ 20]

25.    The Security Clearance Committee reconvened on November 24, 1998, to consider Plaintiff's appeal of its previous decision to reject her for full-time employment as a teacher and remove her from the substitute teaching availability list.  After reviewing the correspondence and

---

[8]     Plaintiff's statement on the back of the security background check form gave the impression that Plaintiff was merely "in the wrong place at the wrong time" and, therefore, had nothing to do with the illegal drugs found in her car, which, upon further review by the Security Clearance Committee, did not appear to be forthright or truthful.  [Diaz pp. 13-14, 20]

documents sent by, and on behalf of, the Plaintiff, the Security Clearance Committee denied Plaintiff's appeal. [Sears p. 101, Ex. 13; Diaz Supp. ¶ 2, 18]

    26.    After the Security Clearance Committee's denial of Plaintiff's appeal, Plaintiff never reapplied for employment with the School Board. [Sears pp. 92, 93] Plaintiff concedes that she was informed she could re-apply for employment with the School Board after one year. [Sears p. 77]. Plaintiff further concedes that she is not aware of any documents or School Board policies that would absolutely bar her from employment with the School Board. [Sears p. 124; Diaz p. 29; Diaz Supp. ¶ 26]

    27.    Plaintiff could have appealed the Security Clearance Committee's decision to the Superintendent and/or the elected School Board. Neither Plaintiff nor her counsel pursued either avenue of relief. [Diaz pp. 29, 34; Diaz Supp. ¶ 25; Sears p. 112]

    28.    Under Florida law, in order to be hired for a full-time instructional position, an applicant must have a valid Florida Professional Teaching Certificate or be eligible for one (i.e., possess a Temporary Teaching Certificate). The Florida Department of Education ("DOE") determines eligibility. Specifically, the DOE, upon review of an application for certification, will issue a "Statement of Eligibility" indicating what the applicant must do in order for a Temporary certificate to be issued. If the Statement of Eligibility indicates that "specialization requirements" are required, the applicant will not be eligible for a Temporary Certificate until the noted courses are completed. Thus, a Statement of Eligibility is not the same as a Temporary Teaching Certificate. Once a Temporary Certificate is issued, the certificate holder has two years to complete any additional requirements to obtain a Professional Certificate. In any event, prior to issuance of a Certificate (Temporary or Professional), the DOE requires a fingerprint card which has been processed by the Florida Department of Law Enforcement and the Federal Bureau of Investigation. If the background check on the applicant reflects an arrest record, the file is sent to DOE's Professional Practices Services for a further review, and the issuance of any type of teaching certificate is contingent upon the results of that review.[9] [Diaz Supp. ¶ 27; Sears p. 53 and Ex. 8]

---

9    Under Florida law, only those persons holding a Professional Certificate who have completed three years of probationary service are entitled to be issued a professional service contract. Fla. Stat. § 231.36(3)(a) (1997).

29.    On or about February 24, 1998, Plaintiff received a Statement of Eligibility for certification to become a full-time teacher which stated that Plaintiff "will" be eligible for a two-year non-renewable Temporary Teaching Certificate when she completed the specialization requirements of three semester hours in western civilization or European, Asian, African, Latin American, or Middle Eastern history, and three semester hours in Geography. Plaintiff also had to submit a fingerprint card processed by the Florida Department of Law Enforcement and the Federal Bureau of Investigation. [Sears p. 124 and Ex. 8]

30.    At the time Plaintiff applied for the full-time teaching position, she had not completed the six semester hours required as per the Statement of Eligibility to obtain a temporary teaching certificate. Although Plaintiff had taken six semester hours in Language Development & Learning Disabilities and Survey of Exceptional Children, those courses did not fulfill the requirements to obtain her temporary Florida teaching certificate because neither of the two courses were in the required fields of study (i.e., Geography and Western Civilization). [Diaz pp. 38-39, 41; Diaz Supp. ¶ 28; Sears pp. 82-85, Ex. 16] Thus, even if Plaintiff had been cleared by the SCC, the School Board still count not have employed her as a regular full-time teacher at that time. [Diaz Supp. ¶ 22]

31.    At no time during her employment as a substitute teacher by the School Board was Plaintiff ever granted a regular employment contract as a teacher under Section 231.36, Florida Statutes. [Diaz pp. 38-41; Diaz Supp. ¶ 28]

Suite 3600
First Union Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131-2338
(305) 358-5500 (Miami-Dade)
(954) 522-0393 (Broward)
(305) 379-3802 (Fax)

MULLER, MINTZ, KORNREICH, CALDWELL,
CASEY, CROSLAND & BRAMNICK, P.A.

By
Gordon D. Rogers, Esquire
Florida Bar No. 240168
grogers@mullermintz.com

By
Debra M. Lubkin
Florida Bar No. 0992161
dlubkin@mullermintz.com
Counsel for Defendant

-10-

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of this document has been furnished to Mark J. Berkowitz,

Esquire, Mark J. Berkowitz, P.A., Counsel for Plaintiff, Suite 200N, 524 South Andrews Avenue,

Fort Lauderdale, Florida 33301, by Certified Mail, Return Receipt Requested No. 7000 0520 0018

3409 1125, this 21st day of December, 2000.

Debra M. Lubkin

-11-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6017-CIV-DIMITROULEAS/SELTZER

CHERL SEARS, )
)
             Plaintiff, )
)
v. )
)
THE SCHOOL BOARD OF BROWARD )
COUNTY, FLORIDA, )
)
             Defendant. )
_____)

## SECOND AFFIDAVIT OF GRACIE DIAZ

STATE OF FLORIDA     )
                       )SS
COUNTY OF BROWARD   )

I, GRACIE DIAZ, being first duly sworn, depose and state that I am over eighteen (18) years of age, that I am sui juris and that this Affidavit is made voluntarily and of my own free will without threats or promises of benefit by or from any person, and is based on my personal knowledge.

1.     I am presently employed as the Director of Instructional Staffing by the School Board of Broward County, Florida (hereinafter, "School Board"). I have been employed by the School Board since 1987 and have held my current position as Director for the past two years. Prior to becoming Director, I held the position of Assistant Director of Instructional Staffing. In my current position, I am responsible for the recruitment and hiring of all new instructional employees and, thus, have personal knowledge of state law requirements for teacher certification. I am also in charge of substitute teachers, as well as all leaves, transfers, and bonuses for the instructional staff.

2.    Pursuant to official School Board policy and Florida law. all applicants for employment with the School District must be of good moral character and. if applying for an instructional position, must be properly certified as determined by the Florida Department of Education ("DOE"). Specifically, the DOE, upon review of an application for certification, will either issue the appropriate certificate if the applicant meets the requisite qualifications, or will issue a "Statement of Eligibility" indicating what the applicant must do in order for a temporary certificate to be issued. A statement of eligibility is not legal authorization to work as a full time teacher in the State of Florida -- it is a preliminary step to becoming eligible. Whether an applicant is eligible for a temporary teaching certificate depends upon whether the Statement of Eligibility indicates that "specialization requirements" are required. If no specialization requirements are indicated. the applicant is immediately eligible for the issuance of a temporary Florida teaching certificate, contingent upon the results of a criminal background investigation. A temporary Florida teaching certificate allows a School Board to hire the applicant for a full-time instructional position. If specialization requirements are indicated on the Statement of Eligibility, the applicant is not eligible for a temporary teaching certificate and cannot be hired as a full time teacher until the specified college courses have been completed. Thus, applicants holding a Statement of Eligibility denoting specialization requirements cannot be employed in a full-time instructional capacity as they lack (and are not otherwise eligible for) the requisite temporary teaching certificate. A true and correct copy of the official policy adopted by the School Board concerning the hiring of instructional staff generally is attached hereto at Exhibit A. A true and correct copy of the School Board's internal policy governing Statements of Eligibility is attached hereto at Exhibit B.

-2-

3.    At the time Ms. Sears applied for the full-time teaching position, she had not completed the six semester hours of college courses which the DOE informed her were required as "specialization requirements" on her Statement of Eligibility prior to obtaining authorization to receive a temporary teaching certificate. Although Ms. Sears had taken six semester hours in Language Development & Learning Disabilities and Survey of Exceptional Children, those courses did not fulfill the requirements to obtain her temporary Florida teaching certificate because neither of the two courses were in the required fields of study (i.e., Geography and Western Civilization). Absent a temporary (or professional) teaching certificate, Ms. Sears lacked the necessary Florida teaching certificate and therefore could not lawfully have been employed by the School Board as a regular full-time teacher.

4.    Official School Board records establish that Ms. Cora Walls was employed with the School Board as a full-time instructor during the 1999-2000 school year. At the time of her initial appointment, Ms. Walls held a two-year temporary teaching certificate -- not a mere Statement of Eligibility with specialization requirement like Ms. Sears. Ms. Walls' temporary teaching certificate expired June 30, 2000. On May 5, 2000, the School Board notified Ms. Walls that, absent a permanent teaching certificate or proof that she qualified for such a certificate, her appointment as a full-time instructor would not be renewed. A true and correct copy of the notification to Ms. Walls is attached hereto at Exhibit C.

I, GRACIE DIAZ, state that I have read the foregoing Affidavit consisting of 4 numbered paragraphs and swear or affirm that it is true and correct to the best of my knowledge.

_____
GRACIE DIAZ

-3-

The foregoing instrument was executed before me this /l day of January, 2001, by

GRACIE DIAZ, who is [personally known by me] or who has produced _____ as

identification] and who took an oath.

_____
Notary Public
State of Florida at Large

_OSCAr L. Gonzalez_
Type or Print Name of Notary

My Commission Expires:

OFFICIAL NOTARY SEAL
OSCAR L GONZALEZ
NOTARY PUBLIC STATE OF FLORIDA
COMMISSION NO. CC846060
MY COMMISSION EXP. JUNE 13,2003

Suite 3600
First Union Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131-2338
(305) 358-5500 (Miami-Dade)
(954) 522-0393 (Broward)
(305) 379-3802 (Fax)

MULLER, MINTZ, KORNREICH, CALDWELL,
CASEY, CROSLAND & BRAMNICK, P.A.

By_____
Gordon D. Rogers, Esquire
Florida Bar No. 240168
grogers@mullermintz.com

By_____
Debra M. Lubkin
Florida Bar No. 0992161
dlubkin@mullermintz.com
Counsel for Defendant

-4-



## FULL-TIME APPOINTMENTS - INSTRUCTIONAL PERSONNEL

A PERSON SHALL BE APPOINTED TO A TEACHING POSITION ONLY IF HE/SHE HOLDS OR IS ELIGIBLE FOR A VALID FLORIDA FULL-TIME STATE EDUCATOR'S CERTIFICATE OR A SCHOOL BOARD OF BROWARD COUNTY INSTRUCTIONAL CERTIFICATE. OTHER CONSIDERATIONS BEING EQUAL, PREFERENCES SHALL BE GIVEN TO TEACHERS HAVING ADVANCED TRAINING AND DEGREES IN THEIR FIELDS OF SUBJECT MATTER, AS WELL AS SUCCESSFUL CLASSROOM TEACHER EXPERIENCE.

ALL OTHER ADULTS, SALARIED OR VOLUNTEER, ASSOCIATED WITH THE BOARD IN ANY OFFICIAL CAPACITY AND HAVING ACCESS TO THE FACILITIES OF THE BOARD (THIS SHALL INCLUDE INTERN TEACHERS, EXCHANGE TEACHERS, AND ALL SPECIAL PROJECT PERSONNEL INCLUDING ADMINISTRATORS), SHALL SUBMIT INFORMATION AS MAY BE REQUIRED.

AUTHORITY: F.S.230.22(1)(2)
F.S.231.1725P
POLICY ADOPTED: 3/13/69
POLICY AMENDED: 7/1/71
POLICY READOPTED: 9/5/74
POLICY AMENDED: 8/21/76;4/1/82;11/21/89;4/23/91;8/16/94;8/15/95        AMENDED POLICY APPROVED: 6/3/97

## RULES

Before the appointment of an employee to any position may become final, employment paper appropriate to the position shall be on file in the Personnel Division.

1.  The appropriate Personnel Application Form shall be filled out completely and accurately. A false statement knowingly made may be grounds for dismissal.

2.  The required evidence of State or School Board of Broward County certification or other licensure or expertise must be on file in the Broward County Certification Office within twenty (20) working days after reporting date. The cost of obtaining a School Board of Broward County Instructional Certificate shall be the responsibility of the employee at the rate to be determined by the Superintendent.

3.  Each employee of the Board shall permit the recording of his/her fingerprints. The Special Investigative Unit shall be responsible for the administration of the fingerprinting program. In accordance with statute and Board instructions, this shall include checking the prints with local, state and federal law enforcement agencies. The Special Investigative Unit shall inform the Superintendent and the Board, in writing, of any employee who refuses to permit his/her fingerprints to be taken. The cost of fingerprinting shall be the responsibility of the employee at a rate to be determined by the Superintendent.

4.  Each employee of the Broward County Public School System shall be required to take a loyalty oath; refusal to do so may constitute grounds for dismissal.

5.  Appropriate Retirement Forms must be filled out completely.

6.  Each employee must file his/her official copy of Social Security card with Personnel Services in order for Employer's Withholding Act Exemption W4 Form to be prepared.

7.  Forms covering Life and Health Insurance, to be paid by the Board, must be completed immediately. An employee desiring any of the additional insurances offered by the Board, but to be paid for by the individual involved, shall fill out optional forms and submit immediately.

8.  Each employee of the Board shall permit the completion of an I-9 form and submission of same to the Florida Department of Education.

9.  All State Certificated Teachers

    A person who holds an initial full-time state temporary certificate is eligible for employment in the school system of Broward County. A person who holds a second or third temporary state certificate is eligible for employment in the school system of Broward County provided he/she presents passing test scores for the College Level Academic Skills Test CLAST.

- 1 -

**FULL-TIME APPOINTMENTS - INSTRUCTIONAL PERSONNEL**

10.    Each person being cleared for employment will be checked against a state database of arrest warrants issued for failure to make child support payments. If the applicants name appears on said list, he/she shall not be eligible to be hired by the Board until the applicant's name is removed from the list.

11.    The Superintendent will provide information on affected applicants and employees to the appropriate Broward County and State of Florida governmental entities, to the extent permitted by law, to assist those offices in enforcement of child support obligations.

10. 12. Full-Time Teaching Certificate

A person who holds a full-time Florida Educator's Certificate or a School Board of Broward County Instructional certificate appropriate for the position is eligible for employment in the school system of Broward County.

11. 13. Vocational Technical and Adult Instructional Personnel, School Board of Broward County Certificated

Vocational, Technical and Adult instructional personnel certificated by the School Board of Broward County may be utilized by the schools when special services are needed to deliver appropriate instruction. All Vocational, Technical and Adult instructional personnel shall have on file in the office of Personnel, Policies, Government and Community Relations such information considered necessary by the Board to establish the credentials of the specialty of the individual, including but not limited to, School Board of Broward County Instructional Certificate, work experience verification records and additional records which establish specialty credentials of individuals (i.e., other licensure, certificate of completion, etc.).

12. 14. Teachers With Special Expertise, School Board of Broward County Certificated

a.    For the greater benefit of the school system of Broward County, the Superintendent may recommend for employment persons in highly specialized or technical fields such as the arts, engineering, medicine, etc., or in areas of critical shortage as identified by the Superintendent or his/her designee. Individuals hired under this rule must hold at least a four year degree and provide documentation that establishes their expertise. No individual may be employed under this provision without specific authorization of the Superintendent or his/her designee.

b.    Employment procedures for The School Board of Broward County certificated teachers with special expertise shall be the same as those followed by state certified instructional personnel except that they shall not be entitled to an instructional contract as prescribed as Florida State Board of Education Administrative Rule 6A-1.064 (1).

c.    Departments or principals in schools to which School Board of Broward County certificated teachers with special expertise are assigned, shall ensure that each employee understands all state and district rules, regulations and policies pertinent to working with students.

**FULL-TIME APPOINTMENTS - INSTRUCTIONAL PERSONNEL**

13. 15. School Board of Broward County certificated school social workers must hold a Master's of Social Work (M.S.W.) degree from an accredited institution. School Board of Broward County certificated school psychologists must hold a current license as a School Psychologist or Psychologist issued by the Florida Department of Professional Regulation. School Board of Broward County certificated Audiologists shall hold a certificate of registration in Audiology. Family counselors must have a Master's degree in counseling and guidance, social work, psychology, or any other related field from an accredited institution. All School Board of

- 2 -

Broward County certificated occupational and physical therapists and occupational and physical therapy assistants shall hold a license to practice in the State of Florida. Copies of appropriate credentials must be on file in Personnel Records.

~~14.~~ 16. Where certain types of special services are necessary, the services of noncertificated instructional occupational and physical therapists and occupational and physical therapy assistants may be contracted for with outside agencies. The contract shall specify the relationship between the contracting agency and the Board, the services to be performed, the salaries of the individuals performing the services, if appropriate, and the rules and procedures for evaluating the services of the contracted personnel. All such contracts shall be approved by the Board. Individuals hired under this provision must complete the appropriate Board forms and shall permit recording of fingerprints, as prescribed by F.S. 231.02 (2)(a).

~~15.~~ 17. Each employee must meet the requirements for the position for which he/she is applying.

~~16.~~ 18. Each elementary school shall provide teacher(s) certified in the areas of music, visual arts and physical education for the delivery of instruction and integration of the Pre-K-5 music, visual arts and physical education curricula.

~~17.~~ 19. Employment of Relatives

In order to maintain an efficient and effective work force, the School Board permits the employment of related persons pursuant to the rules of this policy.

a. No administrator/supervisor/principal shall knowingly recommend or engage in the hiring/promotion/assignment of an individual/employee to a work location if said action will create a situation where one employee will be responsible for the direct supervision of another employee who is a family member. The Superintendent has the authority to make exceptions to this policy where such personnel actions would cause undue hardship on students or seriously disrupt the school system's operations.

b. Nothing in this policy shall prohibit the employment of family members in the same work location provided that neither is directly supervised by the other.

c. For purposes of this policy, the following definitions shall apply:

1. Family Member - spouse, father, mother, son, daughter, brother, sister, uncle, aunt, niece, nephew, cousins, and in-laws of the same degree.

2. Work Location - any administrative unit under the direct supervision of a permanent employee of the School Board.

3. Direct Supervision - recommending employment authorizing payroll and/or participating in performance evaluation.

AUTHORITY:   F.S.230.22(1)(2),230.23(5)(a)
230.33(7)(a),231.1725
Rules Adopted: 3/13/6910/9/699/5/748/21/75;
4/1/821/21/899/23/91:8/16/94:8/15/95

AMENDED RULES APPROVED: 6/3/97

-3-

## STATEMENT OF ELIGIBILITY

An applicant who is recommended for employment must have a valid Florida Educator's certificate or be eligible for one. If the applicant does not have a valid certificate, he/she must apply to the Bureau of Teacher Certification at the Department of Education (DOE).

The DOE will determine if the applicant is eligible for a teaching certificate and issue him/her a Statement of Eligibility Letter (SOE). This statement will indicate what the applicant must do in order for a certificate to be issued.   Florida Educator's Certificates are only issued when a Florida school district requests issuance.

A Statement of Eligibility must be carefully reviewed.  An applicant who is eligible for a temporary certificate (Sample A) will not need any "specialization requirements".  Other courses may be specified in other sections, but will not be required to receive a temporary certificate.

If it indicates that "specialization requirements" are required (Sample B), the applicant will not be eligible for a temporary certificate until these courses are completed.



**FLORIDA DEPARTMENT OF EDUCATION**

Tallahassee, Florida 3239'

Sample A - Eligible for a Certificate

**TOM GALLAGHER**

Commissioner

TO:                     JUNE 16, 1999

　　　　　　　　　　　　　　　　　　　ı IN REPLY PLEASE REFER TO:

FROM:    BUREAU OF TEACHER CERTIFICATION

SUBJECT: STATEMENT OF ELIGIBILITY

THIS IS YOUR STATEMENT OF ACADEMIC ELIGIBILITY FOR MIDDLE
GRADES ENGLISH (5-9) VALID UNTIL JUNE 16, 2001.

The State of Florida issues two types of certificates for
full-time teaching: a nonrenewable Temporary Certificate
valid for two years and a Professional Certificate valid
for five years. The attached Form CF-106a, FLORIDA TEACHER
CERTIFICATION REQUIREMENTS, outlines the criteria for the
issuance of these certificates. The Temporary Certificate
is issued to allow time to complete requirements for the
Professional Certificate.

Your application for teacher certification has been
received and evaluated. Based upon current requirements,
you will be eligible for a two-year nonrenewable Temporary
Certificate valid for two consecutive school fiscal years
covering Middle Grades English when:

　　You obtain employment with a Florida public, state
　　supported, or nonpublic school which has an approved
　　system for documenting the demonstration of required
　　professional education competence. Your employer must
　　request issuance of your certificate.

　　Your employer submits a fingerprint card which has been
　　processed by the Florida Department of Law Enforcement
　　and the Federal Bureau of Investigation. If your
　　application or fingerprint report reflects an arrest
　　record, your file will be referred to Professional
　　Practices Services for further review. Issuance of
　　your certificate will be contingent upon the results of
　　this review.

Please note that if you are not employed and the issuance
of your certificate is not requested by June 16, 2001, your
Statement of Eligibility will expire. Another application
and fee may be submitted within one year from the
expiration date of this Statement of Eligibility to
reestablish your eligibility based on these same
requirements. However, if this Statement of Eligibility
has expired for more than one year when you submit another

Bureau of Teacher Certification
The Turlington Building • Room 203 • Tallahassee, Florida 32399-0400 • (Florida 1-800-445-6739)
http:/www.firn.edu/doe/doehome.htm
Affirmative action/equal opportunity employer



# FLORIDA DEPARTMENT OF EDUCATION

Tallahassee, Florida 3239

Sample A - Eligible for a Certificate

**TOM GALLAGHER**

Commissioner



JUNE 16, 1999
PAGE  2

application, your eligibility for certification will be based on requirements which are in effect at the time the next application is received.

To qualify for a five-year Professional Certificate, requirements must be completed in the following three categories: General Requirements, Professional Education Requirements, and Specific Subject Requirements.

**YOU MUST COMPLETE THE FOLLOWING REQUIREMENTS FOR THE ISSUANCE OF YOUR PROFESSIONAL CERTIFICATE:**

**GENERAL REQUIREMENTS -**

Submit official documentation of a passing score on the Professional Education Subtest of the Florida Teacher Certification Examination.

Submit official documentation of a passing score on the College Level Academic Skills Test (CLAST).

Submit from a Florida district superintendent or the chief administrative officer of a Florida state supported or nonpublic school, official verification of demonstration of required professional education competence.

Submit Application Form CG-10 and the appropriate fee as indicated on the application form.

**PROFESSIONAL EDUCATION REQUIREMENTS -**

20 semester hours in education courses which must include:

6 semester hours covering the sociological and psychological foundations of education

6 semester hours in general methods, curriculum, school administration, or school supervision

a course in special methods of teaching the subject in which you are seeking certification as indicated in the SPECIFIC SUBJECT REQUIREMENTS outlined below.

Bureau of Teacher Certification
The Turlington Building • Room 203 • Tallahassee, Florida 32399-0400 • (Florida 1-800-445-6739)
http:/www.firn.edu/doe/doehome.htm
Affirmative action/equal opportunity employer

31


## FLORIDA DEPARTMENT OF EDUCATION
### FRANK T. BROGAN
Commissioner of Education

TO:                                          SEPTEMBER 27, 1995

IN REPLY PLEASE REFER TO:
SSAN#

FROM:    BUREAU OF TEACHER CERTIFICATION

SUBJECT: STATEMENT OF ELIGIBILITY

**THIS IS YOUR STATEMENT OF ACADEMIC ELIGIBILITY FOR
MATHEMATICS (6-12) VALID UNTIL SEPTEMBER 27, 1997.**

The Commissioner is authorized to deny acceptance of a
major for teacher certification purposes if the courses
completed for the major are not comparable in quantity and
content to the specific course requirements listed in
Florida State Board of Education Rules for certification in
that subject.

The State of Florida issues two types of certificates for
full-time teaching:  a nonrenewable Temporary Certificate
valid for two years and a Professional Certificate valid
for five years.  The attached Form CF-106a, FLORIDA TEACHER
CERTIFICATION REQUIREMENTS, outlines the criteria for the
issuance of these certificates.  The Temporary Certificate
is issued to allow time to complete requirements for the
Professional Certificate.

Your application for teacher certification has been
received and evaluated.  Based upon current requirements,
you will be eligible for a two-year nonrenewable Temporary
Certificate valid for two consecutive school fiscal years
covering **Mathematics (6-12) when:**

    You complete the following subject area specialization
    (subject content) requirements:

    Three (3) semester hours in abstract or linear algebra

    Three (3) semester hours in history of mathematics

    You must complete the requirements specified above and
    maintain a 2.5 GPA in the subject area.  Courses
    utilized in this evaluation reflect an acceptable GPA.

    Note:  The specialization requirements listed above
    must be completed prior to the issuance of the
    Temporary Certificate and no later than June 30th of
    the first year of the two-year validity period of the
    certificate.

Bureau of Teacher Certification
The Florida Education Center ● Room 203 ● Tallahassee, Florida 32399 ● (Florida 1-800-445-6739)

32

# FLORIDA DEPARTMENT OF EDUCATION
### FRANK T. BROGAN
Commissioner of Education



SEPTEMBER 27, 199
PAGE  2

If you feel that you have completed any of the courses
listed above, please have the registrar send the course
number, description, and hours earned.

You obtain employment with a Florida public, state
supported, or nonpublic school which has an approved
Florida Professional Orientation Program and your
employer requests issuance of the certificate.

Your employer submits a fingerprint card which has been
processed by the Florida Department of Law Enforcement
and the Federal Bureau of Investigation.  If your
fingerprint report reflects an arrest record, your file
will be referred to Professional Practices Services for
further review.  Issuance of your certificate will be
contingent upon the results of this review.

Please note that if you do not complete specialization
requirements, obtain employment, and issuance of your
certificate is not requested by September 27, 1997, your
Statement of Eligibility will expire.  Another application
and fee may be submitted within one year from the
expiration date of this Statement of Eligibility to
re-establish your eligibility based on these same
requirements.  However, if this Statement of Eligibility
has expired for more than one year when you submit another
application, your eligibility for certification will be
based on requirements which are in effect at the time the
next application is received.

To qualify for a five-year Professional Certificate,
requirements must be completed in the following three
categories: General Requirements, Professional Education
Requirements, and Specific Subject Requirements.

**YOU MUST COMPLETE THE FOLLOWING REQUIREMENTS FOR THE
ISSUANCE OF YOUR PROFESSIONAL CERTIFICATE:**

**GENERAL REQUIREMENTS -**

Submit official documentation of a passing score on the
Professional Education Subtest of the Florida Teacher
Certification Examination.

Submit official documentation of a passing score on the

THE SCHOOL BOARD OF BROWARD COUNTY, FLORIDA
DOROTHY J. ORR, ED.D.
DEPUTY SUPERINTENDENT, SCHOOL OPERATIONS

MAY 5, 2000

TO:        WALLS-CORA L   ELY HIGH              T.
           00551-500

FROM:      DOROTHY J. ORR, ED.D., DEPUTY SUPERINTENDENT
           SCHOOL OPERATIONS

VIA:       KAL MISTRY, DIRECTOR
           DEPARTMENT OF PERSONNEL

### SUBJECT: TENTATIVE REAPPOINTMENT

Your name will be submitted to the School Board as a tentative reappointment for the
2000-2001 school year on May 16,2000. The tentative status of your reappointment is
because your certification status does not reflect a certificate valid for 2000-2001.
Continued employment requires you to prove your eligibilty for a 2000-2001 teaching
certificate on or before June 30, 2000. If you do not meet this deadline your
employment as a Broward County teacher will automatically terminate on July 1,2000.
Contact your Certification Administrator immediately.

If you have a certificate expiring June 30, 2000, please read your Official Statement
of Academic Eligibilty from the Department of Education and collect your evidence
showing completion of the requirements stated therein. If your certificate is one
issued by the School Board of Broward County, your Certification Administrator will
be able to assist you in determining your eligibility to continue in your position for
the 2000-2001 school year. Bring the documentation, including your Official Statement
of Eligibility letter, original test score reports and official transcripts, to the
Broward County Certification Office before June 30, 2000. Be prepared to submit an
application for your new certificate and the $56 fee.

The Certification contacts are:

| Ron Foreman | North Area & Northeast Innovation Zone | 768-8658 |
|-------------|----------------------------------------|----------|
| Turner Jackson | South Area & Western Innovation Zone | 765-6654 |
| Susan Cassone | North Central & South Central Area | 768-8671 |

                                                    FAX:    765-6190

If you have already sent your documents to the Department of Education you still need
to contact the Certification Administrator for your area to ensure your eligibility
for reappointment for 2000-2001. Please be aware that you will not be eligible to
teach summer school unless you obtain a clearance for your 2000-2001 certificate.

Cora Walls
Teacher's Signature

Blanche Ely High          5/17/00
Location                  Date

DJO/KM/DKG:ree
CC: Senior Management
Area Director
Principal
Ms. Gracie Diaz, Director, Instructional Staffing
Ms. Dianne K. Gordon, Coordinator, Certification/Incentives